MATTHEW Z. CROTTY
(WSBA #39284)
Crotty & Son Law Firm, PLLC
905 W. Riverside Ave, Suite 404
Spokane, WA 99201
Telephone:  (509) 850-7011
Email:  matt@crottyandson.com

THOMAS G. JARRARD
(WSBA #39774)
Law Office of Thomas
Jarrard, PLLC
1020 N. Washington Dt.
Spokane, WA  99201
Telephone: (425) 239-7290
Facsimile: (509) 326-2932
Email:  tjarrard@att.net

PETER ROMER-FRIEDMAN
(*pro hac vice motion forthcoming*)
Outten & Golden LLP
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, D.C. 20001
Telephone:(202) 847-4400
Facsimile: (202) 847-4410
Email:  prf@outtengolden.com

R. JOSEPH BARTON
(*pro hac vice motion forthcoming*)
Block & Leviton LLP
1735 20th Street NW
Washington, DC 20009
Telephone: (202) 734-7046
Fax: (617) 507-6020
Email: jbarton@blockesq.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CASEY CLARKSON,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA AIRLINES, INC., HORIZON AIR INDUSTRIES, INC., and ALASKA AIRLINES PENSION/BENEFITS ADMINISTRATIVE COMMITTEE,<br><br>Defendants. | CASE NO.  2:19-CV-5<br><br>**CLASS ACTIONCOMPLAINT FOR VIOLATIONS OF USERRA AND DEMAND FOR TRIAL BY JURY**<br><br>**EXEMPT FROM FILINGFEES UNDER 38 U.S.C. § 4323(h)(1)** |

Plaintiff Casey Clarkson, on behalf of himself and other similarly situated individuals, by and through his attorneys, alleges as follows:

## INTRODUCTION

1.    This is a class action under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq*., on behalf of current and former employees of Alaska Airlines, Inc. ("Alaska") and Horizon Air Industries, Inc. ("Horizon"), who took military leave from their employers and who were (1) subjected to Horizon's uniform "virtual credit" policy during periods of their military leave and were demoted or otherwise harmed as a result of that policy, or (2) did not receive their regular wages or salary during their periods of short-term military leave (as they would have been paid for other comparable forms of non-military leave).

2.    USERRA requires that servicemembers who take leaves of absence from their civilian employers to perform qualified military service receive the same rights and benefits as other employees who take comparable forms of non-military leave, 38 U.S.C. § 4316(b), and gives servicemembers the right to be reemployed at the same position with the same rights and benefits had they not taken military leave, including by treating military service as continued employment.  38 U.S.C. §§ 4312(a), 4313(a)(1), 4316(a).  Alaska and Horizon violated these provisions of USERRA.

3.    First, when determining the position a pilot returns to following a period of military leave, Horizon has not given its pilots full credit for the flight hours that the pilots would have flown during periods of military leave, causing pilots to be demoted from the position of Regular Line Holder in the month following a period of military leave or requiring the pilots to work additional hours to avoid such a demotion.

4.    In order to maintain their status as a Regular Line holder—a position that offers greater compensation and employment benefits than other pilots—pilots must work at least 70 hours per month.  When Clarkson and other Horizon pilots have taken military leave, Horizon has given them "virtual credit" for hours worked during their qualifying leave periods.  However, Horizon has only offered 2.45 hours of credit per day to pilots on military leave, even though Horizon pilots ordinarily work many more hours on a normal working day than 2.45 hours.  As a result, pilots who take military leave do not receive the full credit for the hours that they would have worked during the relevant period of military leave, making it harder for pilots to reach the 70 hours of credit per month that they need to maintain their Regular Line holder status.  Thus, many pilots who receive inadequate credit during their military leave lose their Regular Line holder status, including the compensation and benefits associated with that status, or must work additional hours to avoid losing that status.

5.      Second, both Alaska and Horizon, sister airlines that are wholly-owned subsidiaries of Alaska Air Group, have failed to provide the regular wages or salaries to employees when they take short-term military leave, although both companies provide regular wages or salaries pay to employees who take other comparable forms of non-leave.

6.      As a result of these violations, Plaintiff and other servicemembers employed by Horizon and Alaska received less wages, salaries, and compensation than they would have received had Horizon (1) provided them with a virtual crediting system that fully reflected the number of hours pilots would have worked during a normal working day during periods of military leave, and (2) had both Defendants paid employees their regular wages or salaries during short-term periods of military leave.

7.      This action seeks a declaration that Horizon and Alaska violated USERRA by applying a "virtual credit" policy to servicemember-pilots that does not fully reflect a normal working day for the purpose of determining pilots' reemployment position and rights and  benefits, and by failing to pay employees their regular wages or salaries during short-term periods of military leave consistent with the requirements of USERRA.

8.      On behalf of the servicemember-employees of Horizon, Plaintiff seeks an order requiring Horizon to provide full credit for a normal working day for all

servicemembers who take qualified military leave protected by USERRA and to restore the compensation and benefits to servicemembers who were demoted or otherwise harmed as a result of the "virtual credit" policy.

9. On behalf of servicemember-employees of Horizon and Alaska who were denied pay during their short-term leave, Plaintiff seeks an order requiring both Defendants to provide regular wages or salaries to employees when they take short-term military leave, and an order requiring Defendants to recalculate and pay the compensation of Plaintiff and members of the Class for periods of short-term military leave consistent with the requirements of USERRA.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction with respect to the USERRA claims pursuant to 38 U.S.C. § 4323(b)(3), which provides that the district courts of the United States have jurisdiction over a USERRA action brought against a private employer. This Court has subject matter jurisdiction over Plaintiff's individual ERISA claim pursuant to 28 U.S.C. § 1331, because his claim arises under the laws of the United States, and pursuant to 29 U.S.C. § 1132(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA. This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331, because this action arises under the laws of the United States.

11.    This Court has specific personal jurisdiction over Defendants, as the employment practices challenged in this action were directed at Plaintiff and other employees who work and/or reside in this District and because Defendants transact business in and have significant contacts with this District.

12.    Venue is proper under 38 U.S.C. § 4323(c)(2), because Defendants Alaska and Horizon are both Washington corporations that are licensed to conduct business in the State of Washington and conduct business in the Eastern District of Washington. Venue is proper in this District for Plaintiff's individual ERISA claim pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches and violations giving rise to the claim occurred in this District.  Venue is also proper in this District under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims in this action occurred in this District.

## **PARTIES**

13.    Plaintiff Casey Clarkson was a member of the Washington Air National Guard from at least the beginning of his employment with Alaska and Horizon until June 30, 2018. Clarkson worked for Defendant Horizon Air Industries, Inc. as a turboprop passenger aircraft pilot beginning in November 2013 until he was hired by Defendant Alaska Airlines, Inc., to pilot 737 passenger jets on November 6, 2017. He is currently employed by Alaska. Plaintiff Clarkson has resided in Spokane,

1   Washington at all times during his employment with both Defendants and was based

2   out of the Spokane Airport at all times during his employment with both Defendants.

3       14.     Defendant Alaska Airlines, Inc. ("Alaska") is an Alaska corporation

4   that is licensed to conduct business in the State of Washington and conducts

5   business in the Eastern District of Washington. Alaska's Registered Agent's

6   Address is 19300 International Blvd. Seattle, WA 98188.

7       15.     Defendant Horizon Air Industries, Inc. ("Horizon") is a Washington

8   corporation that is licensed to conduct business in the State of Washington and

9   conducts business in the Eastern District of Washington. Horizon's Registered

10  Agent's address is 19300 International Blvd. Seattle, WA 98188.

11      16.     Defendant Alaska Airlines Pension/Benefit Administrative Committee

12  is the Plan Administrator within the meaning of ERISA § 3(16), 29 U.S.C. §

13  1002(16), of the Alaska Airlines, Inc. Pilots Investment and Savings Plan, which is

14  a defined-contribution plan within the meaning of ERISA § 3(34) that is offered to

15  employees of Alaska Airlines.  Plaintiff Clarkson is and has been a participant in

16  the Plan at least since October 2018.

17                      **CLASS ACTION ALLEGATIONS**

18      17.     Plaintiff brings this action as a class action pursuant to Rule 23 of the

19  Federal Rules of Civil Procedure on behalf of the following classes of persons:

20       The Virtual Credit Class: all current and former employees of

21

Horizon or any subsidiary, joint venture, or division of Horizon who were subjected to Horizon's "virtual credit" policy with respect to a period of military leave, from May 1, 2017 through the date of the judgment in this action.

(1)    The Paid Leave Class: all current or former Alaska or Horizon employees who have taken short-term military leave from October 10, 2004 through the date of the judgment in this action.

18.    Excluded from the Classes are the following persons: (a) all former or current individuals who previously reached settlements with or judgments against Defendants resolving or releasing any claims arising during the Class Period under USERRA related to any of the claims in this lawsuit; and (b) any person who served as a fiduciary of the Plan and their beneficiaries under the Plans and any member of the immediate family of and any heirs, successors or assigns of any such person.

**Impracticability of Joinder**

19.    The Classes are so numerous that joinder of all members is impracticable. Upon information and belief, Horizon employs at least 700 pilots, a significant portion of which are reservists, and Horizon also actively recruits servicemembers to become pilots with Horizon.  Upon information and belief, there are hundreds of pilots who are eligible for membership in the Virtual Credit Class and the Paid Leave Class, because they have been subjected to (or will continue to be subjected to) Horizon's virtual credit policy and/or have taken short-term military leave from Horizon.

20.    Upon information and belief, Alaska employs more than 21,000 employees, a significant portion of which are reservists, and Alaska also actively recruits servicemembers to become pilots with Alaska.  Thus, upon information and belief there are likely to be hundreds to thousands of Alaska employees who are eligible for membership in the Paid Leave Class.

21.    Joinder is also impracticable because the members of both Classes are geographically dispersed. Alaska maintains hubs in geographically dispersed airports: Anchorage, Alaska; Los Angeles, California; Portland, Oregon; San Francisco, California; and Seattle/Tacoma, Washington. Horizon also maintains hubs in both Portland, Oregon, and in Seattle/Tacoma, Washington.    Class Members reside close to each of these hubs, and therefore are geographically dispersed.

**Commonality**

22.    The central questions in this case concern whether the Horizon and Alaska employees' federal statutory rights under USERRA were violated by Horizon and Alaska, namely with respect to Horizon's "virtual credit" policy and both employers' failure to pay their employees their regular wages or salaries during periods of short-term military leave.

23.    As Horizon adopted and applied a uniform "virtual credit" policy or practice for determining a pilot's Regular Line holder and Reserve Line holder

position, the answer to the question of whether the virtual credit policy violated USERRA will produce common answers for all members of the proposed Virtual Credit Class.

24.    As Horizon and Alaska applied uniform policies of failing to pay employees when they took short-term military leave while paying employees who took comparable forms of non-military leave, the answer to the question of whether these policies violated USERRA will produce common answers for all members of the proposed Paid Leave Class.

25.    Plaintiff's claims raise subsidiary common questions that will also have common answers for each Class Member, including, but not limited to, the following:

      a.    Whether Horizon's "virtual credit" policy provides employees who take military leave the same credit of hours that employees would have earned had they continued their employment with Horizon during the period of military leave?

      b.    Whether Horizon's use of the "virtual credit" policy violates USERRA §§ 4312, 4313 and 4316 by denying reemployment in the proper position and

failing to treat military service as continued employment?

c.    Whether short-term military leave is comparable to other types of non-military leave for which employees of Horizon and Alaska receive their normal wages and salaries?

d.    Whether Horizon and Alaska's failure to pay employees when they take short-term military leave violates USERRA § 4316?

e.    Whether Defendants' violations of USERRA were willful, making it appropriate to award liquidated damages under USERRA?

f.    What is the appropriate relief that should be granted?

26.    As Defendants acted in a systematic manner with respect to the Class Members, and all members of the Classes suffered the same type of injuries based on discrete policies, resolving the claims of the Classes will be based on common legal and factual questions.

**Typicality**

27.    Plaintiff's claims are typical of the other members of the proposed Classes. Plaintiff challenges policies that were uniformly applied to employees who took military leave and who were harmed in a similar fashion.

28.    The relief sought consists primarily of: (1) a declaration establishing that Defendants violated USERRA; (2) an order requiring them to comply with USERRA in the future; (3) an order requiring Defendants to recalculate the compensation owed to members of the Classes due to the "virtual credit" policy and the failure to pay wages and salaries during periods of short-term military leave; and (4) an order that the unpaid compensation be allocated and paid to the Class Members.

**<u>Adequacy</u>**

29.    Plaintiff will fairly and adequately protect the interests of other members of the Virtual Credit Class and the Paid Leave Class. Plaintiff is aware of no conflict with any other member of either Class. Plaintiff understands his obligations as a class representative, has already undertaken steps to fulfill them, and is prepared to continue to fulfill his duties as class representative.

30.    Defendants have no unique defenses against the Plaintiff that would interfere with Plaintiff's representation of the Classes.

31.    Plaintiff's counsel are experienced in federal court class action litigation and have substantial experience in litigating class action employment cases, including under USERRA.

**Rule 23(b)(3)**

32.    This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

33.    The questions of law and fact common to the members of the Classes predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

34.    A class action is superior to other available methods for the fair and efficient adjudication of these issues. By resolving the common issues described above in a single class proceeding, the issues will be efficiently resolved in a single proceeding rather than multiple proceedings and obviate the possibility for unnecessary duplicative litigation.

35.    The following factors set forth in Rule 23(b)(3) also support certification:

a.    The members of the Classes have an interest in a unitary adjudication of the issues in this action for the same reasons why this case should be certified under Rule 23(b)(1).  Additionally,

1  many members of the Classes are unlikely to have sufficient

2  damages to justify pursuing an individual action or obtain

3  counsel to pursue an individual action.  But all Class Members

4  would benefit from a class action that obtains relief for all

5  members of the Class.

6      b.  No other litigation has raised the same allegations with respect

7  to Horizon's virtual credit policy or Horizon and Alaska's

8  failure to pay their employees during periods of short-term

9  military leave, or sought the same relief.

10      c.  This is an appropriate forum for these claims because, among

11  other reasons, jurisdiction and venue are proper, Plaintiff was

12  employed in this District, both Defendants have operations in

13  this District, and a substantial number of the Class Members

14  likely resides in this District.

15      d.  There are no difficulties in managing this case as a class action.

16  **FACTUAL ALLEGATIONS**

17  **Defendant Horizon's Policies Regarding Military Leave**

18  36.  Defendant Horizon has applied several uniform policies to employees

19  who take leave from their employment to perform military service.

20

21

37.   First, Horizon does not pay servicemember-employees their regular wages or salaries during periods of short-term leave (such as military leave for a two- to three-day military drill or leave for a 14-day annual military training period). However, Horizon does pay the regular wages or salaries of its employees when they take other comparable forms of non-military leave, such as jury duty leave and bereavement leave.

38.   Second, since at least May of 2017, Horizon has applied a "virtual credit" policy to employees—primarily pilots—who take military leave.  Horizon's "virtual credit" policy allocates 2.45 hours per day for paid and unpaid leaves, including military leave. However, Horizon pilots ordinarily work significantly more than 2.45 hours on days in which they are scheduled to fly and do work. Accordingly, the 2.45 hours per day that Horizon credits for all days in which pilots take military leave does not credit pilots for the actual flight hours that they missed due to military leave.

39.   Horizon's "virtual credit" policy reduces the compensation and employment benefits that many servicemember-pilots receive.  Horizon divides its turboprop pilots into those who fly Regular Lines (flown by Regular Line holders), Reduced Credit Lines (flown by Reduced Line holders), or Reserve Lines (flown by Reserve Line holders).  Regular Line holders make more money and have a more predictable schedule than Reserve or Reduced Line holders. Regular Line holders

receive a 70 hour per month minimum guarantee, which means that a Regular Line holder is guaranteed at least 70 hours of pay per month.  If a pilot works (or is credited) less than 70 hours per month, then the pilot loses his Regular Line holder status and becomes a Reserve Line holder.

40.    Because Horizon's "virtual credit" policy does not actually credit employees who take unpaid military leave for the full amount of hours they would have worked  had they not taken leave, the effect of the policy is that an employee who takes short-term military leave often must either perform additional work to make up for the lost hours from the 2.45 hour leave policy in order to keep his Regular Line holder status or lose that Regular Line Holder status altogether.

**Defendant Alaska Airlines' Policies Regarding Military Leave**

41.    Defendant Alaska Airlines adheres to a uniform policy by which it pays the regular wages or salary to employees who are called to jury duty.  Alaska also has a policy to provide employees their regular wages or salary when they take sick leave. Both jury duty and sick leave are comparable to short-term military leave, as they are short in duration and involuntary on the part of the person taking the leave. Alaska also provides its employees their regular wages or salary during absences due to emergencies.   Emergency leave is similar to short-term military leave insofar as it is regarded as involuntary on the part of the person taking the leave and is difficult to anticipate far in advance.  Upon information and belief, each

of these types of leave—short-term military leave, jury duty leave, bereavement leave, and emergency leave commonly lasts for only several days and usually not more than a couple of weeks.

**Horizon's "Virtual Credit" Policy Causes Plaintiff Clarkson to Lose His Regular Line Holder Status**

42.    Casey Clarkson started working for Defendant Horizon as a pilot of turboprop passenger aircraft on November 23, 2013. Throughout the time Clarkson worked for Horizon, he also served in the Washington Air National Guard.

43.    Clarkson first went on military leave to perform National Guard service from June 8 until July 8, 2017. Defendant Horizon applied its "virtual credit policy" to Clarkson during the period of his June to July 2017 leave. Specifically, Clarkson's service with the National Guard required him to take military leave during his employment with Horizon. Clarkson was on military leave for 22 days in June 2017. Under Horizon's "virtual credit" policy, Horizon multiplied Clarkson's 22 days of military leave by 2.45 hours per day, which, in turn, credited Clarkson with 53.9 hours for June 2017. When these 53.9 hours of virtual credit were added to the hours he worked in June 2017, the total amount of hours was less than the Regular Line guarantee of 70 hours per month. However, if Clarkson had received virtual credit for the actual hours he was scheduled to work during his

military leave in June 2017, his virtual credit hours and hours of actual work would have exceeded 70 hours in June 2017.

44.    Clarkson took military leave for 7 days in July 2017.  Under Horizon's "virtual credit" policy, Horizon multiplied Clarkson's 7 days of military leave by 2.45 hours per day, which, in turn, credited Clarkson with 17.1 hours of virtual credit for July 2017.  When combined with his actual hours worked in July 2017, Clarkson was left with fewer than 70 total hours in July 2017.  However, if Clarkson had received virtual credit for the actual hours he was scheduled to work during his military leave in July 2017, he would have received more than 17.1 hours of virtual credit and the aggregate of his virtual credit hours and hours of actual work hours would have exceeded 70 hours in July 2017.

45.    Because Clarkson did not receive virtual credit for the flight hours that he was reasonably certain to earn during the period of his military leave in July 2017, Clarkson did not reach the 70-hour threshold to remain a Regular Line holder, and he was accordingly demoted to Reserve Line holder in the following month because the "virtual credit" policy did not fully credit Clarkson with the number of hours we would have worked during his period of military leave when determining Clarkson's Regular Line holder status.

46.    In August 2017, Clarkson worked more than 70 hours and returned to his Regular Line holder status.  However, Horizon's "virtual credit" policy soon

caused him to lose that status once again. From September 26 to September 30, 2017, Clarkson went on military leave and was provided virtual credit of 12.25 hours for those 5 days of military leave. Again, it was reasonably certain that Clarkson would have worked more than 12.25 hours during those five days, and due to receiving only 12.25 hours during that period of military leave Clarkson did not meet the 70-hour threshold to remain a Regular Line holder and he again was demoted from Regular Line holder to Reserve Line holder.

47.     In October 2017, Clarkson took military leave again, and although he was able to meet the 70-hour threshold for October 2017, he was able to do so only by working *extra* days when he was not on military leave in order to be a Regular Line holder in the following month.

48.     Horizon's act of demoting Clarkson from a Regular Line holder status to a Reserve Line holder status adversely affected various benefits of employment to which Clarkson was entitled, including Clarkson's wages and work schedule in the months following his periods of military leave.  Horizon's virtual credit policy reduced the number of days that Clarkson was able to take off from work, and in some cases, Clarkson was compelled to accept additional work so that he could receive 70 hours of credit to avoid being demoted in the following month.

49.     Horizon pilots who take short-term military leave are subject to the same virtual credit policy that has harmed Clarkson and have been harmed in similar

fashion by the same policy—resulting in either a demotion or being required to work additional hours to avoid a demotion.

**Plaintiff Clarkson and the U.S. Department of Labor Notified Horizon That its Virtual Credit Policy Violates USERRA**

50.     On June 11, 2017, Clarkson emailed Horizon's management regarding the company's "virtual credit" policy, informing Horizon's management that Horizon's virtual credit policy was harming him and other Horizon pilots who took short-term military leave. In his e-mail, Clarkson pointed out that by only providing pilots with 2.45 hours of virtual credit per day of military leave, which is often smaller than the number of flight hours pilots would work on work-days that are dropped to take military leave, Horizon forces pilots into two options that both violate USERRA: (1) either work additional time when they are not taking military leave in order to reach the 70-hour per month threshold, or (2) be demoted to the Reserve Line holder position.

51.     Horizon's management refused to change its policy after Clarkson raised this issue. As a result of Horizon's refusal to change its policy, on August 3, 2017, Clarkson filed a complaint with the U.S. Department of Labor's ("DOL") Veterans Employment and Training Services, alleging that Horizon's "virtual credit" policy violated USERRA.

52.    The DOL subsequently contacted Horizon as part of its investigation. In responding to the DOL's inquiries, Horizon told DOL that while the company did not "track reservists," as of August 18, 2017, "30 [of the company's 698] pilots [were] on military leaves."

53.    The DOL completed its investigation of Clarkson's complaint on October 4, 2017, and found that Horizon's "virtual credit" policy violates USERRA. DOL concluded that to comply with USERRA, Horizon should provide virtual credit that is "not less than the value of trips dropped" in the months in which Clarkson took military leave.

54.    Despite DOL's finding of a USERRA violation, Horizon refused to follow the DOL's findings or bring the company into compliance with USERRA by changing its virtual credit policy.

**Both Defendants Failed to Pay Plaintiff Clarkson During Periods of Short-Term Military Leave**

55.    During each year of his employment with Horizon from 2013 to 2017, Clarkson took one or more periods of short-term military leave from Horizon.

56.    During each of Clarkson's short-term absences from his employment with Horizon due to his military service obligations, Horizon applied to Clarkson its uniform policy and practice of refusing to provide pay the regular wages or salary to employees who take short-term military leave. Although other employees were

1    eligible to receive their regular wages or salaries during jury duty leave, bereavement

2    leave, or sick leave, consistent with Horizon's policies, Clarkson did not receive his

3    regular wages during his periods of short-term military leave.

4        57.    During his employment with Alaska, which began on November 6,

5    2017, Clarkson was required to take short-term military leave during several periods

6    between November 2017 and June 2018, most recently, from May to June 2018.

7    Pursuant to Alaska's policy and practice of failing to pay employees when they take

8    short-term military leave, while at the same time paying employees when they take

9    other comparable forms of non-military leave like jury duty, bereavement leave,

10    and sick leave, Clarkson received no wages during his short-term military leave.

11    **Defendants' USERRA Violations Were Knowing and Willful**

12        58.    Defendant Horizon was directly notified by Plaintiff, and direct notice

13    from the Department of Labor that its virtual credit policy violated USERRA.

14    Despite such notifications, Horizon refused to change its policy.

15        59.    The persons responsible for employment-related decisions at

16    Defendants during the time frame alleged in this complaint were familiar with the

17    requirements imposed upon employers under USERRA.

18        60.    Both Defendants either knew or showed reckless disregard for whether

19    their conduct was prohibited under the provisions of USERRA, and their conduct

20    was willful as defined by 38 U.S.C. § 4323(d), and 20 C.F.R. § 1002.312(c).

21

## COUNT I
### Violation of USERRA, 38 U.S.C. §§ 4312 & 4313
### On Behalf of the Virtual Credit Class Against Horizon

61.    Plaintiff repeats and re-alleges the foregoing as if fully set forth herein.

62.    An employee who takes military leave to serve in the uniformed services is entitled to the reemployment rights and benefits and other employment benefits of USERRA if the person has given notice of his military obligation, served honorably, served less than five years cumulatively during military leave from that employer, and gave notice of his or her intent to return to work.  38 U.S.C. § 4312(a).

63.    On April 25, 2017, Clarkson provided Horizon notice of his military obligation between June 8, 2017 and July 8, 2017.

64.    Clarkson's period of military service was less than five years.

65.    Clarkson served honorably during the above timeframe.

66.    Clarkson provided Defendant Horizon notice of his intent to return to work on June 27, 2017.

67.    Similarly, the members of the Virtual Credit Class are limited to servicemember-employees who were reemployed by Horizon, as they provided notice of their military obligations, had periods of service of less than five years, served honorably during their military leave, and sought timely reemployment.

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

68.    When Clarkson and the members of the Virtual Credit Class satisfied USERRA's reemployment criteria, Horizon was required to re-employ Clarkson and the Class "in the position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service, the duties of which the person is qualified to perform" or "in the position of employment in which the person was employed on the date of the commencement of the service in the uniformed services." 38 U.S.C. § 4313(a)(1).

69.    By giving Clarkson and the members of the Virtual Credit Class fewer virtual credit hours than they would have worked had they been continuously employed by Horizon during their short-term military leave, using that lesser credit figure to determine the position that Clarkson and the Virtual Credit Class Members would be reemployed, and consequently reemploying Clarkson and the Virtual Credit Class in an inferior Reserve Line holder position rather than the superior Regular Line holder position, Horizon failed to re-employ Clarkson and the Virtual Credit Class Members in the proper position following periods of military leave.

## COUNT II
### Violation of USERRA § 4316(a), 38 U.S.C. § 4316(a) on Behalf of the Virtual Credit Class Plaintiffs Against Horizon

70.    Plaintiff repeats and re-alleges the foregoing as if fully set forth herein.

71.    Section 4316(a) of USERRA provides, in relevant part:

A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed.

72.    Under USERRA, 38 U.S.C. § 4303(2), "rights and benefits" include "the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest," including "the opportunity to select work hours."

73.    Horizon violated USERRA § 4316(a) by failing to treat Plaintiff's and the Virtual Credit Class's military leaves of absence as continuous employment in computing the number of hours of credit they had for the purposes of determining the employee's position following a period of military leave.

74.    By failing to fully treat military service as continued employment, Horizon denied Plaintiff and the Virtual Credit Class Members the "rights and benefits" that they are entitled to upon reemployment, including the seniority or

position of Regular Line holder, the opportunity or privilege to select their positions or work schedules, and other privileges of employment.

## COUNT III
### Violations of USERRA § 4316(c), 38 U.S.C. § 4316(c) on Behalf of the Virtual Credit Class Against Horizon

75.    Plaintiff repeats and re-alleges the foregoing as if fully set forth herein.

76.    USERRA § 4316(c) provides, in part:

A person who is reemployed by an employer under this chapter shall not be discharged from such employment, except for cause—

(1) within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days; or

(2) within 180 days after the date of such reemployment, if the person's period of service before the reemployment was more than 30 days but less than 181 days.

38 U.S.C. § 4316(c).

77.    Demotions and transfers to inferior positions during a protective period are considered discharges within the meaning of USERRA.

78.    By applying its virtual credit policy to demote Plaintiff and members of the Virtual Credit Class, or transfer them to inferior positions following their military leave, without cause, within the protection period provided by USERRA, by the application of its "virtual credit" system, Horizon violated USERRA § 4316(c).

**COUNT IV**
**Violations of USERRA § 4316(b), 38 U.S.C. § 4316(b)**
**On Behalf of the Paid Leave Class Against Horizon and Alaska**

79.    Plaintiff hereby repeats and incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

80.    USERRA, 38 U.S.C. § 4316(b)(1), provides that "a person who is absent from a position of employment by reason of service in the uniformed services shall be (A) deemed to be on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service."

81.    The U.S. Department of Labor's regulations that implement and interpret USERRA § 4316(b)(1), provide that "[i]f the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services."  20 C.F.R. § 1002.150(b).  The "duration of leave" "may be the most significant factor" to determine whether two forms of leave are comparable, and

other relevant factors include "the purpose of the leave and the ability of the employee to choose when to take the leave." *Id.*

82.     As described above, Horizon and Alaska have maintained a policy or practice of failing to pay employees their regular wages or salaries when they take short-term military leave, while continuing to pay employees their wages or salaries when they take other comparable forms of non-military leave such as jury duty, bereavement leave, and sick leave.

83.     As described above, these forms of leave—jury duty, bereavement leave, and sick leave—are comparable to short-term military leave in terms of the duration, purpose, and/or the ability of the employee to determine whether to take the leave.

84.     By adopting and applying a uniform policy or practice of not paying the Paid Leave Class Members when they took short-term military leave, Horizon and Alaska denied the Paid Leave Class Members the same rights and benefits, including compensation, that they provided to employees who took comparable forms of non-military leave, including jury duty leave, bereavement leave, and sick leave, and Horizon and Alaska failed to provide the Paid Leave Class Members the most favorable treatment accorded to employees who took comparable forms of non-military leave.  By doing so, they violated and continues to violate USERRA § 4316(b)(1).

85.     Due to Horizon and Alaska's failure to comply with USERRA § 4316(b)(1), Plaintiff and other members of the Paid Leave Class received lower wages, salaries, and compensation than they would have received had Horizon and Alaska complied with USERRA and the Department of Labor's implementing regulations.

86.     Upon information and belief, this violation of USERRA § 4316(b)(1) was willful.  Accordingly, Horizon and Alaska should be required to pay liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

**COUNT V**
**Violations of ERISA § 104(b), 29 U.S.C. § 1024(b)**
**Brought by Plaintiff Clarkson Individually Against the Alaska Airlines**
**Pension/Benefit Administrative Committee**

87.     Plaintiff incorporates and realleges the foregoing as if fully set forth herein.

88.     The Employee Retirement Income Security Act of 1974 ("ERISA") requires the administrator of an employee benefit plan, "upon written request of any participant or beneficiary, [to] furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 1024(b).

89.     ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1), authorizes daily monetary penalties of up to $110 per day in civil penalties against the administrator of an employee benefit plan that fails to furnish the requested material to "the requesting participant . . . within 30 days after such request."

90.     According to the Summary Plan Description, the Alaska Airlines Pension/Benefits Administrative Committee is the "Administrator" of the Alaska Airlines 401(k) Plan, pursuant to ERISA § 3(21)(A)(16), 29 U.S.C. § 1002(21)(A)(16).

91.     Clarkson submitted a letter pursuant to ERISA § 104(b) to the Alaska Airlines 401(k) Plan Pension/Benefits Administrative Committee on October 22, 2018, by certified mail, which was delivered on October 25, 2018.  The letter requested that the Committee provide Clarkson "the latest updated summary plan description; (2) any summaries of material modification to the Plan; (3) the latest full annual report, including a statement of assets and liabilities of the Plan and accompanying notes as well as a statement of income and expenses of the Plan, and accompanying notes; and (4) any bargaining agreement, trust agreement, contract; or (5) other instruments under which the Plan is established or operated, and any applicable amendments." At the time that he made his request pursuant to ERISA § 104(b), Plaintiff was a participant in the Plan and remains a participant in the Plan.

92.    The Alaska Pension Alaska Airlines 401(k) Plan Pension/Benefits Administrative Committee did not responded to Clarkson's October 22, 2018 letter within 30 days, and, in fact has never responded, in violation of ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).

93.    Pursuant to ERISA § 502(a)(1)(A) a participant may sue for the relief provided in ERISA § 502(c).  As a participant in the Plan, Plaintiff Clarkson is entitled to sue the Plan Administrator for failure to respond to his ERISA § 104(b) request.  As the Plan Administrator failed to respond to his request, Plaintiff Clarkson is entitled to penalties available under ERISA § 502(c).

94.    To the extent that a participant is required to show harm in order to obtain penalties under ERISA § 502(a)(1)(A), Plaintiff Clarkson has been harmed by not timely receiving the requested documents.  Clarkson made the ERISA § 104(b) request in October 2018 in order to enable him to pursue a claim for benefits under the Plan regarding Defendant Alaska's failure to provide what appears to be an incorrect amount of contributions to his 401(k) Plan account.  As Alaska's failure to timely provide the requested documents has unnecessarily delayed his ability to file a claim and required him to hire attorneys to address this issue, Plaintiff should be awarded penalties under ERISA § 502(c).

1

## **PRAYER FOR RELIEF**

2        Wherefore, Plaintiff prays that judgment be entered against Defendants

3  Horizon, Alaska, and the Alaska Airlines Pension/Benefits Administrative

4  Committee and respectfully requests that this Court award the following relief:

5        A.     Declare that Defendant Horizon's virtual credit policy and Horizon's

6  application of the policy to employees who take military leave and are reemployed

7  following such military leave violates the rights of Plaintiff and the Virtual Credit

8  Class under USERRA § 4312, § 4313 and § 4316.

9        B.     Declare that Defendant Horizon and Defendant Alaska's policy and

10  practice by which both Defendants failed to pay the regular wages or salaries of

11  employees when they took short-term military leave, while paying employees when

12  they took comparable forms of non-military leave, violates the rights of Plaintiff and

13  the Paid Leave Class Members under USERRA § 4316.

14        C.     Declare Defendants' USERRA violations of USERRA were willful

15  under 38 U.S.C. § 4323(d)(1)(C).

16        D.     Declare that Defendants Horizon and Alaska must pay employees who

17  take short-term military leave on the same basis as employees who take leave for

18  jury duty, bereavement leave, sick leave, and other forms of comparable non-

19  military leave.

20

21

E.      Require Defendants Horizon and Alaska to recalculate the compensation and attendant employment benefits owed to Plaintiff and members of both Classes in accordance with the Court's declaration, including (i) any wages or salaries that should have been paid during periods of short-term military leave, as well as any non-elective 401(k) contributions that should have been made as a percentage of employees' wages or salaries; and (2) any compensation or benefits that were lost due to a demotion as a result of the virtual credit policy.

F.      Order both Defendants to pay all members of the Classes liquidated damages in an amount to be determined at trial, 38 U.S.C. § 4323(d)(1)(C);

G.      Require Defendants Horizon and Alaska to pay attorneys' fees, expert witness fees, litigation expenses and costs pursuant to 38 U.S.C. § 4323(h) and/or order the payment of reasonable fees and expenses in this action to Plaintiff's Counsel on the basis of the common benefit and/or common fund doctrine out of any money or benefit recovered for the Class in this Action.

H.      Declare that Defendant Alaska Airlines Pension/Benefits Administrative Committee violated ERISA § 104(b), 29 U.S.C. § 1024(b), in failing to respond to Plaintiff Clarkson's request for plan documents, and order it to pay statutory civil penalties to Plaintiff Clarkson in accordance with ERISA § 502(c), 29 U.S.C. § 1132(c).

I.      Award pre-judgment and post-judgment interest on any monetary relief awarded or required by order of this Court.

J.      Require Defendants Alaska and Horizon to pay attorneys' fees, expert witness fees, litigation expenses costs pursuant to 38 U.S.C. § 4323(h), Defendant Alaska Airlines 401(k) Plan Pension/Benefits Administrative Committee (and its individual members) to pay attorney's fees and the costs related to the ERISA § 104(b) claim pursuant to ERISA §502(g)(1), 29 U.S.C. § 1132(g)(1) and/or ordering the payment of reasonable fees and expenses of this action to Plaintiffs' Counsel on the basis of the common benefit and/or common fund doctrine (and/or other applicable law) out of any money or benefit recovered for the Classes in this action.

K.      Award any other relief that the Court determines Plaintiffs and the Class are entitled to pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or otherwise.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure or any similar rule or law, Plaintiff demands a trial by jury for all causes of action and issues for which trial by jury is available.

January 7, 2019                                          Respectfully submitted,

 / s / Matthew Z. Crotty                          / s / Thomas G. Jarrard
MATTHEW Z. CROTTY                     THOMAS G. JARRARD
(WSBA #39284)                                  (WSBA #39774)
Crotty & Son Law Firm, PLLC          Law Office of Thomas

905 W. Riverside Ave, Suite 404
Spokane, WA 99201
Telephone:  (509) 850-7011
Email:      matt@crottyandson.com

Jarrard, PLLC
1020 N. Washington Dt.
Spokane, WA  99201
Telephone:  (425) 239-7290
Facsimile:   (509) 326-2932
Email:      Tjarrard@att.net

PETER ROMER-FRIEDMAN
(*pro hac vice motion forthcoming*)
Outten & Golden LLP
601 Massachusetts Avenue NW
Second Floor West Suite
Washington, D.C. 20001
Telephone:(202) 847-4400
Facsimile: (202) 847-4410
Email:      prf@outtengolden.com

R. JOSEPH BARTON
(*pro hac vice motion forthcoming*)
Block & Leviton LLP
1735 20th Street NW
Washington, DC 20009
Tel: (202) 734-7046
Fax: (617) 507-6020
Email: jbarton@blockesq.com

*Attorneys for Plaintiff*