1 | Kathryn S. Rosen, WSBA #29465
Davis Wright Tremaine LLP
2 | 920 5th Avenue, Ste. 3300
Seattle, WA 98104-1610
3 | Tel: (206) 622-3150
Fax: (206) 757-7700
4 | katierosen@dwt.com

5 | Mark W. Robertson, N.Y. Bar #4508248
(*pro hac vice*)
6 | O'Melveny & Myers LLP
7 Times Square
7 | New York, NY 10036
Tel: (212) 326-2000
8 | Fax: (212) 326-2061
mrobertson@omm.com
9 |
M. Tristan Morales, CA Bar #278498
10 | (*pro hac vice*)
O'Melveny & Myers LLP
11 | 1625 Eye Street, NW
Washington, D.C. 20006
12 | Tel.: (202) 383-5300
Fax: (202) 383-5414
13 | tmorales@omm.com

14 | *Attorneys for Defendants*

15 |

16 |                    **UNITED STATES DISTRICT COURT**
17 |                    **EASTERN DISTRICT OF WASHINGTON**

18 | CASEY CLARKSON,                    Case No. 2:19-cv-0005 TOR

19 |              Plaintiff,            **DEFENDANTS ALASKA AIRLINES, INC. AND HORIZON AIR INDUSTRIES, INC.'S MOTION TO DISMISS**

20 |      v.

21 | ALASKA AIRLINES, INC.,
HORIZON AIR INDUSTRIES, INC.,
22 | and ALASKA AIRLINES            **NOTED FOR HEARING: JUNE11, 2019**
PENSION/BENEFITS
23 | ADMINISTRATIVE COMMITTEE,      WITHOUT ORAL ARGUMENT

24 |              Defendants.

25 |

26 |

MOTION TO DISMISS
Case No. 2:19-cv-0005 TOR

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................1

LEGAL STANDARD.............................................................................2

ARGUMENT .........................................................................................3

I.  COUNT IV, FOR WAGES DURING PERIODS OF
    MILITARY LEAVE, FAILS TO STATE A CLAIM ......................3

    A.  USERRA Does Not Require Employers to Pay
        Employees' Wages During Military Leaves............................3

    B.  Section 4316(b) Does Not Require Employers to Pay
        Employees' Wages During Military Leaves............................7

        1.  Wages for Work Not Performed are Not
            "Benefits" Under Section 4316(b)(1)..............................7

        2.  Construing USERRA's "Benefits" Provisions to
            Include Wages Would be Inconsistent with
            Applicable Precedent and Result in Substantial
            Adverse Consequences ................................................12

II. PLAINTIFF'S "VIRTUAL CREDIT" POLICY CLAIMS
    AGAINST HORIZON (COUNTS I-III) FAIL TO STATE A
    CLAIM .......................................................................................15

    A.  Count I Should be Dismissed Because Plaintiff Does Not
        Allege That Horizon Reemployed Him in an Inferior
        Position.................................................................................16

    B.  Count II Should Be Dismissed Because Plaintiff Does
        Not Allege That He Was Denied Any Seniority-Based
        Benefits ................................................................................17

    C.  Count III Should be Dismissed Because Plaintiff Has
        Failed to Allege a Military Leave Covered by Section
        4316(c) ..................................................................................19

    CONCLUSION...........................................................................20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accardi v. Penn. R. Co.*,
  383 U.S. 225 (1966)................................................................................10

*Aiello v. Detroit Free Press, Inc.*,
  570 F.2d 145 (6th Cir. 1978)...................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................3

*Brooks v. Fiore*,
  2001 WL 1218448 (D. Del. Oct. 11, 2001) ..............................................5

*Buckley v. Peak6 Investments, LP*,
  827 F. Supp. 2d 846 (N.D. Ill. Oct. 27, 2011) ..................................5, 13

*Butterbaugh v. Dep't. of Justice*,
  336 F.3d 1332 (Fed. Cir. 2003)................................................................6

*Clegg v. Ark. Dep't of Corr.*,
  496 F.3d 922 (8th Cir. 2007)..................................................................17

*Coffy v. Republic Steel Corp.*,
  447 U.S. 191 (1980)................................................................................18

*DeLee v. City of Plymouth*,
  773 F.3d 172 (7th Cir. 2014)..................................................................18

*Duncan v. Tyco Fire Products*,
  2018 WL 3303305 (N.D. Ala. July 5, 2018) ............................... 1, 5, 13

*Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*,
  314 U.S. 95 (1941)..................................................................................10

*Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000)................................................................................11

*Foster v. Dravo Corp.*,
  420 U.S. 92 (1975)..................................................................................18

*Francis v. Booz, Allen & Hamilton, Inc.*,
  452 F.3d 299 (4th Cir. 2006)..................................................................17

MOTION TO DISMISS  ii
Case No. 2:19-cv-0005 TOR

1

# TABLE OF AUTHORITIES
### (continued)

2

**Page(s)**

3

*Gagnon v. Sprint Corp.*,

4

   284 F.3d 839 (8th Cir. 2002)..................................................................8

5

*Gustafson v. Alloyd Co.*,

6

   513 U.S. 561 (1995)............................................................................10

*Hart v. Family Dental Grp., PC*,

7

   645 F.3d 561 (2d Cir. 2011)................................................................17

8

*Jordan v. Air Prods. & Chems., Inc.*,

9

   225 F. Supp. 2d 1206 (C.D. Cal. 2002) ..............................................17

*Koellhoffer v. Plotke-Giordani*,

10

   858 F. Supp. 2d 1181 (D. Colo. 2012)................................................15

11

*LiPani v. Bohack Corp.*,

12

   546 F.2d 487 (2d Cir. 1976)................................................................19

13

*McIntosh v. Partridge*,

   540 F.3d 315 (5th Cir. 2008).................................................................4

14

*Miller v. City of Indianapolis*,

15

   281 F.3d 648 (7th Cir. 2002).................................................................5

16

*Monroe v. Standard Oil Co*,

   452 U.S. 549 (1981)...........................................................................4, 5

17

*Nazario, Jr. v. City of Riverside*,

18

   2011 WL 13143715 (C.D. Cal. Mar. 25, 2011)....................................4

19

*Saglimbene v. Venture Indus. Corp.*,

20

   895 F.2d 1414 (6th Cir. 1990) ............................................................15

21

*San Luis & Delta-Mendota Water Auth. v. Haugrud*,

   848 F.3d 1216 (9th Cir. 2017) ............................................................10

22

*Sprewell v. Golden State Warriors*,

23

   266 F.3d 979 (9th Cir. 2001).................................................................3

24

*Stevens v. Corelogic, Inc.*,

   899 F.3d 666 (9th Cir. 2018)...............................................................11

25

26

MOTION TO DISMISS - iii
Case No. 2:19-cv-0005 TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1
2

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

3
4

*Tully v. Dep't of Justice,*
 481 F.3d 1367 (Fed. Cir. 2007)...........................................................16

5

*United States v. Woody,*
 220 F. Supp. 3d 682 (E.D. Va. 2016) ...............................................14

6
7

*Walters v. Metro. Educ. Ents., Inc.,*
 519 U.S. 202 (1997)................................................................................9

8
9

*Warren v. Int'l Bus. Machines Corp.,*
 358 F. Supp. 2d 301 (S.D.N.Y. 2005)................................................20

10

*Washington v. Blue Grace Logistics, LLC,*
 2018 WL 300452 (M.D. Fla. Jan. 4, 2018).......................................20

11
12

*Whitman v. Am. Trucking Ass'n.,*
 531 U.S. 457 (2001)..............................................................................14

13

**Statutes**

14

38 U.S.C. § 4301(a)(1)...............................................................................4

15

38 U.S.C. § 4303(12)................................................................................18

16

38 U.S.C. § 4303(2)..............................................................................8, 12

17

38 U.S.C. § 4311...........................................................................................4

18

38 U.S.C. § 4312(a) ..................................................................................16

19

38 U.S.C. § 4313(a) ..................................................................................16

38 U.S.C. § 4316........................................................................................18

20

38 U.S.C. § 4316(a) ..................................................................................18

21

38 U.S.C. § 4316(b)(1)........................................................................ 7, 8, 13

22

38 U.S.C. § 4316(b)(1)(B).......................................................................13

23

38 U.S.C. § 4316(c) ..................................................................................20

24

38 U.S.C. § 4316(d) ..................................................................................12

25

38 U.S.C. § 4323(d)(1)(B) .......................................................................11

26

38 U.S.C. §§ 4301-4335 ............................................................................4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

38 U.S.C. §§ 4317-4318 .................................................................5

5 U.S.C. § 6323(a)(1).....................................................................6

42 U.S.C. § 2000e(b) ...................................................................14

38 U.S.C. § 4303(4)(A)................................................................14

**Other Authorities**

156 Cong. Rec. S7656-02 (daily ed. Sep. 28, 2010) .................................9

Black's Law Dictionary (10th ed. 2014) ........................................9, 10

*Employee Compensation and Benefits Tax Guide* (2018) .........................9

*General Frequently Asked Questions*, U.S. DEP'T. LABOR,
   https://www.dol.gov/vets/generalfaq.htm (last visited Apr. 9, 2019) .................6

Jackson Brainerd, *Paid Family Leave in the States*, 25 LEGIS BRIEF 31 (Aug. 2017),
   http://www.ncsl.org/research/labor-and-employment/paid-family-leave-in-the-
   states.aspx...........................................................................................13

*Jury Duty Leave Laws*, EMP'T LAW HANDBOOK,
   https://www.employmentlawhandbook.com/leave-laws/jury-duty-leave-laws/
   (last visited Apr. 9, 2019)..................................................................13

*Jury Duty*, U.S. DEP'T. LABOR, https://www.dol.gov/general/topic/benefits-
   leave/juryduty (last visited Apr. 9, 2019) ........................................13

Kathryn Piscitelli & Edward Still, The USERRA Manual: UNIFORM SERVICES
   EMPLOYMENT & REEMPLOYMENT RIGHTS, § 3:5 (2011) .......................5

Merriam Webster ............................................................................9

U.S. ATT'Y. OFF., DIST. AZ., UNIF'D SERV. EMP'T. & REEMP'T RIGHTS ACT (2011),
   https://www.justice.gov/sites/default/files/usao-
   az/legacy/2011/01/07/USERRA_Handbook.pdf ................................7

**Regulations**

20 C.F.R. § 1002.2 .........................................................................4

20 C.F.R. § 1002.7 .........................................................................6

70 FR 75246-01 ........................................................................1, 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## PRELIMINARY STATEMENT

Plaintiff Casey Clarkson is a pilot at Alaska Airlines, Inc. ("Alaska").  In his Complaint, Plaintiff asserts that the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 *et seq.* ("USERRA"), requires Alaska and his former employer, Horizon Air Industries, Inc. ("Horizon"), to pay his wages for periods of short-term military leave.  Plaintiff is wrong.  The Department of Labor ("DOL")—the entity tasked with implementing USERRA— has expressly stated that wage payments "by employers to their employees absent to perform military service" are "neither required nor addressed in USERRA."  70 FR 75246-01 ("DOL Final Rules") at 75249.  Courts, in turn, have recognized that USERRA "does not require an employer to pay an employee for time away from work performing service." *Duncan v. Tyco Fire Products*, 2018 WL 3303305, at *4 (N.D. Ala. July 5, 2018).  "[W]hen an employer provides paid military leave under its policies, it does so above and beyond any requirements in USERRA." *Id.* Plaintiff does not even appear to disagree with this accepted principle.  Instead, he contends that because Alaska and Horizon pay employee wages during certain short-term work absences such as jury duty, they must also pay employee wages during short-term military leave.  That requirement, however, is found nowhere in USERRA and would be an end-run around the established rule that USERRA does not require paid military leave.  Accordingly, as explained in detail below, Count IV—Plaintiff's sole count against Alaska and one of his four counts against Horizon—fails to state a claim.

Plaintiff's three other claims against Horizon (Counts I-III) likewise fail to state a claim.  In those counts, Plaintiff alleges that Horizon violated USERRA by use of a "virtual credit" policy that provides a pilot on a military leave with 2.45 hours of service credit per day of absence.  The problem for Plaintiff, however, is

MOTION TO DISMISS - 1
Case No. 2:19-cv-0005 TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   that all pilots (military and non-military) and all leaves of absence (military and

2   non-military) are treated exactly the same under Horizon's policy (i.e., any pilot on

3   any leave receives the same 2.45 hours of credit).  And USERRA does not provide

4   for better benefits for employees on military absences compared to other types of

5   absences.  In his quest to construct a USERRA claim based on Horizon's policy

6   despite its fundamental neutrality, Plaintiff relies on sections of USERRA that

7   have no application here.  As is typical when attempting to force a square peg in a

8   round hole, Plaintiff's attempt fails.

9        In Count I, Plaintiff alleges Horizon violated Sections 4312 and 4313 of

10  USERRA by failing to "reemploy" him after his military leave.  Count I fails

11  because Plaintiff concedes that he was promptly reemployed to his same position

12  as a Horizon pilot after each military leave at issue, which is all Sections 4312 and

13  4313 require.  In Count II, Plaintiff alleges that Horizon violated Section 4316(a)

14  by not providing Plaintiff with more than 2.45 hours of daily service credit during

15  his military leaves.  Because, based on Plaintiff's own allegations, service credit

16  above 2.45 hours does not accrue automatically to any Horizon pilot as a condition

17  of employment, it cannot be a "seniority-based benefit," which is all that Section

18  4316(a) protects.  In Count III, Plaintiff alleges Horizon violated Section 4316(c)

19  by demoting him to an inferior Reserve Line status following military leave.

20  Section 4316(c), however, only applies to service members who take military

21  leaves of 31-days or greater and are subsequently discharged without cause—

22  neither of which Plaintiff alleges.

23       Accordingly, as detailed below, Counts I-IV (all of the counts against Alaska

24  and Horizon) should be dismissed for failure to state a claim.

25                          **LEGAL STANDARD**

26       Under Federal Rule of Civil Procedure 12(b)(6), "only a complaint that

MOTION TO DISMISS - 2
Case No. 2:19-cv-0005 TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*,

2   556 U.S. 662, 679 (2009).  Under Rule 12(b)(6), the Court need not accept

3   "allegations that are merely conclusory, unwarranted deductions of fact, or

4   unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988

5   (9th Cir. 2001).

6   ## ARGUMENT

7   ## I.    COUNT IV, FOR WAGES DURING PERIODS OF MILITARY

8   ## LEAVE, FAILS TO STATE A CLAIM

9   Plaintiff is a pilot for Alaska.  (Compl. ¶ 13.)  Plaintiff was a pilot for

10  Horizon from November 2013 until November 2017, when Alaska hired him.  (*Id.*)

11  Plaintiff alleges that Alaska and Horizon violated USERRA by "failing to pay

12  employees their regular wages or salaries when they take short-term military leave,

13  while continuing to pay employees their wages or salaries when they take other

14  comparable forms of non-military leave such as jury duty, bereavement leave, and

15  sick leave." (*Id.* ¶ 82.)  Plaintiff asserts that Alaska and Horizon must "provide

16  regular wages or salaries to employees when they take short-term military leave."

17  (*Id.* ¶ 9.)  Plaintiff's basis for this claim is Section 4316(b)(1) of USERRA.  (*Id.* ¶¶

18  79-85.)  But USERRA does not require, in Section 4316(b) or otherwise, that a

19  civilian employer pay employees' wages for periods of military service.

20  Accordingly, Count IV should be dismissed for failure to state a claim.

21  ### A.    USERRA Does Not Require Employers to Pay Employees' Wages

22  ### During Military Leaves

23  USERRA "protects employees from being discriminated against by their

24  employers because of their military service." *McIntosh v. Partridge*, 540 F.3d 315,

25  320 (5th Cir. 2008) (citing 38 U.S.C. § 4311).  Its purpose is to "encourage

26  noncareer service in the uniformed services by eliminating or minimizing the

MOTION TO DISMISS - 3
Case No. 2:19-cv-0005 TOR

disadvantages to civilian careers and employment which can result from such service." *Nazario, Jr. v. City of Riverside*, 2011 WL 13143715, at *9 (C.D. Cal. Mar. 25, 2011) (quoting 38 U.S.C. § 4301(a)(1)).  To effectuate this purpose, USERRA includes provisions regarding non-discrimination (Section 4311), reemployment (Sections 4312 and 4313), entitlement to seniority-based and non-seniority-based benefits after periods of uniformed service (Section 4316), and entitlement to specific benefits, such as health (Section 4317) and pension (Section 4318).  *See generally* 38 U.S.C. §§ 4301-4335.

USERRA, however, does not include any provision requiring employers to pay employees' wages for military service.  In this regard, USERRA mirrors its immediate predecessor statute, the Vietnam Era Veterans' Readjustment Assistance Act of 1974 ("VRRA"), which similarly did "not require the employer to pay the employee for the time he is absent for military training duty, or even to make up the difference between his military pay and his regular earnings for that period." *See Monroe v. Standard Oil Co*, 452 U.S. 549, 563, n.14 (1981); *see also* 20 C.F.R. § 1002.2 ("In enacting USERRA, Congress emphasized USERRA's continuity with the VRRA.").

Precedent confirms what the statute's text and structure make clear.  For example, in rejecting an employee's claim that USERRA entitled him to "forty hours of pay each week . . . while he was away on active military duty," one federal court recently held that:

> USERRA "does not require an employer to pay an employee for time away from work performing service, [but] an employer policy, plan, or practice that provides such a benefit is permissible under USERRA."  20 C.F.R. § 1002.7(c); *see* 38 U.S.C. § 4316(b)(1)(B).  In other words, when an employer provides paid military leave under its policies, it does so above and beyond any requirements in USERRA. *Gross v. PPG Indus., Inc.*, 636 F.3d 884, 891 (7th Cir. 2011).

MOTION TO DISMISS - 4
Case No. 2:19-cv-0005 TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    *Duncan v. Tyco Fire Products*, 2018 WL 3303305, at \*4 (N.D. Ala. July 5, 2018).

2    Federal courts have repeatedly recognized this uncontroversial proposition. *See,*

3    *e.g., Miller v. City of Indianapolis*, 281 F.3d 648, 650 (7th Cir. 2002) ("[USERRA]

4    does not expressly require paid military leave."); *Buckley v. Peak6 Investments,*

5    *LP*, 827 F. Supp. 2d 846, 856 (N.D. Ill. Oct. 27, 2011) ("USERRA . . . does not

6    require employers to pay employees on military leave.") (citing Kathryn Piscitelli

7    & Edward Still, The USERRA Manual: UNIFORM SERVICES EMPLOYMENT &

8    REEMPLOYMENT RIGHTS, § 3:5 (2011) ("Generally, USERRA does not require

9    employers to pay employees wages for time spent performing military service."));

10   *Brooks v. Fiore*, 2001 WL 1218448, at \*10 (D. Del. Oct. 11, 2001) (employer

11   has "*voluntary* policy of paying its employees the difference between any military

12   pay received and their usual pay during periods of military service. However,

13   there is no requirement under USERRA that [the employer] provide such

14   differential pay to its employees.") (emphasis in original).

15       "If Congress had wanted to impose an additional obligation upon

16   employers, guaranteeing that employee-reservists . . . earn the same amount of pay

17   that they would have earned without absences attributable to military reserve

18   duties, it could have done so expressly." *See Monroe*, 452 U.S. at 564. Indeed,

19   when Congress *has* required compensation during periods of military service, it

20   has said so clearly. For example, Congress in USERRA expressly requires

21   employers to provide certain pension and healthcare benefits during periods of

22   active service. *See* 38 U.S.C. §§ 4317-4318. And outside the USERRA context,

23   Congress expressly requires that federal employees receive wages for periods of

24   military service of up to 15 days per year. *See* 5 U.S.C. § 6323(a)(1) (federal

25   employees are "entitled to leave without loss in pay . . . at the rate of 15 days per

26   fiscal year."); *Butterbaugh v. Dep't. of Justice*, 336 F.3d 1332, 1333 (Fed. Cir.

MOTION TO DISMISS - 5
Case No. 2:19-cv-0005 TOR

2003) (same).  The presence of a wage payment requirement for *federal* employees (albeit limited to 15 days) highlights the absence of such a requirement for non-federal employees like Plaintiff under USERRA.

Indeed, the two federal agencies with primary responsibility for administering and enforcing USERRA have expressly confirmed that the statute does not require employers to pay wages during periods of military service.  The DOL, the agency delegated authority to administer USERRA, has explained that "employees absent from employment for military service are *not* required [under the statute] to be compensated by their civilian employer during that service." DOL Final Rules (2005) at 75292, 20 C.F.R. § 1002.7; *see also* DOL Final Rules (2005) at 75249 ("The term 'differential pay' refers to payments by employers to their employees absent to perform military service, and this pay is neither required nor addressed in USERRA.")  The DOL also provides the following FAQ guidance regarding pay under USERRA: "While many employers take the commendable step of providing all or part of employees' pay while they perform military service, there is no obligation under . . . [USERRA] for them to do so."[1]  Department of Justice officials who enforce USERRA have similarly stated:  "Although some private and many government employers provide full or partial civilian pay to employees absent on military duty-usually for a limited period of time—the law requires only an unpaid leave of absence."[2]

---

[1] *General Frequently Asked Questions*, U.S. DEP'T. LABOR, https://www.dol.gov/vets/generalfaq.htm (last visited Apr. 9, 2019).

[2]  *See, e.g.,* U.S. ATT'Y. OFF., DIST. AZ., UNIF'D SERV. EMP'T. & REEMP'T RIGHTS ACT (2011), https://www.justice.gov/sites/default/files/usao-az/legacy/2011/01/07/USERRA_Handbook.pdf.

MOTION TO DISMISS - 6
Case No. 2:19-cv-0005 TOR

**B.      Section 4316(b) Does Not Require Employers to Pay Employees' Wages During Military Leaves**

According to Plaintiff, even though USERRA does not include any "Pay" provision requiring payment of employees' wages during military leave, he is entitled to pay as a "benefit" under Section 4316(b).  (Compl. ¶¶ 79-85.)  Section 4316(b)(1) provides, in relevant part, that an employee on military leave is "entitled to such other rights and benefits not determined by seniority as are generally provided by the employer . . . to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan."  38 U.S.C. § 4316(b)(1).  Plaintiff alleges that Section 4316(b) requires Alaska and Horizon to "pay employees their regular wages or salaries when they take short-term military leave" because they pay the wages of employees on jury duty, bereavement leave, and sick leave.  (Compl. ¶ 82.)  In other words, Plaintiff argues that Alaska and Horizon must pay him wages for work he did not perform because pay for work not performed constitutes a "benefit" under Section 4316(b).

Plaintiff's theory of Section 4316(b) has no basis in the text or structure of the statute.  And if adopted, it would not only contradict the universally accepted principle just described—i.e., that USERRA does *not* require pay for periods of military service—but would also result in substantial adverse practical consequences that Congress could not have envisioned.

1.      Wages for Work Not Performed are Not "Benefits" Under Section 4316(b)(1)

Plaintiff is not entitled to wages under Section 4316(b) because wages for work not performed—*i.e.*, wages for a military leave of absence—are not a

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

"benefit" under Section 4316(b).  Section 4316(b)(1) provides that employees on military leave are "entitled to such other rights and benefits not determined by seniority as are generally provided by the employer . . . to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan."  38 U.S.C. § 4316(b)(1).  Section 4303(2), in turn, defines "benefits" to mean:

> the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes rights and benefits under a pension plan, a health plan, an employee stock ownership plan, insurance coverage and awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work hours or location of employment.

38 U.S.C. § 4303(2).

Wages for work not performed are not a "benefit" under USERRA.  The only reference to wages in Section 4303(2) is the phrase "including wages or salary for work performed," which Congress added in 2010 with the specific purpose of overruling an Eighth Circuit decision, *Gagnon v. Sprint Corp.*, 284 F.3d 839 (8th Cir. 2002).  In *Gagnon*, the court held that an employee's wage *rate* was not a benefit within the meaning of the statute.  *Id.* at 853.  Congress added this proviso in 2010 solely "to make it clear that wage discrimination is not permitted under USERRA."  156 Cong. Rec. S7656-02 (daily ed. Sep. 28, 2010).  Thus, if an employer applies different wage *rates* to active employees based on their prior military service—if, for example, an employee is paid $40 per hour but would have received $50 per hour but for her military absence—then Section 4303(2) may permit the employee to assert a claim for wage rate discrimination under

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   USERRA.  By contrast, Congress has not included any provision—in Section

2   4303(2) or otherwise—requiring employers to *pay wages* for periods that

3   employees are not working due to military leave.

4        Plaintiff's assertion that USERRA includes "wages" in the "benefits" that an

5   employer must provide for periods of military service is also inconsistent with the

6   fundamental tenet of employment law that wages and benefits are distinct.  A

7   benefit is not a wage, and a wage is not a benefit:

8        Employee fringe benefits are a broad form of compensation which are
    generally provided by the employer to executives and other

9        employees on a current basis as a supplement to current salary and

10       bonus payments.  There are many separate types of benefits that are
    included in this classification such as group-term life insurance, meals

11       and lodging furnished by the employer, employer health and accident

12       insurance, and others.

13  *Employee Compensation and Benefits Tax Guide*, at 301 (2018).

14       There is zero indication that Congress meant to depart from these settled

15  principles when it enacted USERRA—on the contrary, Congress codified them.

16  To start, Congress's decision to use the term "accrues" in the definition of

17  "benefits" dictates that wages, no matter the type, fall outside the definition of

18  benefits.  In ordinary, common parlance, the transitive verb "accrue" means "[t]o

19  accumulate periodically; to increase over a period of time."  Black's Law

20  Dictionary (10th ed. 2014); *see also* Merriam Webster (same); *Walters v. Metro.*

21  *Educ. Ents., Inc.*, 519 U.S. 202, 207 (1997) ("In the absence of an indication to the

22  contrary, words in a statute are assumed to bear their 'ordinary, contemporary,

23  common meaning.'" (quotations omitted)).  Pension benefits, for example, accrue

24  over time.  So do wage *rates*—for example, increased seniority might result in a

25  higher hourly rate.  But wages, as that term is commonly used, do not accrue.

26  They do not accumulate periodically; rather they are *earned*, usually "based on

MOTION TO DISMISS - 9
Case No. 2:19-cv-0005 TOR

1    time worked or quantity produced."  Black's Law Dictionary (10th ed. 2014).  It

2    follows that wages cannot be considered a "benefit" under USERRA because

3    USERRA benefits "accrue."

4         This is confirmed by the context in which the term "benefit" is defined.  In

5    addition to setting forth a general definition, Section 4303(2) contains a non-

6    exhaustive list of benefits, and it is axiomatic that the inclusion of such a list is

7    "illustrative of . . . the general principle."  *Fed. Land Bank of St. Paul v. Bismarck*

8    *Lumber Co.*, 314 U.S. 95, 100 (1941); *see, e.g., San Luis & Delta-Mendota Water*

9    *Auth. v. Haugrud*, 848 F.3d 1216, 1229 (9th Cir. 2017).  This interpretive principle

10   is consistent with the *noscitur a sociis* canon, which holds "that a word is known

11   by the company it keeps."  *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995).

12   Courts rely on this canon "to avoid ascribing to one word a meaning so broad that

13   it is inconsistent with its accompanying words, thus giving unintended breadth to

14   the Acts of Congress."  *Id.* (quotations omitted).

15        Here, the examples of "benefits" listed in § 4303(2) such as benefits under a

16   health, or employee stock ownership plan, and insurance coverage and awards, are

17   all types of compensation, but none depends on actual work—an employee is

18   usually awarded such benefits simply because he or she is and remains employed.

19   Severance pay and unemployment benefits are the same, except they accrue when

20   that relationship is terminated.  *See, e.g., Accardi v. Penn. R. Co.*, 383 U.S. 225,

21   230 (1966) (under predecessor statute, holding that severance pay is compensation

22   for the loss of "rights and benefits [an employee] forfeits by giving up his job").

23   And the opportunity to select work hours or location of employment (and one's

24   wage rate, as discussed below) is generally a function of longevity with a

25   company—again, the fact of a continued employment relationship, not direct

26   compensation for services rendered.  Wages are the exact opposite.  They are direct

MOTION TO DISMISS - 10
Case No. 2:19-cv-0005 TOR

1  remuneration for work performed by the employee for the employer.  For this

2  reason too, wages cannot be considered "benefits" under § 4303(2).

3          A contrary interpretation of the term "benefits" is also incompatible with

4  USERRA's broader structure.  *See, e.g., Food & Drug Admin. v. Brown &*

5  *Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) ("It is a fundamental canon

6  of statutory construction that the words of a statute must be read in their context

7  and with a view to their place in the overall statutory scheme."  (internal quotation

8  marks and citations omitted)).  Congress expressly provided in USERRA's remedy

9  provision that "[t]he court may require the employer to compensate the person for

10  any loss of wages *or* benefits suffered by reason of such employer's failure to

11  comply with the provisions of this chapter." 38 U.S.C. § 4323(d)(1)(B) (emphasis

12  added).  If wages were included within the meaning of benefits, there would have

13  been no reason for Congress separately to provide for recovery of wages.

14  Congress could simply have stated that an employee can recover for "any loss of

15  benefits."  It did not, and Plaintiff's reading of the term "benefits" would render §

16  4323(d)(1)(B)'s use of the term "wages" redundant.  *See, e.g., Stevens v.*

17  *Corelogic, Inc.*, 899 F.3d 666, 673 (9th Cir. 2018) (noting "[i]t is a fundamental

18  principle of statutory interpretation that we must give effect, if possible, to every

19  clause and word of a statute, so that no part will be inoperative or superfluous, void

20  or insignificant" (internal citations and quotations omitted)).[3]

21

22  [3] Plaintiff's assertion that the "benefits" provision in Section 4316(b) requires Alaska and Horizon to pay

23  employees' wages during periods of military service would also render superfluous Section 4316(d), which

24  provides that employees on a military leave of absence can use "vacation, annual, or similar leave with pay

25  accrued by the person before the commencement of such service."  38 U.S.C. § 4316(d).

26

MOTION TO DISMISS - 11
Case No. 2:19-cv-0005 TOR

1    Finally, even if wages were included within the definition of "benefits," that

2    definition by its terms only applies to "wages or salary for work *performed*."  38

3    U.S.C. § 4303(2) (emphasis added).  But what Plaintiff is asking for here is to be

4    paid wages for work *not* performed.  There is simply no basis in text or logic to

5    Plaintiff's construction of USERRA.

6    Plainly, then, Congress's inclusion of the phrase "wages or salary for work

7    performed" was not meant to fundamentally overhaul the definition of benefits and

8    unmoor USERRA from its employment law underpinnings.  Yet that is precisely

9    what Plaintiff would have this Court do.  Under Plaintiff's reading, that phrase

10   would cover not only wage *rates*, but *wages* writ large.  That is clearly not what

11   Congress intended when it included this statutory language.

12          2.    Construing USERRA's "Benefits" Provisions to Include Wages
               Would be Inconsistent with Applicable Precedent and Result in
13             Substantial Adverse Consequences

14

15   Plaintiff's assertion that Section 4316(b) includes a wages requirement also

16   cannot be reconciled with the accepted proposition that USERRA does *not* require

17   employers to pay wages during periods of military service.  Indeed, both *Duncan*

18   and *Buckley* expressly acknowledged the "benefits" provisions in Section

19   4316(b)(1) but nevertheless affirmed the longstanding principle that USERRA

20   does not require payment of employees' wages.  *Duncan*, 2018 WL 3303305, at *4

21   ("USERRA does not require an employer to pay an employee for time away from

22   work performing service) (citing, *inter alia*, 38 U.S.C. § 4316(b)(1)(B)); *Buckley,*

23   827 F. Supp. 2d at 856 ("USERRA . . . does not require employers to pay

24   employees on military leave." (citing, *inter alia*, 38 U.S.C. § 4316(b)(1)).

25   Plaintiff's reading of Section 4613(b), moreover, would result in serious

26

MOTION TO DISMISS - 12
Case No. 2:19-cv-0005 TOR

1    negative and unintended consequences.  For example, it would render USERRA

2    benefits dependent on differences in state and local wage laws.  State laws require

3    a significant number of employers in the United States to pay wages for some form

4    of non-military absences.  "[S]ome state laws require employers to pay employees

5    who are asked to serve jury duty."[4]  Other state laws require employers to pay

6    wages for sick absences.[5]  Plaintiff's argument would mean that a service member

7    in a state that requires wage payments for non-military absences (including jury

8    duty and sick leave) would be automatically entitled under USERRA to wages

9    during periods of service, whereas a similarly situated service member in a state

10   with no such requirement would not be.  Congress would not have excluded an

11   express wage payment provision in USERRA only to indirectly impose a wage

12   payment requirement dependent on a patchwork of state and local benefits laws.

13          Indeed, Plaintiff's *sui generis* theory would attach dramatic consequences to

14   any non-military paid absence provision—for example, paid sick leave, jury duty,

15   or bereavement leave.  Any employer in any industry that provides for any one of

16   these paid absences would be required to pay employees' wages under USERRA

17

18   _____

19   [4] *Jury Duty*, U.S. DEP'T. LABOR, https://www.dol.gov/general/topic/benefits-leave/juryduty (last visited

20   Apr. 9, 2019).  At least eight states and Washington D.C. require employers to pay at least a portion of

21   employees' wages while on jury duty.  *Jury Duty Leave Laws*, EMP'T LAW HANDBOOK,

22   https://www.employmentlawhandbook.com/leave-laws/jury-duty-leave-laws/ (last visited Apr. 9, 2019).

23   [5] "Seven states and D.C. require paid sick leave." Jackson Brainerd, *Paid Family Leave in the States*, 25

24   LEGIS BRIEF 31 (Aug. 2017), http://www.ncsl.org/research/labor-and-employment/paid-family-leave-in-

25   the-states.aspx.

26

MOTION TO DISMISS - 13
Case No. 2:19-cv-0005 TOR

for periods of military leave.[6]  This theory is incompatible with "the common sense principle of statutory construction that Congress does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouse holes."  *See United States v. Woody*, 220 F. Supp. 3d 682 (E.D. Va. 2016) (citing *Whitman v. Am. Trucking Ass'n.*, 531 U.S. 457, 468 (2001)).

Finally, Plaintiff's theory would have the perverse effect of encouraging employers, as well as state and local governments, to reduce the availability of pay for sick leave, jury duty, maternity or bereavement, and others form of non-military absences.  This disruptive effect—triggering immense economic consequences for employers based on non-military paid leaves—would be magnified in cases like this one, where the terms of Plaintiff's employment (including wages, military leave, and non-military absences) are collectively bargained for a "geographically dispersed" work force.  (Compl. ¶ 21.)  There is absolutely no indication that Congress intended Section 4316(b)(1) to enact such a dramatic overhaul of employers' (or state and local governments') decisions regarding whether non-military absences should be paid or unpaid.  Plaintiff's reading of Section 4316(b) should be rejected for this reason as well.

---

[6] One factor that magnifies the sweeping impact of Plaintiff's theory is that USERRA, unlike a number of other employment discrimination statutes, does not include any minimum employee threshold.  *Compare* Title VII, 42 U.S.C. § 2000e(b) (covered "employer" has "fifteen or more employees") with USERRA, 38 U.S.C. § 4303(4)(A) (no minimum employee threshold for "employer").

MOTION TO DISMISS - 14
Case No. 2:19-cv-0005 TOR

1
2

## II.   PLAINTIFF'S "VIRTUAL CREDIT" POLICY CLAIMS AGAINST HORIZON (COUNTS I-III) FAIL TO STATE A CLAIM

3
4
5
6
7
8

In Counts I-III, Plaintiff alleges that Horizon violated USERRA by adopting a "virtual credit" policy for all leaves of absence, including military leaves of absence. (Compl. ¶¶ 61-78.)  Plaintiff alleges that he filed a complaint with the DOL in August 2017 regarding Horizon's virtual credit policy and that the "DOL completed its investigation of Clarkson's complaint on October 4, 2017, and found that Horizon's virtual credit policy violates USERRA."  (*Id.* ¶¶ 51-53.)[7]

9
10
11
12
13
14
15
16
17
18

Horizon's virtual credit policy provides that all pilots shall receive 2.45 hours of daily service credit for any leave of absence.  (Compl. ¶¶ 36-40.)  A separate Horizon policy provides that a pilot who does not reach 70 hours of service credit in a bid period may be changed from Regular Line to Reserve Line holder status, until they reestablish Regular Line holder status.  (*Id.*)  Plaintiff alleges that Horizon's virtual credit policy caused him to fall short of 70 hours of service credit in certain bid periods where he was on military leave for part of the month.  (*Id.* ¶¶ 42-49.)  He alleges that, following his return from such leaves, he lost his Regular Line holder status after these bid periods and was therefore "demoted or otherwise harmed" by Horizon's virtual credit policy.  (*Id.* ¶¶ 1, 42-

19
20
21
22
23
24
25
26

---

[7] Plaintiff's allegations regarding this DOL investigation do nothing to change the fact that Plaintiff has failed to state a claim—and a DOL investigation of an individual complaint against a single employer as here (unlike general guidance or interpretation of a regulation issued by the DOL applicable to all employers) is entitled to no deference.  *See Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1191 (D. Colo. 2012); *Saglimbene v. Venture Indus. Corp.*, 895 F.2d 1414 (6th Cir. 1990).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

49.)[8]

The problem for Plaintiff is that all pilots (military and non-military) and all leaves of absence (military and non-military) are treated exactly the same under Horizon's policy (i.e., any pilot on any leave receives the same 2.45 hours of daily service credit). (Compl. ¶ 38.) USERRA, however, does not provide better benefits for pilots on military absences compared to other types of absences. *See*, *e.g.*, *Tully v. Dep't of Justice*, 481 F.3d 1367, 1370-71 (Fed. Cir. 2007) (acknowledging "congressional concern that a service member employee not 'receive greater benefits . . . by virtue of performing [military service] than would have been accorded if the person had not left that employment for uniformed service'"). Plaintiff nevertheless attempts to assert a claim for violation of USERRA in Counts I-III by alleging that Horizon's policy violates three provisions of USERRA. Plaintiff's attempt fails.

### A. Count I Should be Dismissed Because Plaintiff Does Not Allege That Horizon Reemployed Him in an Inferior Position

In Count I, Plaintiff alleges that Horizon violated Sections 4312 and 4313 of USERRA by failing to reemploy him in the same position after his military leaves. (Compl. ¶ 68.) Sections 4312 and 4313 set forth the "reemployment rights and benefits" of USERRA, and are limited in nature. 38 U.S.C. § 4312(a); 38 U.S.C. § 4313(a). Specifically, these provisions "only entitle[] a service person to immediate reemployment and do[] not prevent the employer from terminating him

---

[8] At a rate of 2.45 daily service credit hours, a Horizon pilot on military leave for a full 30-day bid period would receive 73.5 hours of service credit for the bid period, and thus it would not be possible for a pilot on a month-long leave to fall below 70 hours of service credit. (Compl. ¶¶ 38-39, 43-49.)

MOTION TO DISMISS - 16
Case No. 2:19-cv-0005 TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the next day or even later the same day." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 304 (4th Cir. 2006) (quoting *Jordan v. Air Prods. & Chems., Inc.*, 225 F. Supp. 2d 1206, 1208 (C.D. Cal. 2002)); *see also Hart v. Family Dental Grp., PC*, 645 F.3d 561, 563 (2d Cir. 2011) (same); *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 930 (8th Cir. 2007) (same).[9]

Here, Plaintiff alleges that Horizon reemployed him in his same position as a Horizon pilot after his service in 2017 but then later "demoted [him] to Regular Line holder in the *following month*" because he failed to satisfy his 70-hour requirement.  (Compl. ¶¶ 43-47 (emphasis added).)  Accordingly, Plaintiff has not alleged that Horizon *reemployed* him in an inferior position as required to state a claim under Sections 4312 and 4313.  Rather, his allegations confirm that his alleged demotion did not occur until the "following month."  (*Id.*)  Count I should therefore be dismissed.

### B.    Count II Should Be Dismissed Because Plaintiff Does Not Allege That He Was Denied Any Seniority-Based Benefits

In Count II, Plaintiff alleges that Horizon violated the seniority-based-benefits provisions of Section 4316(a) by failing to provide more than 2.45 hours

---

[9] "The apparent harshness of this result is addressed by the fact that [USERRA] §§ 4311 and 4316 operate to protect the employee as soon as she is reemployed." *Francis*, 452 F.3d at 304 (4th Cir. 2006). USERRA's "§ 4312 is part of a comprehensive statutory scheme and must be read in context with the rest of USERRA-specifically, for purposes of our analysis, §§ 4311 and 4316." *Id.* "In short, § 4312 requires an employer to rehire covered employees; § 4311 then operates to prevent employers from treating those employees differently after they are rehired; and § 4316 prevents employers from summarily dismissing those employees for a limited period after they are rehired." *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   of service credit per day of military leave.  (Compl. ¶ 73-74.)  Count II fails to state

2   a claim because Section 4316(a) only applies to seniority-based benefits and daily

3   service credit beyond 2.45 hours is not a seniority-based benefit on its face.

4   Rather, as Plaintiff alleges, all pilots receive the exact same amount of credit hours

5   for a day of absence, and a pilot can only earn service credit hours beyond 2.45 per

6   day by performing additional work.  (Compl. ¶ 40.)

7        Section 4316 of USERRA distinguishes between seniority-based and non-

8   seniority based benefits.  38 U.S.C. § 4316.  Section 4316(a) of USERRA provides

9   that, when an employee returns to employment after a military service absence, he

10  is entitled to "the seniority and seniority-based benefits that [he] would have

11  attained had [he] remained continuously employed."  *DeLee v. City of Plymouth*,

12  773 F.3d 172, 175 (7th Cir. 2014) (citing 38 U.S.C. § 4316(a)).  "The term

13  'seniority' means longevity in employment together with any benefits of

14  employment which accrue with, or are determined by, longevity in employment."

15  38 U.S.C. § 4303(12).  For a benefit to be a seniority benefit: "[1] there must be a

16  reasonable certainty that the benefit would have accrued if the employee had not

17  gone into the military service," and "[2] the nature of the benefit must be 'a reward

18  for length of service,' rather than a form of 'short-term compensation for services

19  rendered.'"  *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 197-98 (1980); *see also*

20  *Foster v. Dravo Corp.*, 420 U.S. 92, 100 (1975).

21       Here, Plaintiff alleges that Horizon's virtual credit policy—which applies

22  uniformly to all pilots on any leave of absence (military or non-military)—

23  deprived him of service credit that he could have obtained by performing

24  additional flying.  (*Id.* ¶ 38.)  Plaintiff specifically alleges that Horizon's policy

25  does not credit employees on leave "for the full amount of hours *they would have*

26  *worked had they not taken leave*," and thus an "employee who takes short-term

MOTION TO DISMISS - 18
Case No. 2:19-cv-0005 TOR

military leave often *must . . . perform additional work* to make up for the lost
hours from the 2.45 hour leave policy." (*Id.* ¶ 40 (emphasis added).)  Because the
virtual credit policy applies to all pilots on any leave of absence, and because pilots
can only earn credit beyond 2.45 hours per day by performing additional work, any
additional hours beyond 2.45 are quintessential non-seniority benefits. *See, e.g.,*
*LiPani v. Bohack Corp.*, 546 F.2d 487, 490 (2d Cir. 1976) (non-seniority benefits
"must be earned and do not accrue automatically with the mere passage of time."
(internal quotation marks and citations omitted)); *Aiello v. Detroit Free Press, Inc.*,
570 F.2d 145, 148 (6th Cir. 1978) (holding an employee "is not entitled to benefits
which require more than continued status, such as a work requirement demanding
actual performance on the job.").

Plaintiff thus fails to state a claim under Section 4316(a).[10]

## C.    Count III Should be Dismissed Because Plaintiff Has Failed to Allege a Military Leave Covered by Section 4316(c)

In Count III, Plaintiff alleges that Horizon violated Section 4316(c).
(Compl. ¶¶ 75-78.)  Section 4316(c) states, in relevant part:

A person who is reemployed by an employer under this chapter shall not be

discharged from such employment, except for cause:

---

[10] The reality is that the section of USERRA that applies to Horizon's virtual credit policy is Section 4316(b) because the policy provides a non-seniority-based benefit.  Of course, Plaintiff does not claim that Horizon's virtual credit policy violates Section 4316(b) because he concedes, as he must, that that the policy applies the same to every pilot on any type of leave. (*See, e.g.*, Compl. ¶ 38.)  Thus, he can never state a claim for violation of 4316(b).

MOTION TO DISMISS - 19
Case No. 2:19-cv-0005 TOR

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

> (1) within one year after the date of such reemployment, if the person's period of service before the reemployment was more than 180 days; or
>
> (2) within 180 days after the date of such reemployment, if the person's period of service before the reemployment was more than 30 days but less than 181 days.

38 U.S.C. § 4316(c). Thus, Section 4316(c) protects employees from termination without cause for one year after returning from a military leave of 181 days or more, and for six months after returning from a military leave of 31 days or more.

Plaintiff, however, does not allege that he took a military leave of 31 days or greater. (Compl. ¶¶ 75-78.) Specifically, Plaintiff alleges he was on military leave for 30 days (*id.* ¶ 43), 4 days (*id.* ¶ 46), some period in October 2017 less than the entire month (*id.* ¶ 47), and various periods of short military leave (¶¶ 55-57) each of which were less 31 days. Accordingly, Count III fails to state a claim. *See, e.g.*, *Warren v. Int'l Bus. Machines Corp.,* 358 F. Supp. 2d 301, 316 (S.D.N.Y. 2005) ("Because § 4316(c) must be interpreted as requiring a consecutive period of service of more than thirty days for relief . . . [plaintiff]'s claim under this provision fails as a matter of law."); *Washington v. Blue Grace Logistics, LLC*, 2018 WL 300452, at *3 n.1 (M.D. Fla. Jan. 4, 2018).

Plaintiff has also failed to allege that he was "discharged . . . without cause." *See* 38 U.S.C. § 4316(c). Rather, Plaintiff alleges only that Horizon placed him on a Reserve Line holder position, pursuant to a policy applicable to all Horizon pilots, once he failed to satisfy a 70-hour service credit threshold. (*See* Compl. ¶ 4.) Accordingly, Count III fails to state a claim for this reason as well.

## CONCLUSION

For these reasons, Counts I-IV fail to state a claim and should be dismissed.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2  Dated:  April 17, 2019

3

4  Mark W. Robertson (*pro hac vice*)
  (N.Y. Bar #4508248)

5  O'Melveny & Myers LLP

6  7 Times Square
  New York, New York 10036

7  Tel.: (212) 326-2000

8  Fax: (212) 326-2061
  mrobertson@omm.com

9

10  Tristan Morales (*pro hac vice*)
  (CA Bar # 278498)

11  O'Melveny & Myers LLP

12  1625 Eye Street, NW
  Washington, D.C. 20006

13  Tel.: (202) 383-5300

14  Fax: (202) 383-5414
  tmorales@omm.com

15

s/*Kathryn S. Rosen*
Kathryn S. Rosen

Kathryn S. Rosen, WSBA #29465
Davis Wright Tremaine
920 5th Avenue, Ste. 3300
Seattle, Washington 98104-1610
Tel.: (206) 622-3150
Fax: (206) 757-7700
katierosen@dwt.com

16

17

18

19

20

21

22

23

24

25

26

MOTION TO DISMISS - 21
Case No. 2:19-cv-0005 TOR

1

### <u>CERTIFICATE OF SERVICE</u>

2          The undersigned certifies that, on April 17, 2019, a true and correct copy of

3   Defendants Alaska Airlines, Inc. and Horizon Air Industries, Inc.'s Motion to

4   Dismiss, was served on all counsel of record by the Court's electronic filing

5   system (CM/ECF).

6

7                                     By */s/ Kathryn S. Rosen*

8                                        Kathryn S. Rosen (*pro hac vice*)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE - 1
Case No. 2:19-cv-0005 TOR