1  Matthew Z. Crotty (WSBA #39284)
   CROTTY & SON LAW FIRM, PLLC
2  905 W. Riverside Ave., Suite 404
   Spokane, WA 99201
3  Telephone: (509) 850-7011
   matt@crottyandson.com
4
   *Attorneys for Plaintiff*
5

6

7           **IN THE UNITED STATES DISTRICT COURT**
            **FOR THE EASTERN DISTRICT OF WASHINGTON**
8

9  CASEY CLARKSON, on behalf of        Case No. 2:19-cv-00005-TOR
   himself and all other similarly situated
10                                      **PLAINTIFF'S OPPOSITION TO**
        Plaintiff,                      **ALASKA AIRLINES AND**
11                                      **HORIZON AIR INDUSTRIES'**
   v.                                   **MOTION TO DISMISS**
12
   ALASKA AIRLINES, INC.,               **NOTED FOR HEARING:**
13 HORIZON AIR INDUSTRIES, INC.         **JUNE 11, 2019**
   and ALASKA AIRLINES PENSION/
14 BENEFITS ADMINISTRATIVE              WITHOUT ORAL ARGUMENT
   COMMITTEE,
15
        Defendants.
16

17

18

19

20

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

**INTRODUCTION**................................................................................1

**ALLEGATIONS OF THE COMPLAINT** ..................................2

**ARGUMENT** ..................................................................................3

**I.  Counts I-III Allege Valid Claims That Horizon's Virtual Credit Policy Violated USERRA §§ 4312, 4313, 4316(a) and 4316(c)**..................4

   **A. Horizon Misconstrues Counts I-III As Discrimination Claims**............5

   **B. Count I Alleges Valid Claims under USERRA §§ 4312 and 4313** ......7

   **C. Count II Properly Alleges a Claim under USERRA § 4316(a)** ...........9

   **D. Count III Properly Alleges a Claim under USERRA § 4316(c)**........12

**II.Count IV Alleges Claims Under USERRA § 4316(b) Against Both Alaska and Horizon** ..................................................................13

   **A. USERRA Broadly Defines the "Rights and Benefits" That Must Be Given Equally During Military and Non-Military Leave to Cover Wages When Employees Do Not Perform Work** ......................................14

   **B. USERRA's Legislative History Confirms That Payment When Work is Not Performed Are Rights and Benefits Under § 4316(b)** ..................19

   **C. Courts Have Held § 4316(b) Requires Employees to be Paid for Military Leave When Employees Are Paid for Comparable Leave**.......20

   **D. USERRA Must Be Interpreted Liberally and Consistent With Prior Case law** ..................................................................21

   **E. Properly Applying USERRA § 4316 Will Not Impose a General or Absolute Mandate on Employers to Provide Paid Military Leave.**........22

   **F. The Consequences of Applying § 4316(b) As Written Will Be Minimal and Cannot Trump the Text and History of USERRA**............24

**CONCLUSION**................................................................25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)............................................................................4

5

*Benetiz v. Montebello,*
   No. 09 Civ. 0303, 2010 WL 3814374 (C.D. Cal. Sept. 27, 2010) ....................14

6

7

*Boyle v. United States,*
   556 U.S. 938 (2009)..........................................................................16

8

*Brill v. AK Steel Corp.,*
   No. 09 Civ. 534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012)............14, 20, 21

9

*Brown v. Gardner,*
   513 U.S. 115 (1994)..........................................................................21

10

*Campbell v. Acuff-Rose Music, Inc.,*
   510 U.S. 569 (1994)..........................................................................18

11

12

*Clegg v. Ark. Dep't of Correction,*
   496 F.3d 922 (8th Cir. 2007) ............................................................8, 9

13

*Coffy v. Republic Steel Corp.,*
   447 U.S. 191 (1980)..........................................................................12

14

*DeLee v. City of Plymouth, Ind.,*
   773 F.3d 172 (7th Cir. 2014) ............................................................12

15

16

*Duarte v. Agilent Techs., Inc.,*
   366 F. Supp. 2d 1039 (D. Colo. 2005)................................................8

17

*Duffer v. United Cont'l Holdings, Inc.,*
   173 F. Supp. 3d 689 (N.D. Ill. 2016)............................................14, 21

18

*Foor v. Torrington Co.,*
   170 F.2d 487 (7th Cir. 1948) ............................................................12

19

*Francis v. Booz, Allen & Hamilton, Inc.,*
   452 F.3d 299 (4th Cir. 2006) ............................................................9

20

*Gagnon v. Sprint Corp.*,
284 F.3d 839 (8th Cir. 2002) ............................................................18

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) .............................................................3

*Greenlaw v. United States*,
554 U.S. 237 (2008)..........................................................................16

*Hanson v. County of Kitsap*,
21 F. Supp. 3d 1124 (W.D. Wash. 2014) ..........................................13

*Hart v. Fam. Dental Group, PC*,
645 F.3d 561 (2d Cir. 2011) ................................................................9

*Huhmann v. Fed. Express Corp.*,
874 F.3d 1102 (9th Cir. 2017) ...........................................................10

*Jewel v. Nat'l Sec. Agency*,
673 F.3d 902 (9th Cir. 2011) ...............................................................4

*Jordan v. Air Prods. and Chems., Inc.*,
225 F. Supp. 2d 1206 (C.D. Cal. 2002) ...............................................5

*King v. St. Vincent's Hosp.*,
502 U.S. 215 (1991)...........................................................................22

*Kirkendall v. Dep't of Army*,
479 F.3d 830 (Fed. Cir. 2007) .............................................................5

*Koellhoffer v. Plotke-Giordani*,
858 F. Supp. 2d 1181 (D. Colo. 2012)..................................................6

*Maher v. Chicago*,
463 F. Supp. 2d 837 (N.D. Ill. 2006), *aff'd* 547 F.3d 817 (7th Cir.
2008) ..................................................................................................19

*Middleton v. City of Sherwood*,
621 F. Supp. 2d 1089 (D. Or. 2009) .....................................................8

*Monroe v. Standard Oil Co.*,
452 U.S. 549 (1981)...........................................................................22

*Nigg v. U.S. Postal Serv.*,
    555 F.3d 781 (9th Cir. 2009) ................................................................24

*Ouimette v. County of Los Angeles*,
    2:12-CV-6268-ODW, 2012 WL 6214305 (C.D. Cal. Dec. 12,
    2012) ................................................................................................5

*Paxton v. City of Montebello*,
    712 F. Supp. 2d 1007 (C.D. Cal. 2010) ....................................................21

*Petty v. Metro. Gov't of Nashville & Davidson Cty.*,
    687 F.3d 710 (6th Cir. 2012) ................................................................19

*Pucilowski v. Dep't of Justice*,
    498 F.3d 1341 (Fed. Cir. 2007) ...............................................15, 23, 24

*Quinn v. Everett Safe & Lock, Inc.*,
    53 F. Supp. 3d 1335 (W.D. Wash. 2014) ....................................................6

*Rogers v. City of San Antonio*,
    392 F.3d 758 (5th Cir. 2004) ................................................................14

*Saglimbene v. Venture Indus. Corp.*,
    No. 89-1248, 1990 WL 10709 (6th Cir. 1990) (unpublished)............................6

*Sebelius v. Cloer*,
    569 U.S. 369 (2013)................................................................................25

*Seiler v. Hollidaysburg Am. Legion Ambul. Serv., Inc.*,
    CIV.A. 3:10-41, 2011 WL 4017965 (W.D. Pa. Sept. 8, 2011) ........................13

*Serricchio v. Wachovia Secs. LLC*,
    658 F.3d 169 (2d Cir. 2011) ................................................................8, 11

*Sheppard v. David Evans & Assoc.*,
    694 F.3d 1045 (9th Cir. 2012) ................................................................4

*Toor v. Lynch*,
    789 F.3d 1055 (9th Cir. 2015) ................................................................17

*United States v. Missouri*,
    67 F. Supp. 3d 1047 (W.D. Mo. 2014)....................................................23

*United States v. Nevada*,
No. 09 Civ. 00314, 2012 WL 1530619 (D. Nev. May 1, 2012)........................6

*Waltermyer v. Aluminum Co. of Am.*,
804 F.2d 821 (3d Cir. 1986) ...............................................13, 14, 20, 22

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008) ..............................................................3

*Ziober v. BLB Res., Inc.*,
839 F.3d 814 (9th Cir. 2016) .............................................................21

**Statutes**

5 U.S.C. § 6323(a)(1).........................................................................24

ERISA § 104(b), 29 U.S.C. § 1024(b).........................................................2

Pub. L. No. 111-275, § 701(a) (2010) .......................................................18

USERRA § 4301(a)(1), 38 U.S.C. § 4301(a)(1).............................................25

USERRA § 4302(a), 38 U.S.C. § 4302(a) ...................................................24

USERRA § 4302(2), 38 U.S.C. § 4302(2).....................................................14

USERRA § 4303(2), 38 U.S.C. § 4303(2).................................................*passim*

USERRA § 4303(12), 38 U.S.C. § 4303(12)...................................................10

USERRA § 4311, 38 U.S.C. § 4311 ...........................................................5

USERRA § 4311(a), 38 U.S.C. § 4311(a)............................................18, 19, 23

USERRA § 4312, 38 U.S.C. § 4312..........................................................*passim*

USERRA § 4312(a), 38 U.S.C. § 4312(a) ...............................................7, 19

USERRA § 4313, 38 U.S.C. § 4313..........................................................*passim*

USERRA § 4313(a), 38 U.S.C. § 4313(a)......................................................7

USERRA § 4313(a)(1)(A), 38 U.S.C. § 4313(a)(1)(A) .........................................7

USERRA § 4313(a)(1)(B), 38 U.S.C. § 4313(a)(1)(B)..........................................7

USERRA § 4313(a)(4), 38 U.S.C. § 4313(a)(4)......................................................7

USERRA § 4314, 38 U.S.C. § 4314...........................................................................5

USERRA § 4315, 38 U.S.C. § 4315...........................................................................5

USERRA § 4316, 38 U.S.C. § 4316...........................................................................5

USERRA § 4316(a), 38 U.S.C. § 4316(a)...........................................................*passim*

USERRA § 4316(b), 38 U.S.C. § 4316(b)...........................................................*passim*

USERRA § 4316(c), 38 U.S.C. § 4316(c)...........................................3, 4, 12, 13

USERRA § 4316(c)(2), 38 U.S.C. § 4316(c)(2).....................................................12

USERRA § 4317, 38 U.S.C. § 4317..........................................................................24

USERRA § 4318, 38 U.S.C. § 4318..........................................................................24

USERRA § 4323(d), 38 U.S.C. § 4323(d)................................................................19

USERRA § 4323(d)(1)(B), 38 U.S.C. § 4323(d)(1)(B) ..........................................19

USERRA § 4323(d)(1)(C), 38 U.S.C. § 4323(d)(1)(C) ..........................................19

**Other Authorities**

20 C.F.R. § 1002.33 ....................................................................................................6

20 C.F.R. § 1002.150(c)............................................................................................11

20 C.F.R. § 1002.193(a)..............................................................................................7

20 C.F.R. § 1002.194...................................................................................................7

20 C.F.R. § 1002.196(a)..............................................................................................7

20 C.F.R. § 1002.196(b)..............................................................................................7

20 C.F.R. § 1002.196(c)..............................................................................................7

20 C.F.R. § 1002.212 ................................................................................................10

20 C.F.R. § 1002.312(c)............................................................................................19

70 Fed. Reg. 75246, 75262-64 (Dec. 19, 2005) ......................................................23

156 Cong. Rec. S7656-02 (daily ed. Sep. 28, 2010) ...............................................17

Black's Law Dictionary (10th ed. 2014) .................................................................17

H.R. Rep. No. 103-65 (1993)..........................................................................*passim*

S. Rep. No. 103-158 (1993) ...........................................................................20, 22

Webster's New World Dictionary 9 (1994)...............................................................17

Webster's New World Dictionary 18 (1994)..............................................................15

Webster's Ninth New College Dictionary 50 (1986) ...............................................17

Webster's Ninth New Collegiate Dictionary 939 (1986) ........................................15

1

## INTRODUCTION

2      This suit alleges violations of the Uniformed Services Employment and

3 Reemployment Rights Act ("USERRA") against Alaska Airlines, Inc. ("Alaska")

4 and Horizon Air Industries ("Horizon") for failing to pay employees when they

5 take short-term military leave, even though they pay employees who take other

6 comparable forms of leave, and against Horizon for failing to properly re-employ

7 employees who take military leave and provide them with rights and benefits.

8      USERRA obligates employers to provide reservists on military leave the

9 same rights and benefits that other employees receive when they take comparable

10 forms of leave. Defendants argue that the Complaint seeks to impose a general

11 mandate for employers to pay all reservists for military leave, and that "rights and

12 benefits" owed under USERRA § 4316(b) do not include paid leave. But these

13 arguments contradict the text, legislative history, case law, and proper statutory

14 interpretation of USERRA.

15      USERRA requires that employers re-employ returning servicemembers to

16 the same position and the same seniority-based benefits that they would have

17 received if they had been continuously employed and also prevents discharging

18 employees except for cause if they take 31 days of leave. Horizon mistakenly

19 believes that these are discrimination claims. As the Complaint sufficiently alleges

20 all of these claims, Defendants' motion to dismiss should be denied.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

## ALLEGATIONS OF THE COMPLAINT

Casey Clarkson worked for Horizon as a turboprop passenger aircraft pilot from November 2012 until he was hired as a pilot for 737 passenger jets for Alaska on November 6, 2017. Compl. & Answ. ¶ 13. He is still employed by Alaska. *Id.* From at least November 2012 until June 30, 2018, Plaintiff was a member of the Washington Air National Guard. Compl. ¶ 13. During his employment at Horizon and Alaska, Plaintiff took leave to perform his military duties. *Id.* ¶¶ 43, 47, 56-57.

The Complaint alleges five claims, [1] four of which concern Defendants' policies on military leave. *Id.* ¶ 17. Counts I-III allege USERRA violations by Horizon under its "Virtual Credit Policy." *Id.* ¶¶ 61-78. Horizon divides its turboprop pilots into three groups: Regular Line, Reduced Line, and Reserve Line holders. *Id.* ¶ 39. Regular Line holders make more money and have a more predictable schedule than the other two groups and is the only group that receives a 70-hour per month minimum guarantee. *Id.* To maintain this status, a pilot must work or be credited at least 70 hours per month. *Id.* But under the Virtual Credit Policy, pilots who take military leave are provided only 2.45 hours of "virtual

---

[1]     Count V alleges an individual claim for violations of ERISA § 104(b) by the Alaska Airlines 401(k) Plan Pension/Benefits Administrator Committee. *Id.* ¶¶ 87-94. The Committee Answered the Complaint. ECF No. 17 ("Answ.").

credit" per day, even though Horizon pilots work many more hours on a normal working day. *Id.* ¶¶ 4, 38. This Policy caused Plaintiff (and other pilots returning from military leave) to lose their status as Regular Line Holders unless they worked additional hours. *Id.* ¶¶ 4, 40.

Count I alleges that this Policy violated USERRA §§ 4312 and 4313 because employees were not reemployed in the position that they would have held but for military service. *Id.* ¶¶ 61-69. Count II alleges that the Policy violated USERRA § 4316(a), which requires that such employees be provided the seniority and related rights and benefits that they would have attained if they had remained continuously employed. *Id.* ¶¶ 70-74. Count III alleges that Horizon violated USERRA § 4316(c) in applying the Policy by discharing employees from a position following military leave of at least 31 days without cause. *Id.* ¶¶ 75-78. Count IV alleges that both Alaska and Horizon violated USERRA § 4316(b) by failing to pay employees when they take short-term military leave, but paying employees who take comparable forms of non-military leave. *Id.* ¶¶ 37, 41, 79-86.

**ARGUMENT**

A motion to dismiss "is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." *Williams v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008); *In re Gilead Scis. Sec. Litig.,* 536 F.3d 1049, 1057 (9th Cir. 2008) ("[A] district court ruling on a motion

1    to dismiss is not sitting as a trier of fact."). Instead, the only question is whether the

2    complaint sets forth a "short and plain statement of the claim showing that the

3    pleader is entitled to relief." *Sheppard v. David Evans & Assoc.,* 694 F.3d 1045,

4    1048 (9th Cir. 2012). In evaluating this question "a court must take the allegations

5    as true, no matter how skeptical the court may be," and the "complaint must

6    contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

7    plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 696 (2009) (quoting

8    *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)). And the Court must

9    also "draw all reasonable inferences in favor of the nonmoving party." *Jewel v.*

10   *Nat'l Sec. Agency*, 673 F.3d 902, 907 (9th Cir. 2011).

11   **I.    Counts I-III Allege Valid Claims That Horizon's Virtual Credit Policy Violated USERRA §§ 4312, 4313, 4316(a) and 4316(c)**

12           Counts I, II and III allege that Horizon violated USERRA §§ 4312 and 4313

13   (Count I) and USERRA § 4316(a) (Count II) and USERRA § 4316(c) (Count III)

14   by adopting a "virtual credit policy." Compl. ¶¶ 61-69, 70-74, 75-78. As Horizon

15   acknowledges, the Complaint alleges that this policy caused Plaintiff (and other

16   servicemembers) to be "demoted or otherwise harmed" as a result of taking

17   military leave. Def. Mem. at 15-16 (citing Compl. ¶¶ 1, 42-49).[2]

18   
19   [2]      Horizon attempts to contradict the factual allegations of the Complaint by

20   arguing that, at a rate of 2.45 credit hours per day, an employee on military leave

**A.    Horizon Misconstrues Counts I-III As Discrimination Claims**

Despite describing the Virtual Credit Policy and how the Complaint alleges the policy harms servicemembers, Horizon assumes that USERRA *only* protects servicemembers from discrimination. Def. Mem. at 15-16. From that mistaken premise, Horizon argues that "[t]he problem" with Counts I-III is that "military and non-military" pilots and leaves of absence "are treated exactly the same." *Id.* Yet USERRA does *not merely* protect servicemembers from discrimination: "In addition to prohibiting discrimination based on military service, *see* 38 U.S.C. § 4311, USERRA [provides] protections for service members seeking restoration to employment, *see* 38 U.S.C. §§ 4312–4316." *Kirkendall v. Dep't of Army,* 479 F.3d 830, 867 n.2 (Fed. Cir. 2007); *see Ouimette v. County of Los Angeles*, 2:12-CV-6268-ODW, 2012 WL 6214305, at *4 (C.D. Cal. Dec. 12, 2012) (explaining the same in denying motion to dismiss). These other USERRA claims do *not require* "that the employer discriminated against [the servicemember.]" *Id.* at *5; *Jordan v. Air Prods. and Chems., Inc.*, 225 F. Supp. 2d 1206, 1209 (C.D. Cal. 2002) (same);

---

for a period of 30 days would be credited 73.5 hours, which is more than 70. Def. Mem. at 16 n.8. But a Regular Line Holder in this scenario would not be adversely affected by the Policy *only if* his or her leave period *begins on the first of a month* (and the month has at least 29 days).

1  20 C.F.R. § 1002.33. Counts I-III assert violations that do not require Plaintiff to

2  demonstrate discrimination against servicemembers.

3      Horizon discounts the allegation that the DOL investigation found that the

4  Virtual Credit Policy violated USERRA. Def. Mem. at 15 n.7. Neither of its cases

5  addressed USERRA. *Saglimbene v. Venture Indus. Corp.*, No. 89-1248, 1990 WL

6  10709, at *8 (6th Cir. 1990) (unpublished) (finding only that the district court did

7  not abuse its discretion in admitting only one of four pages of a DOL report in an

8  FLSA action); *Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1185 (D.

9  Colo. 2012) (refusing to defer to the legal interpretation of the FLSA in the notes

10  by a DOL investigator). Unlike Horizon's non-USERRA cases, DOL's *factual*

11  findings from an investigation of USERRA claims *are relevant*. *Quinn v. Everett*

12  *Safe & Lock, Inc.*, 53 F. Supp. 3d 1335, 1339 (W.D. Wash. 2014) (denying

13  defendants' motion in limine and finding DOL report finding USERRA violations

14  relevant and admissible). While "pure interpretations of the law are not

15  admissible," factual determinations in a DOL report, including factual "opinions"

16  and "conclusions" are admissible and relevant. *Id.* (rejecting argument that DOL

17  "determination is not binding on th[e] Court" as a basis not to consider findings).

18  And it "is relevant and admissible as to willfulness." *United States v. Nevada*, No.

19  09 Civ. 00314, 2012 WL 1530619, at *2 (D. Nev. May 1, 2012) (denying motion

20  to exclude DOL letter in USERRA case). Here, the Complaint also alleges the

1   DOL's findings to plead willfulness of Horizon's violations. *See* Compl. ¶¶ 58, 60.

2   **B.      Count I Alleges Valid Claims under USERRA §§ 4312 and 4313**

3   Count I alleges that because the Virtual Credit Policy provides fewer credit

4   hours than Plaintiff would have received had his employment not been interrupted

5   by military leave, Horizon failed to reemploy him as required by USERRA § 4312

6   *and* § 4313. Compl. ¶¶ 68-69. Eligibility for reemployment under § 4312 triggers

7   § 4313's guarantee of an appropriate position. 38 U.S.C. § 4313(a). Horizon does

8   not dispute that Count I alleges that Plaintiff satisfied § 4312(a)'s requirements for

9   reemployment. *See* Def. Mem. at 16-17. Under § 4313(a), an employee must be

10  promptly reemployed in the following "order of priority":

11          (i) the position in which the employee would have been placed "if the
            continuous employment of such person with the employer had not
12          been interrupted by such service" ("the escalator position"); (ii) the
            position in which the employee was employed "on the date of the
13          commencement of the service" ("the pre-service position"); and (iii)
            any other position that is "the nearest approximation" first to (i) and
14          then (ii) ("the nearest-approximation position").

15  38 U.S.C. § 4313(a)(1)(A)-(B) & (a)(4); 20 C.F.R. § 1002.196(a)-(c). The re-

16  employment position must "include[] the seniority, status, and rate of pay that an

17  employee would ordinarily have attained in that position given his or her job

18  history, including prospects for future earnings and advancement." 20 C.F.R.

19  § 1002.193(a). Status assesses factors such as "the employee's opportunities for

20  advancement," "working conditions," and "shift assignment." *Id.* § 1002.194.

1    Horizon assumes that because Plaintiff's title upon return to work remained

2  the same as his pre-service position, Plaintiff was properly reemployed. Def. Mem.

3  at 17. But the mere fact that the post-service position has the same title as the pre-

4  service position does not mean that they are equivalent. *Serricchio v. Wachovia*

5  *Secs. LLC*, 658 F.3d 169, 183 (2d Cir. 2011) ("[S]tatus must be assessed with

6  regard to factors beyond mere title or 'rank'"); *Middleton v. City of Sherwood*, 621

7  F. Supp. 2d 1089, 1093-95 (D. Or. 2009) (rejecting argument that position with

8  "the same title, rate of pay, and working location" satisfied § 4313); *Duarte v.*

9  *Agilent Techs., Inc*., 366 F. Supp. 2d 1039, 1045-46 (D. Colo. 2005) (although

10  "title, pay, and benefits upon his return from active duty" were the same,

11  reemployment position was of "diminished status"). The Complaint alleges that the

12  Virtual Credit Policy caused Plaintiff to be reemployed in a Regular Line Holder

13  position of lesser status as it required him to work additional hours in order to keep

14  that position or lose it along with rights and benefits such as the 70-hour per month

15  minimum guarantee, a greater earning potential, and a more predictable schedule.

16  Compl. ¶¶ 39-40.

17    Horizon cites summary judgement and post-trial decisions. Def. Mem. at 17.

18  In *Clegg v. Ark. Dep't of Correction*, 496 F.3d 922 (8th Cir. 2007), the court

19  affirmed *summary judgment* where plaintiff was "reinstated at the same employee

20  grade" and "her rate of pay reflected two raises that were instituted while she was

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - 8

1    away" and her benefits were the same. *Id*. at 930. Defendants' other cases involve

2    similar fact patterns. *See Francis v. Booz, Allen & Hamilton, Inc*., 452 F.3d 299,

3    305 (4th Cir. 2006) (finding on summary judgment that the actions complained of

4    "occurred significantly *after* her return" to the same position); *Hart v. Fam. Dental*

5    *Group, PC*, 645 F.3d 561, 563 (2d Cir. 2011) (affirming trial decision that plaintiff

6    was reemployed with the same terms under his written employment agreement and

7    any adverse action occurred after). By contrast, Count I alleges that by providing

8    Plaintiff with fewer credits than if he had been continuously employed caused him

9    to be reemployed in an inferior position. Compl. ¶ 69. Thus, Count I sufficiently

10   alleges a claim under USERRA §§ 4312 and 4313.

11   ### C.    Count II Properly Alleges a Claim under USERRA § 4316(a)

12   Count II alleges that Horizon violated USERRA § 4316(a) by failing to treat

13   military leave as continuous employment in determining Plaintiff's reemployment

14   position. Compl. ¶¶ 70-74. Count II does not seek compensation based on hours

15   worked but instead the rights and benefits accompanying the Regular Line Holder

16   status that Plaintiff would have obtained but for his military leave. *Id*. ¶¶ 39-40, 74.

17   Section 4316(a) requires a reemployed employee to receive "the seniority

18   and other rights and benefits determined by seniority that the person had" on the

19   date the uniformed service began "*plus the additional* seniority and rights and

20   benefits that such person would have attained if the person had remained

continuously employed." 38 U.S.C. § 4316(a) (emphasis added). "Seniority" means "longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment." *Id*. § 4303(12).

Horizon argues that daily credit "beyond 2.45 hours" under the Virtual Credit Policy requires performance of work and is not seniority-based. Def. Mem. at 18-19. But Section 4303(12) does not require that "the number of years an employee worked for an employer" be the "the *sole* element." *Huhmann v. Fed. Express Corp.*, 874 F.3d 1102, 1111 (9th Cir. 2017). In *Huhman*, the benefit was seniority-based benefit where it depended on him being employed during the period. *Id*. Whether a right or benefit is seniority-based depends on whether (a) it is "a reward for length of service rather than a form of short-term compensation for work performed"; (b) "it is reasonably certain that the employee would have received the right or benefit if he or she had remained continuously employed during the period of service"; and (c) "it is the employer's actual custom or practice to provide or withhold the right or benefit as a reward for length of service." 20 C.F.R. § 1002.212. Here, the rights and benefits at issue do not consist of compensation for work performed but instead involve a credit while on leave. Compl. ¶ 39. While Defendants argue that Plaintiff had to perform "additional work" after return from military leave, that addresses "the effect" of Horizon's conduct, not the nature of the rights and benefits. *Compare* Def. Mem. at 18-19,

1    *with* Compl. ¶¶ 40, 47, 48. As to the *second and third* factors, Horizon has

2    maintained the policies or practices that pilots must work at least 70 hours per

3    month to keep the Regular Line Holder status and that the status provides rights

4    and benefits such as the 70-hour per month minimum guarantee, a greater earning

5    potential, and a more predictable schedule. Compl. ¶¶ 4, 39. Defendants do not

6    challenge the sufficiency of these allegations or that it is reasonably certain that

7    Plaintiff would have continued to attain that status but for his military leave.

8         Defendants suggest that seniority-based rights and benefits must "accrue

9    automatically." Def. Mem. at 2, 19. Neither USERRA nor the DOL Regulations

10   require that. *See Serricchio*, 658 F.3d at 173, 190 (construing "seniority" to include

11   pre-service "sizable book of business" on which broker compensation was based).

12        Defendants rely on pre-USERRA cases holding that vacation accrual was a

13   form of short-term compensation for work performed and not a seniority-based

14   benefit. Def. Mem. at 18-19 (citing *Foster v. Dravo Corp.*, 420 U.S. 92, 100 (1975)

15   (finding "vacation scheme" to be a form of deferred compensation); *LiPani v.*

16   *Bohack Corp.*, 546 F.2d 487, 490 (2d Cir. 1976) (same); *see Aiello v. Detroit Free*

17   *Press, Inc.*, 570 F.2d 145, 149-150 (6th Cir. 1978) (quoting *Foster* and *LiPani*)).

18   But these cases are consistent with the DOL's specific carveout under USERRA

19   that "accrual of vacation leave is considered to be a non-seniority benefit." 20

20   C.F.R. § 1002.150(c). As such, those cases do not apply. By contrast, Horizon's

1   non-vacation accrual cases support the sufficiency of Count II. *Coffy v. Republic*

2   *Steel Corp*., 447 U.S. 191, 205 (1980) (finding supplemental unemployment

3   benefits designed to "provide economic security during periods of layoff" to be

4   "perquisites of seniority"); *DeLee v. City of Plymouth, Ind*., 773 F.3d 172, 181 (7th

5   Cir. 2014) (applying *Coffy* to benefit at issue). Thus, Count II sufficiently alleges a

6   claim under USERRA § 4316(a).

### D.   Count III Properly Alleges a Claim under USERRA § 4316(c)

7

8         Count III alleges that Horizon violated USERRA § 4316(c) by applying the

9   Virtual Credit Policy to demote Plaintiff or transfer him to an inferior position

10  following military leave without cause. Compl. ¶¶ 75-78. USERRA § 4316(c)

11  prevents employees from being "discharged from such employment, except for

12  cause – "within 180 days" after returning from military leave of "more than 30

13  days but less than 181 days." 38 U.S.C. § 4316(c)(2). Defendants assert that

14  Plaintiff did not have military leave of at least 31 days. Def. Mem. at 20. But the

15  Complaint alleges that Plaintiff took leave "to perform National Guard service

16  from June 8 until July 8, 2017" – a period consisting of 31 days. Compl. ¶ 43.

17        Horizon also argues that Plaintiff's demotion to a Reserve Line Holder does

18  not qualify as discharge "without cause." Def. Mem. at 20. But "[i]t is crystal clear

19  that a demotion is the equivalent of a discharge." *Foor v. Torrington Co.,* 170 F.2d

20  487, 490 (7th Cir. 1948) (finding transfer of reemployed veteran to position paying

less money is equivalent to discharge); *Hanson v. County of Kitsap,* 21 F. Supp. 3d

1124, 1142 (W.D. Wash. 2014) (demoting returning service member was same as

discharge under 4316); *Seiler v. Hollidaysburg Am. Legion Ambul. Serv., Inc.,*

CIV.A. 3:10-41, 2011 WL 4017965, at *6 (W.D. Pa. Sept. 8, 2011) (same). Thus,

Count III sufficiently alleges a claim under USERRA § 4316(c).

## II.    Count IV Alleges Claims Under USERRA § 4316(b) Against Both Alaska and Horizon

Count IV alleges that Alaska and Horizon violated USERRA § 4316(b) by

failing to pay employees taking short-term military leave while paying employees

who took comparable forms of non-military leave. Compl. ¶¶ 79-86. By doing so,

Defendants failed to offer the same "'rights and benefits … generally provided . . .

to employees having similar seniority, status, and pay who are on furlough or leave

of absence.'" *Id.* ¶¶ 80, 84 (quoting 38 U.S.C. § 4316(b)(1)). Defendants do not

dispute that the Complaint alleges that they provide paid leave comparable to

short-term military leave, but instead argue that the "rights and benefits" under §

4316(b) do not include paid leave. This ignores USERRA's text, history, and

caselaw.

USERRA requires that employees who take military leave must receive the

same "rights and benefits" employees get when they take non-military leave. 38

U.S.C. § 4316(b); *see Waltermyer v. Aluminum Co. of Am.*, 804 F.2d 821, 824-26

(3d Cir. 1986) (holding employees on military leave had same rights to holiday pay

1   as those on jury duty). The holding in *Waltermyer* was codified by Congress in

2   USERRA § 4316(b) and § 4303(2)'s definition of "rights and benefits". H.R. Rep.

3   No. 103-65, at 18, 33-34 (1993) ("House Rpt.") ("affirm[ing] the decision in

4   *Waltermyer*" that persons on military leave receive "the most favorable treatment

5   accorded any particular leave.").

6          Courts have held the "rights and benefits" under § 4303(2) that must be

7   given equally to employees on military leave under § 4316(b) *include pay* when

8   employees who take comparable leaves get paid. *See Brill v. AK Steel Corp.*, No.

9   09 Civ. 534, 2012 WL 893902, at *6 (S.D. Ohio Mar. 14, 2012); *Duffer v. United*

10  *Cont'l Holdings, Inc.*, 173 F. Supp. 3d 689, 704 (N.D. Ill. 2016); *see also Benetiz*

11  *v. Montebello*, No. 09 Civ. 0303, 2010 WL 3814374, at *2 (C.D. Cal. Sept. 27,

12  2010) (finding sick leave comparable to military leave for accrual of vacation).

13  While USERRA does not impose a general mandate to pay employees on military

14  leave, Section 4316(b) mandates equal treatment for reservists on military leave

15  compared to employees on comparable leaves. *See Rogers v. City of San Antonio*,

16  392 F.3d 758, 768-771 (5th Cir. 2004). That is all that Count IV alleges.

17      **A.    USERRA Broadly Defines the "Rights and Benefits" That Must
              Be Given Equally During Military and Non-Military Leave to
18            Cover Wages When Employees Do Not Perform Work**

19         Defendants argue that the "rights and benefits" in § 4302(2) which must be

20  provided equally to those on military and non-military leave under § 4316(b),

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - 14

implicitly exclude pay when employees are *not performing work*— i.e. when they are on leave – because they are not a benefit. Def. Mem. at 7-12. The "rights and benefits" in § 4303(2) must be "given an 'expansive interpretation.'" *Pucilowski v. Dep't of Justice*, 498 F.3d 1341, 1344 (Fed. Cir. 2007). Congress intended them to encompass "all attributes of the employment relationship." House Rpt. at 21.

Section 4303(2) defines "rights and benefits" as "the terms, conditions, or privileges of employment" *without any exception*, setting forth a number of broad, general, and non-exhaustive illustrations of "rights and benefits" that describe pay or wages (*i.e.*, "including any advantage, profit, privilege, gain" that "accrues" in an employment relationship).[3] As this broad definition covers all attributes of an employment relationship, it also *includes wages.* Of course, wages are the top "advantage" of a job and how employees "gain" from jobs, since wages account for 68.6% of employee compensation. Bureau of Labor Statistics, Employer Costs for Employee Compensation, https://www.bls.gov/news .release/pdf/ecec.pdf.

---

[3] Webster's Ninth New Collegiate Dictionary 939 (1986) ("Profit" is "a valuable return; gain" or "net income usually for a given period of time"); *id.* at 502 ("Gain" is "resources or advantaged acquired or increased," "act or process of gaining," or "an increase in amount, magnitude or degree"); Webster's New World Dictionary 18 (1994) ("advantage" is "favorable or beneficial circumstance").

1  Employees "profit" from jobs by receiving wages. The term "'any'" before these

2  general illustrations of rights and benefits "ensures that the definition has a wide

3  reach." *Boyle v. United States*, 556 U.S. 938, 944 (2009).

4       Moreover, Section 4303(2)'s *specific illustrations* of "rights and benefits"

5  describe types of pay that employees often get *when they do not perform work*, like

6  "severance pay, supplemental unemployment benefits, vacations." 38 U.S.C. §

7  4303(2). By definition, "severance pay" and "supplemental unemployment

8  benefits" are paid to former employees no longer performing work. Employees

9  who take paid "vacations" are paid for not performing work. Under the Internal

10 Revenue Code, payments from "severance pay, supplemental unemployment

11 benefits, [and] vacations" are all taxable wages that must be reported on a W-2

12 Form. IRS Publication 15, Employer's Tax Guide at 15 (Dec. 17, 2018),

13 https://www.irs.gov/pub/irs-pdf/p15.pdf; IRS Publication 4128, Tax Impact of Job

14 Loss at 1-2 (2015), https://www.irs.gov/pub/ irs-pdf/p4128.pdf. Defendants' claim

15 that § 4303(2) implicitly excludes pay when work not performed is inconsistent

16 with these specific examples. *See Greenlaw v. United States*, 554 U.S. 237, 251

17 (2008) (explaining that courts should "resist attributing to Congress an intention to

18 render a statute so internally inconsistent.").

19      Defendants misconstrue the verb "accrue" in § 4303(2) to argue that "rights

20 and benefits" do not encompass wages. Def. Mem. at 8. But their definition is the

1  *secondary or alternative* one. The primary definition of accrue is "1. To come into

2  existence as an enforceable claim or right; to arise." Black's Law Dictionary (10th

3  ed. 2014); *see* Webster's New World Dictionary 9 (1994); Webster's Ninth New

4  College Dictionary 50 (1986). Applying the first definition of "accrue" means that

5  any advantage, profit, privilege gain "comes into existence" from an employment

6  relationship. Defendants do not dispute that the right to these paid leaves (*e.g.*, jury

7  duty) comes into existence from the employment relationship. And *wages do*

8  *"accrue periodically"* and "increase over a period of time," when they are received

9  every week or two by an employee.

10      The original, prior version of § 4303(2) included a *single exemption* from

11  "wages or salary for *work performed*." 38 U.S.C. § 4303(2) (1995) (emphasis

12  added). This express *exclusion* of only "wages or salary *for work performed*"

13  suggests it wanted to include other types of wages in § 4303(2)—wages for *work*

14  *not performed*. *Toor v. Lynch*, 789 F.3d 1055, 1061 (9th Cir. 2015) ("'When

15  Congress provides exceptions in a statute, . . . [t]he proper inference . . . is that

16  Congress considered the issue of exceptions and, in the end, limited the statute to

17  the ones set forth.'"). If Congress wanted to exclude *all* wages from § 4303(2), it

18  could have said just that. But it did not.

19      In 2010, Congress amended § 4303(2) for the purpose of clarifying that

20  USERRA bans wage discrimination. 156 Cong. Rec. S7656-02 (daily ed. Sep. 28,

1    2010). As Defendants concede, this amendment was to overrule an Eighth Circuit

2    decision. Def. Mem. at 8. In *Gagnon v. Sprint Corp.*, 284 F.3d 839 (8th Cir. 2002),

3    a veteran claimed he was paid $1,000 less per year due to his military service. *Id.*

4    at 853. The Court rejected his discrimination claim under § 4311(a), as § 4311(a)

5    required his employer to have "denied him a benefit of employment," and *at that*

6    *time* "the term 'benefit,' [] USERRA, specifically exclude[d] wages or salary for

7    work performed." *Id.* In 2010, Congress overruled *Gagnon* by changing the phrase

8    "(*other than* wages or salary for work performed)" to "(*including* wages or salary

9    for work performed)." Pub. L. No. 111-275, § 701(a) (2010) (emphasis added).

10    Thus, Congress solely wanted to clarify or expand § 4303(2)'s scope by "*including*

11    wages or salary for work performed" in "rights and benefits" to bar wage bias

12    under § 4311(a) and did not intend to abandon § 4316(b) and § 4303(2)'s equality

13    rule that protects wages for work not performed as "rights and benefits."

14          Even without considering prior case law or text, the current version of §

15    4303(2) does not exclude wages for work not performed. The *expressio unius*

16    canon does not apply where a statute uses the word "including" to introduce a list

17    of one or more items, since the term "including" is "illustrative and not limitative."

18    *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). Congress expressed

19    that the list of rights and benefits in § 4303(2) "is illustrative and not intended to be

20    all inclusive." House Rpt. at 21. Despite agreeing that § 4303(2) was not intended

1   to be exhaustive, Defendants asks the Court to imply an exemption into § 4303(2).

2   Defendants argue that including paid leave in § 4303(2) would be

3   inconsistent with USERRA's remedies section, § 4323(d). Def. Mem. at 11. But

4   there is a reason why § 4323(d)(1)(B) includes "wages," which provides remedies

5   for all USERRA violations. Employees *lose wages* when they are fired due to

6   discrimination in violation of § 4311(a) or denied reemployment under § 4312(a).

7   It is well established that § 4323(d)(1)(B) authorizes backpay and front pay as a

8   remedy to compensate those who lose "wages" when they are no longer employed

9   by former employers, as well as liquidated damages on such lost "wages." 38

10  U.S.C. § 4323(d)(1)(C); *see, e.g.*, *Petty v. Metro. Gov't of Nashville & Davidson

11  Cty.*, 687 F.3d 710, 716-18 (6th Cir. 2012) *Maher v. Chicago*, 463 F. Supp. 2d 837,

12  840 (N.D. Ill. 2006), *aff'd* 547 F.3d 817 (7th Cir. 2008); 20 C.F.R. § 1002.312(c)

13  (allowing recovery of "lost wages"). Thus, "wages" in § 4323(d)(1)(B) addresses a

14  different type harm than the ones protected under § 4303(2) and § 4316(b).

### B.    USERRA's Legislative History Confirms That Payment When Work is Not Performed Are Rights and Benefits Under § 4316(b)

16  In addition to the plain language of § 4303(2), USERRA's legislative history

17  makes this conclusion even clearer. In enacting USERRA, Congress explained that

18  > Section 4303(2) would define "benefit, 'benefit,' "benefit of employment,"
    > and employment related "rights and benefits." These are the rights, incident
    > to employment, which are protected under chapter 43. **These rights are
    > broadly defined to include all attributes of the employment relationship**
    > which are affected by the absence of a member of the uniformed services

because of military service. The list of benefits is illustrative and not intended to be all inclusive.

House Rpt. at 21 (emphasis added). Thus, Congress intended all aspects of the employment relationship to be within the scope of § 4303(2). Of course, wages are the most significant attribute of any employment relationship.

In enacting § 4316(b) Congress expressed its intent, "to codify court decisions that have interpreted current law as providing a statutorily-mandated leave of absence for military service that entitles servicemembers to participate in benefits that are accorded other employees." S. Rep. No. 103-158, at 58 (1993) ("Senate Rpt.") (citing *Waltermyer*, 804 F.2d 821). It "affirm[ed] the decision in *Waltermyer* [], that to the extent the employer policy or practice varies among various types of non-military leaves of absence, the most favorable treatment accorded any particular leave would also be accorded the military leave, regardless of whether the non-military leave is paid or unpaid." House Rpt. at 33-34. Thus, Congress intended that employees on military leave have the same right to pay as employees who take other leaves and perform no work.

### C.     Courts Have Held § 4316(b) Requires Employees to be Paid for Military Leave When Employees Are Paid for Comparable Leave

Courts have held Section 4316(b)'s equality rule requires military leave to be paid if employees who take comparable leave are paid. *Brill*, 2012 WL 893902, at *6 (holding military duty comparable to jury duty and reservists on military duty

entitled to same pay as those on jury duty); *Duffer*, 173 F. Supp. 3d at 704 (holding military leave comparable to jury duty and sick leave and employer paying wages to those on such leave must pay wages to those on military leave). *Brill* held § 4316(b) mandates equal wages for employees who take military leave and jury duty, as it "was intended to codify [*Waltermyer's*] equality rule:"

> Defendant would not be providing anything it does not already provide to employees on jury duty/witness leave by paying Plaintiff his full salary for time spent on military leave. Actually, by paying an employee in this manner, Defendant would be complying with the statutory mandate to give the employee the most favorable treatment accorded any comparable form of leave.

*Brill*, 2012 WL 893902, at *5-6 (citing House Rpt. at 33-34).

### D.    USERRA Must Be Interpreted Liberally and Consistent With Prior Case law

Defendants ignore two canons of interpreting USERRA. *First*, USERRA is "to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need." *Ziober v. BLB Res., Inc.*, 839 F.3d 814, 819 (9th Cir. 2016) (quoting *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946)). Any "interpretive doubt is to be resolved in the veteran's favor." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). This canon "remains in full force and effect" under USERRA. House Rpt. at 19; *see also* Senate Rpt at 40. *Second*, the "case law that had developed under [predecessor] statutes remain[s] in full force and effect, to the extent it is consistent with USERRA." *Paxton v. City of*

*Montebello*, 712 F. Supp. 2d 1007, 1013 n.11 (C.D. Cal. 2010) (quoting 20 C.F.R. § 1002.2)); House Rpt. at 19; Senate Rpt. at 40. Thus, USERRA is meant "to be read as a whole, since the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991).

### E.    Properly Applying USERRA § 4316 Will Not Impose a General or Absolute Mandate on Employers to Provide Paid Military Leave.

Defendants belabor that USERRA does not impose an absolute mandate to pay employees whenever they take military leave. Def. Mem. at 3-6. But Count IV only alleges that § 4316(b) requires pay for short-term military leave when an employer pays employees for comparable leave. Compl. ¶¶ 80-84. From the premise that USERRA does not *always* require paid military leave, Defendants argue that USERRA *never* mandates paid military leave. Def. Mem. at 4-7. This assertion is devoid of logic and ignores case law, the statute and legislative history.

*First*, Defendants cite *Monroe v. Standard Oil Co.*, 452 U.S. 549 (1981), to argue that the VRRA did not impose a general "guarantee" of paid military leave. Def. Mem. at 5. But the Third Circuit distinguished the reservist in *Monroe* who wanted the same rights as *working* employees from a reservist who wanted the same right to holiday pay given to employees on jury duty who were not working. *Waltermyer,* 804 F.3d at 823. In enacting § 4316(b), Congress adopted *Waltermyer* to apply to comparable leaves for employees *not working*. House Rpt. at 33-34.

*Second*, Defendants cite cases where courts rejected the argument that if an

employer *voluntarily* gives *paid military leave* as a benefit only to reservists,
failure to follow the policy is discrimination under USERRA § 4311(a). Def. Mem.
at 4-5 (citing *Duncan v. Tyco Fire Prods.*, No. 16 Civ. 916, 2018 WL 3303305, at
*4 (N.D. Ala. July 5, 2018); *Miller v. City of Indianapolis*, 281 F.3d 648, 650 (7th
Cir. 2002); *Brooks v. Fiore*, No. 2000 Civ. 803, 2001 WL 1218448, at *9 (D. Del.
Oct. 11, 2001)). These cases did not address whether military leave should be paid
based on other comparable leave or Sections 4303(2) and 4316(b). *Id.* But cases
that *did* interpret § 4303(2) to decide if paid leave policies are "rights and benefits"
for § 4311(a) claims have held voluntary paid leave for military service is a "right
or benefit" under § 4303(2). *Pucilowski*, 498 F.3d at 1344; *United States v.
Missouri*, 67 F. Supp. 3d 1047, 1050-51 (W.D. Mo. 2014). Thus, wages when no
work is performed (e.g. military leave) are "rights and benefits" under USERRA.

    *Third*, the regulations and handbooks cited by Defendants merely describe
the general principle that USERRA does not generally require paid military leave.
Def. Mem. at 6. None address § 4316(b)'s application to comparable paid leaves.
But the DOL described the "rights and benefits" that must be provided to
employees on military and comparable leaves, and must be applied to various types
of pay for work not performed *without any indication that wages for work not
performed are excluded*. 70 Fed. Reg. 75246, 75262-64 (Dec. 19, 2005).

    *Fourth*, Defendants quote a treatise that "[g]enerally, USERRA does not

require employers to pay employees wages for time spent performing military service." Def. Mem. at 5 (quoting Kathryn Piscitelli *et al.*, The USERRA Manual § 3:5 (2018)). But the next sentence explains: "Nonetheless there are circumstances under which an employee on military leave would be entitled to pay," and refers to cases applying § 4316(b)'s mandate to pay for military leave. *Id.*

*Fifth*, Congress' enactment of 15 days of paid military leave for federal employees, 5 U.S.C. § 6323(a)(1), cannot vitiate rights Congress expressly and later adopted in USERRA. *See* Def. Mem. at 6. "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Nigg v. U.S. Postal Serv.*, 555 F.3d 781, 785-86 (9th Cir. 2009) (quotations omitted). These laws are consistent: USERRA § 4302(a) provides that other federal laws can grant rights beyond USERRA. The limited paid leave § 4316(b) does not stop paid leave from being given under § 6323(a)(1). Indeed, paid leave under § 6323(a)(1) is a "benefit" under § 4303(2). *Pucilowski*, 498 F.3d at 1344.

*Finally*, USERRA's mandate for continued health and pension benefits in § 4317 and § 4318, respectively, does not address Congress' intent on § 4316(b). At best, it shows that Congress did not adopt an general paid military leave mandate.

## F.   The Consequences of Applying § 4316(b) As Written Will Be Minimal and Cannot Trump the Text and History of USERRA

Defendants suggest a parade of horribles may occur if § 4316(b) is properly

applied. Def. Mem. at 12-14. But a law is not disregarded because an employer thinks it may have negative consequences. *Sebelius v. Cloer*, 569 U.S. 369, 381 (2013). Congress presumably was aware of laws requiring forms of leave comparable to short-term military leave. *See* Def. Mem. at 13. Not only was § 4316(b) enacted to re-affirm *Waltermyer's* equality rule and codify an expansive definition of "rights and benefits," but mandating paid military leave under limited circumstances fulfils USERRA's purpose to "eliminat[e] or minimize[e] the disadvantages to civilian careers" from military service. 38 U.S.C. § 4301(a)(1). The impact is small. Less than 1% of employees in the labor force are reservists, about 1.1 million reservists out of 162 million workers.[4] Even if this was a proper consideration, such a limited obligation to provide paid short-term military leave to a small part of the labor force could not have a major impact.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

---

[4] See Dep't of Defense, 2016 Demographics: Profile of the Military Community 59 (2016), https://download.militaryonesource.mil/12038/ MOS/Reports/2016-Demographics-Report.pdf; Bureau of Labor Statistics, Employment Situation Summary Table A. Household data, seasonally adjusted (May 3, 2019), https://www.bls.gov/news.release/empsit.a.htm.

1    Dated: May 21, 2019                    Respectfully submitted,

2

3                                          *Matthew Z. Crotty*
                                          Matthew Z. Crotty (WSBA #39284)
4                                          CROTTY & SON LAW FIRM, PLLC
                                          905 W. Riverside Ave., Suite 404
5                                          Spokane, WA 99201
                                          Telephone: (509) 850-7011
6                                          matt@crottyandson.com

7                                          R. Joseph Barton
                                          (admitted *pro hac vice*)
8                                          BLOCK & LEVITON LLP
                                          1735 20th Street NW
9                                          Washington, DC 20009
                                          Telephone: (202) 734-7046
10                                         Facsimile: (617) 507-6020
                                          jbarton@blockesq.com

11                                         Vincent Cheng
                                          (*pro hac vice forthcoming*)
12                                         BLOCK & LEVITON LLP
                                          100 Pine Street, Suite 1250
13                                         San Francisco, CA 94111
                                          Telephone: (415) 968-8999
14                                         Facsimile: (617) 507-6020
                                          vincent@blockesq.com

15

16                                         Peter Romer-Friedman
                                          (admitted *pro hac vice*)
17                                         OUTTEN & GOLDEN LLP
                                          601 Massachusetts Avenue NW
18                                         Second Floor West Suite
                                          Washington, DC 20001
19                                         Telephone: (202) 847-4400
                                          Facsimile: (202) 847-4410
20                                         prf@outtengolden.com

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - 26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

Thomas G. Jarrard (WSBA #39774)
LAW OFFICE OF THOMAS
JARRARD, PLLC
1020 N. Washington St.
Spokane, WA 99201
Telephone: (425) 239-7290
Facsimile: (509) 326-2932
tjarrard@att.net

*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - 27

1

## **<u>CERTIFICATE OF SERVICE</u>**

2  I certify that on May 21, 2019, I caused the foregoing to be electronically

3 filed with the Clerk of the Court using the CM/ECF system, which sent notification

4 of such filing to all counsel of record.

5

6           *Matthew Z. Crotty*

            Matthew Z. Crotty

7

8

9

10

11

12

13

14

15

16

17

18

19

20

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS - 28