UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CASEY CLARKSON,<br><br>            Plaintiff,<br><br>  v.<br><br>ALASKA AIRLINES, INC., HORIZON AIR INDUSTRIES, INC., and ALASKA AIRLINES PENSION/BENEFITS ADMINISTRATIVE COMMITTEE,<br><br>            Defendants. | NO. 2:19-CV-0005-TOR<br><br>ORDER DENYING DEFENDANTS ALASKA AIRLINES, INC. AND HORIZON AIR INDUSTRIES, INC.'S MOTION TO DISMISS |

BEFORE THE COURT is Defendant Alaska Airlines, Inc. and Horizon Air Industries, Inc.'s ("Defendants") Motion to Dismiss. ECF No. 18. This matter was submitted without oral argument. The Court has reviewed the record and files herein, and is fully informed. For the reasons discussed below, Defendants' Motion to Dismiss (ECF No. 18) is **DENIED**.

//

//

ORDER DENYING DEFENDANTS' MOTION TO DISMISS ~ 1

## BACKGROUND

On January 7, 2019, Plaintiff Casey Clarkson initiated this class action against Defendants Alaska Airlines, Inc. ("Alaska") and Horizon Air Industries, Inc. ("Horizon") under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4301 *et seq*.[1] ECF No. 1. The allegations raised in Plaintiff's Complaint revolve around one central issue—the reemployment position and benefits a service member is entitled when returning to a civilian job following periods of short-term military leave. Plaintiff asserts that Horizon and Alaska have adopted and applied certain policies to servicemember-pilots who take short-term military leave that violate USERRA's requirements and protections. This class action hinges on the alleged illegality of these policies.

On April 17, 2019, Alaska and Horizon filed a Motion to Dismiss, which is presently before the Court. ECF No. 18. Alaska and Horizon move the Court to dismiss all counts against them for failure to state a claim under Federal Rule of

---

[1] Plaintiff also asserts an individual claim against Defendant Alaska Airlines Pension/Benefits Administrative Committee for violations of the Employee Retirement Income Security Act of 1979 ("ERISA"), 29 U.S.C. § 1024(b). *See* ECF No. 1 at 29-31. Plaintiff's individual ERISA claim is not at issue in the pending motion.

Civil Procedure 12(b)(6). ECF No. 18. On May 21, 2019, Plaintiff submitted a response to Defendants' motion. ECF No. 24. Defendants timely filed a reply brief in support of their motion on June 11, 2019. ECF No. 29.

## FACTS

The following facts are drawn from Plaintiff's Complaint and are accepted as true for purposes of the instant motion only. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In November 2013, Plaintiff was hired by Horizon to work as a turboprop passenger aircraft pilot. ECF No. 1 at ¶ 42. Plaintiff worked for Horizon until he was hired by Alaska to pilot a 737 passenger jet in November 2017. *Id*. at ¶ 13. Plaintiff is currently employed by Alaska. *Id*.

While working as a commercial pilot for Horizon and Alaska, Plaintiff also served in the Washington Air National Guard. *Id*. Plaintiff's membership in the National Guard required him to take several periods of short-term military leave throughout his employment with both Defendants. *Id*. As noted, Horizon and Alaska have implemented certain policies regarding employees who take short-term military leave, discussed further below, which Plaintiff claims violate various provisions of USERRA.

**A. Horizon's "Virtual Credit" Policy**

Beginning with Horizon, Plaintiff identifies two interacting policies that allegedly result in several violations of USERRA. First, Horizon divides its

turboprop pilots into the following three categories: Regular Line holders, Reduced Line holders, and Reserve Line holders. *Id*. at ¶ 39. According to Plaintiff, Regular Line holders make more money and have a more predictable schedule than Reserve or Reduced Line holders. *Id*. Regular Line holders receive a 70-hour per month minimum guarantee, meaning a Regular Line holder is guaranteed at least 70 hours of pay per month. To attain Regular Line holder status, a pilot must work at least 70 hours per month. *Id*. at ¶ 4. If a pilot works less than 70 hours per month, however, the pilot loses his Regular Line holder status and becomes a Reserve Line holder. *Id*.

Second, since at least May 2017, Horizon has used a "virtual credit" policy to determine the position a pilot returns to following periods of qualifying leave, including short-term military leave. *Id*. at ¶¶ 3, 38. Under the "virtual credit" policy, Horizon credits its pilots 2.45 hours of work per day for each day of qualifying military leave. *Id*. at ¶ 38. Plaintiff notes that Horizon does not, however, give its pilots full credit for the flight hours pilots would have flown during periods of military leave.

Because he was unable to receive full credit for the hours he would have worked during periods of military leave, Plaintiff alleges that Horizon's "virtual credit" policy caused him to lose his Regular Line holder status. Plaintiff first went on military leave as a Horizon employee from June 8, 2017, through June 8,

2018. *Id*. at ¶ 43. According to his Complaint, Plaintiff was on military leave for 22 days in June 2017 and 7 days in July 2017. *Id*. at ¶¶ 43-44. When Plaintiff returned to work from military leave, Horizon credited Plaintiff 53.9 hours of work for June 2017 (22 days of leave x 2.45 "virtual credit" hours per day). *Id*. at ¶ 43. However, when combined with the hours Plaintiff actually worked that month, the total amount of hours accrued for June 2017 was less than the Regular Line requirement of 70 hours per month. *Id*. Horizon also credited Plaintiff 17.1 hours of work for July 2017 (7 days of military leave x 2.45 "virtual credit" hours per day). *Id*. at ¶ 44. Adding the "virtual credit" hours to those Plaintiff actually worked in July, Plaintiff again accrued less than 70 total hours that month. *Id*. Because Plaintiff did not reach the 70-hour threshold to remain a Regular Line holder in July 2017, Plaintiff "was accordingly demoted to Reserve Line holder in the following month." *Id*. at ¶ 45.

In August 2017, Plaintiff worked more than 70 hours and returned to his Regular Line holder status. *Id*. at ¶ 46. However, Plaintiff was again required to take short-term military leave the following month from September 26 to September 30, 2017. *Id*. Plaintiff was allocated 12.25 hours of virtual credit for the 5 days of military leave. *Id*. Receiving only 12.25 hours of virtual credit for that period of military leave, Plaintiff did not meet the 70-hour threshold to remain

a Regular Line holder and was again demoted from Regular Line holder to Reserve Line holder. *Id.*

In October 2017, Plaintiff was again required to take military leave. *Id.* at ¶ 47. However, unlike months prior, Plaintiff was able to meet the 70-hour threshold to maintain his Regular Line holder status by working extra days when he was not on military leave. *Id.* Accordingly, Plaintiff was able "to be a Regular Line holder in the following month." *Id.*

Plaintiff alleges that Horizon's act of demoting him from Regular Line holder status to Reserve Line holder status adversely affected various benefits of employment to which he was entitled, including his wages and work schedule in the months following the periods of military leave. *Id.* at ¶ 48. Plaintiff claims that other Horizon pilots who are subject to the same "virtual credit" policy have been similarly harmed by the policy, which results in pilots either being demoted from Regular Line holder to Reserve Line holder or working additional hours to avoid demotion as a result of their short-term military leave. *Id.* at ¶ 49.

**B. Horizon and Alaska's Non-Payment of Wages During Military Leave**

Next, Plaintiff asserts that both Horizon and Alaska apply a uniform policy and practice of refusing to pay servicemember-employees their regular wages or salaries during periods of short-term military leave, while paying the regular wages

or salaries of its employees who take comparable forms of non-military leave, such as jury duty and bereavement leave. *Id*. at ¶¶ 55-57.

During each year of his employment with Horizon from 2013 to 2017, Plaintiff took one or more periods of short-term military leave. *Id*. at ¶ 55. And during each period of military leave, Plaintiff alleges that Horizon applied its policy of refusing to pay regular wages to employees who take short-term military leave, even though other Horizon employees were eligible to receive their regular wages or salaries during jury duty leave, bereavement leave, or sick leave, consistent with Horizon's policies. *Id*. at ¶ 56. Unlike those employees taking comparable forms of leave, Plaintiff did not receive his regular wages during periods of short-term military leave. *Id*.

While employed by Alaska, Plaintiff was required to take short-term military leave on several occasions between November 2017 and June 2018, most recently from May to June 2018. *Id*. at ¶ 57. Like Horizon, Alaska did not pay Plaintiff wages during these periods of military leave. *Id*. Instead, Alaska applied its policy and practice of refusing to pay employees when they take short-term military leave, while paying employees when they take other comparable forms of non-military leave, such as jury duty, bereavement leave, and sick leave. *Id*.

//

//

### C. The U.S. Department of Labor's Investigation

On June 11, 2017, Plaintiff emailed Horizon's management regarding the company's "virtual credit" policy, which he described as harming him and other Horizon pilots who took short-term military leave. *Id.* at ¶ 50. In his email, Plaintiff noted that by only providing pilots with 2.45 hours of virtual credit per day of military leave, which is often smaller than the number of flight hours pilots would work on work-days that are dropped to take military leave, Horizon forces pilots into two options that both violate USERRA: (1) work additional time when they are not taking military leave in order to reach the 70-hour per month threshold, or (2) be demoted to the Reserve Line holder position. *Id.* Horizon did not change its "virtual credit" policy after receiving notice of Plaintiff's concerns. *Id.*

On August 3, 2017, Plaintiff filed a complaint with the U.S. Department of Labor's ("DOL") Veterans Employment and Training Services, alleging that Horizon's "virtual credit" policy violated USERRA. *Id.* at ¶ 51. Plaintiff asserts that DOL initiated an investigation into his claims and subsequently contacted Horizon as part of its investigation. *Id.* at ¶ 52. DOL completed its investigation of Plaintiff's complaint on October 4, 2017, finding that Horizon's "virtual credit" policy violates USERRA. *Id.* at ¶ 53. According to Plaintiff, DOL specifically concluded that to comply with USERRA, Horizon should provide virtual credit

that is "not less than the value of trips dropped" in the months in which Plaintiff took military leave. *Id*. However, despite DOL's findings, Horizon has yet to change its "virtual credit" policy. *Id*. at ¶ 54.

## DISCUSSION

### A. Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain only "a short and plain statement of relief showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss the complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When evaluating a complaint under Rule 12(b)(6), courts must "accept the allegations in the complaint as true, and draw all reasonable factual inferences in favor of the plaintiff." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). And, notwithstanding Rule 8(a)(2), the Supreme Court has specified that pleadings which merely offer "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancements" are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)). Thus, while "detailed factual allegations" are not required, "to survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570).

In his Complaint, Plaintiff asserts the following four claims against Horizon and Alaska:

(1) Horizon violated sections 4312 and 4313 of USERRA by failing to reemploy Plaintiff in the proper position following his short-term military leave (Count I);

(2) Horizon violated section 4316(a) of USERRA by failing to reemploy Plaintiff with the proper seniority and related rights and benefits following his short-term military leave (Count II);

(3) Horizon violated section 4316(c) of USERRA by demoting Plaintiff to the inferior position of Reserve Line holder following his short-term military leave (Count III); and

(4) Horizon and Alaska violated section 4316(b) of USERRA by failing to pay Plaintiff wages during periods of short-term military leave (Count IV).

ECF No. 1 at 23-29. In the pending motion to dismiss, Horizon and Alaska move the Court to dismiss all of four counts against them for failure to state a claim. ECF No. 18 at 7-8. For reasons discussed below, the Court declines Defendants' request to dismiss Plaintiff's claims at this stage of the litigation.

**B. Position of Reemployment under §§ 4312 and 4313 of USERRA**

In Count I of the Complaint, Plaintiff alleges that Horizon violated sections 4312 and 4313 of USERRA by failing to reemploy him in the proper position following periods of short-term military leave. Specifically, Plaintiff claims

Horizon violated USERRA by reemploying him in the inferior Reserve Line holder position rather than the superior Regular Line holder position. ECF No. 1 at ¶ 69. Defendants urge the Court to dismiss Count I because Plaintiff has failed to allege that Horizon reemployed Plaintiff in the inferior Reserve Line position, as required to state a claim under sections 4312 and 4313. ECF No. 18 at 22-23.

Sections 4312 and 4313 of USERRA define a returning service-member's reemployment rights after military service. 38 U.S.C. §§ 4312, 4313. Particularly relevant here, section 4313 establishes the general rule that an employee returning from military service "is entitled to reemployment in the position that he or she would have attained with reasonable certainty if not for the absence due to uniformed service." 20 C.F.R. § 1002.191.

Courts rely on two intersecting doctrines to determine the status or position to which a returning service member is entitled—the "escalator principle" and the "reasonable certainty test." *Huhmann v. Federal Express Corp.*, 874 F.3d 1102, 1105-06 (9th Cir. 2017). "The 'escalator principle' provides that a returning service member not be removed from the progress ('escalator') of his career trajectory, but rather return to a 'position of employment in which the person would have been employed if the continuous employment of such person with the employer had not been interrupted by such service.'" *Id.* at 1105-06 (quoting 38 U.S.C. § 4313(a)(2)(A)). "The escalator principle requires that the employee be

reemployed in a position that reflects with reasonable certainty the pay, benefits, seniority, and other job perquisites, that he or she would have attained if not for the period of service." 20 C.F.R. § 1002.191. "The 'reasonable certainty test' aids in determining the returning service member's position on the 'escalator,' inquiring into the position a returning service member would have been 'reasonably certain' to have attained absent the military service." *Huhmann*, 874 F.3d at 1106 (quoting 20 C.F.R. § 1002.191). "Together, the escalator and reasonable certainty principles guarantee that progress in the returning service member's overall career trajectory has not been set back by his service." *Id*.

In his Complaint, Plaintiff confirms that he was demoted from Regular Line holder to Reserve Line holder in August 2017 because he failed to meet the 70-hour requirement to maintain Regular Line holder status in July 2017. ECF No. 1 at ¶¶ 43-47 ("Because Clarkson did not receive virtual credit for the flight hours that he was reasonably certain to earn during the period of his military leave in July 2017, Clarkson did not reach the 70-hour threshold to remain a Regular Line holder, and he was accordingly demoted to Reserve Line holder *in the following month* . . . ." (emphasis added)). However, as Defendants correctly point out, Plaintiff's Complaint does not establish Plaintiff's reemployment position when he initially returned to work in July 2017. In fact, Plaintiff does not specify the exact date of his reemployment with Horizon nor confirm his reemployment position and

status on that date. Without these facts, the Court is simply unable to evaluate Plaintiff's claim under either the escalator principle or the reasonable certainty test. Thus, the Court finds that Plaintiff's allegations in Count I regarding his position of employment are of the type wholly inadequate under *Twombly* and *Iqbal*.

Under Federal Rule of Civil Procedure 15(a), leave to amend a party's pleading "should [be] freely give[n] . . . when justice so requires," because the purpose of the rule is "to facilitate decision on the merits, rather than on the pleadings or technicalities." *Novak v. United States*, 795 F.3d 1012, 1020 (9th Cir. 2015) (citation omitted). "[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 926 (9th Cir. 2012). Here, the Court grants Plaintiff leave to amend his Complaint to clarify the allegations in Count I regarding his position of employment. Specifically, Plaintiff must identify (1) the exact date of his reemployment with Horizon in July 2017, and (2) his exact reemployment position and status on that date, i.e., whether he was reemployed as a Regular Line holder or Reserve line holder.

**C. Seniority-Based Rights and Benefits Under § 4316(a) of USERRA**

In Count II of the Complaint, Plaintiff alleges that Horizon violated section 4316(a) of USERRA by failing to treat his military leave of absence "as continuous

employment in computing the number of hours of credit [he] had for the purposes of determining the employee's position following a period of military leave." ECF No. 1 at ¶ 73. According to Plaintiff, by failing to treat military service as continued employment, Horizon denied Plaintiff the "rights and benefits" he was entitled to upon reemployment, "including the seniority or position of Regular Line holder, the opportunity or privilege to select their positions or work schedules, and other privileges of employment." *Id*. at ¶ 74. Defendants move to dismiss Count II on the ground that "Section 4316(a) only applies to seniority-based benefits and daily service credit beyond 2.45 hours is not a seniority-based benefit on its face." ECF No. 18 at 24.

Section 4316(a) of USERRA provides that, when an employee returns to employment after a military service absence, he is "entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." 38 U.S.C. § 4316(a). The term "seniority" is defined as "longevity in employment together with any benefits of employment with might accrue with, or are determined by, longevity in employment. 38 U.S.C. § 4303(12). In *Alabama Power Co. v. Davis*, in finding that pension payments were a seniority-based benefit, the Supreme Court explained that a benefit is

seniority-based if it "would have accrued, with reasonable certainty, had the veteran been continuously employed by the private employer, and if it is in the nature of a reward for length of service." 431 U.S. 581, 589 (1977).

Here, Count II of Plaintiff's Complaint turns on whether Regular Line holder status, and the rights and benefits attached to such status, constitutes "seniority and other rights and benefits determined by seniority" under section 4316(a). Defendants maintain that Regular Line holder status does not qualify as a "benefit" under section 4316(a) because a seniority-based benefit under section 4316(a) cannot be a form of short-term compensation for services rendered. ECF No. 29 at 17. Plaintiff responds that "the rights and benefits at issue do not constitute [a] compensation for work performed but instead involve a credit while on leave." ECF No. 24 at 18.

The Court finds that it cannot decide this seniority issue on the pleadings alone. Rather, the allegations raised in Count II concern a factual dispute that requires the Court to consider evidence outside of Plaintiff's Complaint. Specifically, resolution of this issue would require the Court to consider evidence outside the pleadings, such as Horizon's official policies regarding Regular Line holder status, how the status is determined and maintained, and how employees might benefit from that status. Plaintiff's Complaint simply does not provide sufficient evidence for the Court to make a determination on the seniority issue at

this time. Accordingly, the Court denies Defendants' motion as it relates to Count II because the Court requires evidence outside the Plaintiff's Complaint to make a determination on this issue.

### D. Discharge Without Cause Under § 4316(a) of USERRA

In Count III of the Complaint, Plaintiff alleges that Horizon violated section 4316(c) of USERRA by demoting him, without cause, to the inferior position of Reserve Line holder within 180 days of his reemployment. ECF No. 1 at 26. Defendants move to dismiss this claim on two grounds: (1) the Complaint does not allege that Plaintiff took military leave of "more than 30 days," as required for USERRA's discharge provision to apply; and (2) Plaintiff fails to allege that he was discharged "without cause." ECF Nos. 18 at 25-26; 29 at 19.

Under section 4316(c), a veteran who serves over 30 days in the military and is reemployed under USERRA "shall not be discharged from such employment, except for cause" within 180 days after the date of reemployment. 38 U.S.C. § 4316(c)(2). "The employee may be discharged for cause based either on conduct, or, in some circumstances, because of the application of other nondiscriminatory reasons." 20 C.F.R. § 1002.248. USERRA's implementing regulations clarify that, to qualify for this protection against discharge, "the employee's most recent *period of service in the uniformed services*" must be more than 30 days. 20 C.F.R. § 1002.247 (emphasis added). This language suggests that the period of *military*

*service*, rather than the number of days taken for *military leave* from employment, determines an employee's eligibility for section 4316(c)'s discharge protection under USERRA. Accordingly, because Plaintiff took leave for a period of military service extending from June 8, 2017, through July 8, 2017—a period consisting of 31 days—he likely satisfied section 4316(c)'s 30-day requirement, contrary to Defendants' contentions. *See* ECF No. 1 at ¶ 43.

Regarding Defendants' alternative argument for dismissal of this claim, the Court finds that the issue of whether Plaintiff's demotion constitutes "discharge" under section 4316(c), and whether his demotion was "for cause," cannot be decided on the pleadings alone. Rather, the allegations on Count III concern a factual dispute that requires the Court to consider evidence outside of Plaintiff's Complaint. Plaintiff's Complaint does not provide sufficient evidence for the Court to make a determination as to whether Plaintiff was "demoted," and if he was, whether Horizon had "cause," issues which are largely fact-based. Accordingly, the Court denies Defendants' motion to dismiss insofar as it relates to Count III because the Court requires evidence outside the Plaintiff's Complaint to make a determination on this claim.

**E. Payment of Wages During Military Leave Under § 4316(b) of USERRA**

Finally, in Count IV of the Complaint, Plaintiff alleges that both Horizon and Alaska violated section 4316(b) of USERRA by "failing to pay employees

their regular wages or salaries when they take short-term military leave, while continuing to pay employees their wages or salaries when they take other comparable forms of non-military leave such as jury duty, bereavement leave, and sick leave." ECF Nos. 1 at ¶ 82-84; 24 at 21. Defendants move the Court to dismiss this claim because "USERRA does not require, in Section 4316(b) or otherwise, that a civilian employer pay employees' wages for periods of military service." ECF No. 18 at 9.

Section 4316(b) of USERRA provides that an employee who is absent from a position of employment by reason of service in the uniformed services shall be

> entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service.

38 U.S.C. § 4316(b)(1)(B). "Rights and benefits" are defined as

> the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice . . . .

38 U.S.C. § 4303(2). Thus, under section 4316(b), "[t]he non-seniority rights and benefits to which an employee is entitled during a period of service are those that the employer provides to similarly situated employees by an employment contract,

agreement, policy, practice, or plan in effect at the employee's workplace." 20 C.F.R. § 1002.150(a). Importantly, "[i]f the non-seniority benefits to which employees on furlough or leave of absence are entitled vary according to the type of leave, the employee must be given the most favorable treatment accorded to any comparable form of leave when he or she performs service in the uniformed services. In order to determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor to compare. For instance, a two-day funeral leave will not be "comparable" to an extended leave for service in the uniformed service." 20 C.F.R. § 1002.150(b).

In the pending motion, Defendants argue that wages for work not performed while on military leave are not a non-seniority-based "benefit" under USERRA and, therefore, Plaintiff fails to state a claim under section 4316(b). ECF No. 18 at 13-14. Plaintiff responds that the "rights and benefits" under section 4303(2) includes wages, which must be given equally to employees on military leave if given to other employees who take comparable forms of leave. ECF No. 24 at 22.

Again, the Court concludes that it is unable to decide this issue on the pleadings alone. At minimum, in evaluating the allegations in Count IV, the Court would be required to consider what other "similarly situated employees" of Horizon and Alaska are guaranteed by "employment contract, agreement, policy, practice, or plan in effect at the employee's workplace," which would require the

Court to review evidence extraneous to the pleadings. Plaintiff's Complaint does not provide sufficient evidence for the Court to make a comparability determination on the wage issue at this time. Rather, these arguments would be more appropriately considered on a motion for summary judgment so the Court can consider relevant evidence outside the pleadings. Accordingly, the Court denies Defendants' motion insofar as it relates to Count IV because the Court requires evidence outside Plaintiff's Complaint to make a determination on this issue.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (ECF No. 18) is **DENIED**.
2. Plaintiff is granted leave to amend his Complaint regarding his position of reemployment claim (Count I). Plaintiff shall file an Amended Complaint **within 14 days** of this Order.

The District Court Executive is directed to enter this Order and furnish copies to counsel.

**DATED** June 17, 2019.



THOMAS O. RICE
Chief United States District Judge