1

# ORIGINAL

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF WASHINGTON
2

3   CASEY CLARKSON, on behalf of      )
    himself and all other similarly   )
    situated,                         )   Case No. 2:19-CV-00005-TOR
4                        Plaintiff,   )
    vs.                               )   August 4, 2020
5                                     )
    ALASKA AIRLINES, INC., HORIZON    )   Telephonic Motion Hearing
6   AIR INDUSTRIES, INC., and         )
    ALASKA AIRLINES                   )   Pages 1 - 44
7   PENSION/BENEFITS ADMINISTRATIVE   )
    COMMITTEE,                        )
8                        Defendants.  )
    _____)

9             BEFORE THE HONORABLE THOMAS O. RICE
            UNITED STATES DISTRICT COURT JUDGE
10  APPEARANCES:

11  For the Plaintiff:        Mr. Robert J. Barton
                              Attorney at Law
12                            1735 20th Street, NW
                              Washington, DC 20009
13
                              Mr. Thomas G. Jarrard
14                            Attorney at Law
                              1020 North Washington Street
15                            Spokane, Washington 99201

16  For the Defendants:       Mr. Anton Metlitsky
                              Mr. Mark W. Robertson
17                            Attorneys at Law
                              7 Times Square
18                            New York, New York 10036

19                            Mr. M. Tristan Morales
                              Attorney at Law
20                            1625 Eye Street, NW
                              Washington, DC 20006
21
    Official Court Reporter:  Ronelle F. Corbey, RPR, CRR, CCR
22                            Washington CCR No. 2968
                              United States District Courthouse
23                            P.O. Box 700
                              Spokane, Washington 99210
24                            (509) 458-5283

25  Proceedings reported by mechanical stenography; transcript
    produced by computer-aided transcription.

2

TELEPHONIC MOTION HEARING - AUGUST 4, 2020

1    (Court convened on August 4, 2020, at 10:02 a.m.)

2         THE COURTROOM DEPUTY:  The matter before the Court is

3   Casey Clarkson v. Alaska Airlines, Incorporated, et al., Case

4   No. 2:19-CV-0005-TOR, time set for motion hearing.

5       Counsel, please state your presence for the Court and

6   record beginning with the plaintiff.

7         MR. BARTON:  Good morning, your Honor.  This is

8   Joseph Barton on behalf of the plaintiff.  Also on the phone

9   with me is Thomas Jarrard and my client, Casey Clarkson.

10         THE COURTROOM DEPUTY:  Counsel, for the defendants,

11   please state your presence for the record.

12         MR. METLITSKY:  Your Honor, this is Anton Metlitsky

13   along with Mark Robertson and Tristan Morales.

14         THE COURT:  Good morning, Counsel.  This is

15   Judge Rice.  I've reviewed the entire file, and I'm prepared to

16   hear your oral argument.

17       It appears to me that we've got this one pending motion,

18   the motion for class certification.  And when we conclude that,

19   it appears to me that we should resolve, as well, the pending

20   motion to amend the jury trial scheduling order.

21       So if you could, be prepared for that after we resolve the

22   class certification issue.

23       Mr. Barton, will you be speaking for the plaintiff?

24         MR. BARTON:  I will, your Honor.

25         THE COURT:  All right.  I'll hear from you.  Don't

3

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1  repeat everything in your memorandum as I've read everything.

2  I'll have some questions for you.  Go ahead and begin.

3          MR. BARTON:  Certainly.  As your Honor knows, we're

4  seeking to certify two sets of classes.  They're probably likely

5  very overlapping classes with really two sets of claims.

6  There's a Count IV, which is the Paid Leave claim.

7      I don't know, your Honor, if you can -- if you can hear --

8  there's an echo that, at least, the parties are hearing.  I'm

9  not sure if you're hearing that, as well.

10          THE COURT:  I'm turning down some of our speakers.  It

11  may be some feedback from our microphones in the courtroom, but

12  I can hear you.

13          MR. BARTON:  Okay.  So let me continue.

14      There's two sets of claims:  The Paid Leave claim and a

15  Paid Leave Class on behalf of Count IV, which, essentially,

16  alleges that both Alaska and Horizon have violated USERRA.

17  There is a quality principle under 4316 by failing to provide

18  paid short-term military leave while providing paid leave for

19  certain other types of comparable leave.

20      The second class is the Virtual -- what we call the Virtual

21  Credit Class, which is Counts I through III, that is solely

22  asserted against Horizon alleging that Horizon violated USERRA

23  by implementing what they call a Virtual Credit Policy that

24  credited pilots and flight attendants with less credit when they

25  took military leave than they would have had they worked or even

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1  if they had -- even if they'd worked less than the minimum

2  guarantee by providing them less credit for military leave than

3  they would have received for the minimum guarantee.

4       THE COURT:  Mr. Barton, let me interrupt you.  This is

5  Judge Rice.

6       I see there's -- there's three different allegations:

7  Counts I through III.  And I read that or the summary of it.  I

8  haven't gone back to the statute and read the statute word for

9  word.

10      Are there differences in those three allegations?

11      MR. BARTON:  Obviously there are slight differences.

12  The essential allegation is that they -- when -- when people --

13  when pilots or flight attendants took military leave, they

14  returned.  They were re-employed with a different status or

15  position or denied seniority or rights that they should have

16  had.

17      And the basic principle is that they should have been

18  returned to work and treated as if they had not left work when

19  they were on military leave.  That's the general, overall

20  principle.

21      THE COURT:  What you're seeking, though, is just one

22  remedy, isn't it?  It's three different ways of saying the same

23  thing for one remedy.

24      MR. BARTON:  Yeah.  I mean, obviously, you can have a

25  wrong that implicates three different legal rights; and that's

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1  really what you have here.

2         THE COURT:  All right.  And then you seek to certify

3  this class for a time period May 1st, 2017, through date of

4  Judgment.  But Mr. Clarkson doesn't work for Horizon.  So how

5  can I certify it that far in the future?

6         MR. BARTON:  So the answer to that is really -- the

7  policy is, essentially, the same.  They changed the matrix

8  slightly, and this really -- the question then becomes, you

9  know, is he typical of the other employees still subject to that

10 policy?

11        THE COURT:  Well, he's not typical because he doesn't

12 work there.

13        MR. BARTON:  Well, he is -- he has claims.  I mean,

14 this is -- he has claims.  Claims for harm that he suffered that

15 we think are entitled to monetary remedies as a result and so

16 are all the people that have been harmed by this policy and

17 that's --

18        THE COURT:  But they changed their policy in 2018, and

19 he left --

20        MR. BARTON:  Well, I think -- go ahead, your Honor.

21        THE COURT:  No, go ahead.  He left November 6th, 2017;

22 and they changed their policy in 2018.  Why should I interpret

23 their new policy when he's not an employee?  He can't represent

24 a class that he's not even a part of.

25        MR. BARTON:  So, your Honor, this is -- they did not

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1  actually change the policy.  The policy remains the same.  They
2  changed the amount of credit, but the amount of credit -- I
3  mean, that's -- that's -- the policy itself stays the same.
4  It's a question of whether or not they are providing less credit
5  when you take military leave.  People are still being harmed by
6  this policy.

7      And so it's not that they've changed the policy.  They've
8  merely changed -- they've altered the formula slightly with
9  respect to the pilots.  And what they've done is they've
10 distinguished between people who just take -- they give more
11 credit now for people who take five days or less, but there's
12 still a discrepancy for people who take more than five days of
13 military leave.  The policy itself is the same.  The harm is
14 still the same.  So the -- the difference is -- and the -- and
15 the harm to both he and other people are that they're all being
16 harmed by the same policy, a policy that happens to continue.

17     But the fact that he has left Horizon doesn't change the
18 fact that, if he proves that this is the policy that they have
19 in terms of providing less credit when you take military leave
20 than you would have been at work, it proves the violation with
21 respect to people who continue to be employed there.

22     It's no different than if you had a discriminatory policy
23 that said, "Don't hire people based on a certain type of color,"
24 and I left employment and I had received less pay because of my
25 race or age (Connection Chime Interruption) the fact that I have

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1  left and the policy still stays the same, even though they might

2  have increased the amount that they pay the same people in my

3  position, doesn't change the fact that there is an ongoing

4  policy that still continues to harm people.

5      And I think this is the -- the argument the defendants have

6  raised is really an argument about prospective relief, but

7  that's a different argument.  We're not seeking -- there's not a

8  request for prospective relief in there.  Their argument really

9  becomes, well, if you certify this class, somehow people will

10  be -- the absentee class members will be prejudiced,

11  essentially, because they won't have a claim for prospective

12  relief.  In the cases that -- the *Wal-Mart* case that they rely

13  on, there's a slightly different thing -- situation that was

14  going on there.

15      In *Wal-Mart* what they had done is there were two sets of

16  monetary relief; and, in order to certify under (b)(2), they

17  basically gave up or were willing -- had not asserted claim for

18  that particular type of relief or did not seek that particular

19  type of monetary relief.  And that would have precluded people,

20  essentially, on a -- from -- the argument went that that would

21  have precluded people from obtaining these past economic

22  remedies for monetary relief.  That's a different situation.

23      There's no preclusion here and there's a type of symptom --

24  there's no harm.  So if we were to go to trial in February 2021

25  and obtain a remedy -- a damages remedy -- and the defendants

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON

1  continue to have this policy that they -- the same one that they

2  challenged and it continued in 2022, there'd be no preclusion

3  from somebody asserting a claim again and saying, "Well, you now

4  owe me damages for that policy as a result of asserting this in

5  2022 or seeking prospective relief."  And that's really the

6  argument the defendants have made.

7      Moving on to the rest of the -- I want to focus on where

8  the defendants challenge portions of the elements rather than

9  elements that are unchallenged.  With respect to the Virtual

10 Credit Class, the only other two things the defendants challenge

11 is whether joinder is impracticable and the second issue is

12 whether common issues predominate.

13     In order to make the argument this is an insufficient

14 number of people, the defendants really do three things.  One is

15 they want you to ignore the size of the class.  They make an

16 argument that small classes can't be certified; and that, of

17 course, is not the case.  The number of people in the class is

18 not the only thing -- the only consideration.

19     The second thing, your Honor, is they impermissibly shrink

20 the size of the class.  They assume the class ends in February

21 2018.  They also make this argument that -- and we -- in terms

22 of what the size is, and they make an argument that someone has

23 to actually suffer a demotion.  And I think, as Mr. Clarkson's

24 experience, himself, illustrates, in -- the first time that he

25 went out on leave and was affected by this policy adversely, he

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1  did suffer a reduction in terms of what his status was.  In both

2  instances, he was required to work more -- more hours in order

3  to make the -- the number of hours he was required to make.  And

4  in October, when he knew the policy would affect him, in order

5  to avoid the reduction in status, he ended up working more hours

6  in order to able to keep the status.

7      The harm in that situation, your Honor -- and this is why

8  the harm also applies even if people have not had their status

9  actually reduced -- is that other people would have worked more

10  hours in order to keep the status had they worked those hours

11  and been treated the same or provided the proper amount of

12  credit under the Virtual Credit Policy.  What would have

13  happened -- and if they'd worked those extra hours, they would

14  have received premium pay.  Essentially what is overtime pay as

15  part of the negotiated contract.  So there's really two

16  different types of harm here, and so you can't simply look at

17  whether people went out.

18      And if you look at the entire class period that we've

19  asserted, there's more than 40 people.  There's more than

20  sufficient size of the class here.

21      The defendants also make an argument that Mr. Clarkson

22  cannot represent the flight attendants; and their argument

23  primarily is that because Mr. Clarkson has never had a

24  discussion with the flight attendants.  But there's no

25  require -- when we doesn't have personal knowledge of their

10

1  policy.  But that's not an element.  It's not a requirement.

2  The defendants don't cite any case law.  We cite a number of

3  cases in our brief.  There is simply no requirement that a class

4  representative has to have personal knowledge of the effects or

5  the situations of other class members.  They're simply not

6  required to know that.

7      They're -- what they're required to know is a sufficient

8  understanding of their own claims, and that they don't contest

9  with respect to Mr. Clarkson.

10      THE COURT:  Mr. Barton, I had a question there.  Does

11  the flight attendants have a different Collective Bargaining

12  Agreement that treats virtual credit different?

13      MR. BARTON:  Well, they do have a different virtual --

14  they do have a different Collective Bargaining Agreement.  Their

15  own witnesses conceded that those -- the Virtual Credit Policy

16  is effectively the same.  So although it appears in a different

17  CBA, or Collective Bargaining Agreement, the -- it works the

18  same way.  And that's why it -- the class can be certified to

19  include flight attendants, as well.

20      THE COURT:  And then you indicated that it shouldn't

21  just apply to demotion because he worked extra hours.

22      MR. BARTON:  Correct, your Honor.

23      THE COURT:  And then you equate that with overtime

24  pay, and I don't see why he would get overtime or premium pay.

25      MR. BARTON:  So the way that the Collective Bargaining

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1  Agreement works, if once you've worked a certain amount of --

2  it's not overtime pay in terms of an FLSA.  But under the terms

3  of the CBA, once you've worked X number of hours -- if he --

4  he's required to work -- be available to work X number of hours.

5  Once he exceeds that, under the -- under the terms of the

6  Collective Bargaining Agreement, he is then entitled to what's

7  called "premium pay."  It's the equivalent of overtime pay is

8  the way to think about it.

9      And so he did not receive that.  He had to work the extra

10  hours to make the minimum guarantee; but because he worked these

11  extra hours and they didn't properly credit the time he was out

12  on military leave, he had to work extra hours to make the

13  minimum guarantee.  Had they properly credited it, he would have

14  received premium pay.

15      So he either would have not had to work the hours or, if he

16  had to work the hours, he would have gotten premium pay.

17      Does that make it clear, your Honor?

18          THE COURT:  Well, it does.  I understand your

19  argument.  How am I supposed to word that class definition?

20          MR. BARTON:  I think -- well, the answer, your Honor,

21  is I think the class definition is -- is appropriately defined.

22  Defendants haven't taken issue with respect to our -- the way

23  we've defined the class.  They've sort of tried to narrow in

24  terms of what they think the harm is.

25          THE COURT:  Well, let me just give you an example.

12

1  We've got an individual that takes military leave.  He's given

2  virtual credit, but he had more than 70 hours already.  It

3  didn't affect him, he didn't have to work extra, and he wasn't

4  demoted.  Your definition would make him a class member when, in

5  fact, he suffered no injury.

6          MR. BARTON:  And the fact -- I mean, the Ninth Circuit

7  has said the fact that the class definition may include people

8  who have not suffered any actual monetary harm does not -- you

9  know, does not undermine the class definition.

10          THE COURT:  I know.  I was just --

11          MR. BARTON:  It's acceptable -- yeah.

12          THE COURT:  Well, I was just trying to provide some

13  definition to it so that we're not sending out notices

14  to everybody that isn't even -- that isn't even harmed and then

15  weed those out and come up with only a handful of people.  I

16  just need to be able to provide some definition to the class

17  itself.

18      So it's either those who were demoted or were forced to

19  work extra hours.  Is that correct?

20          MR. BARTON:  Yes, your Honor.  I think that's -- you

21  could modify the class definition in that way.  I mean a simple

22  way, which sometimes the Courts do, is to add the language "and

23  were harmed thereby."

24          THE COURT:  All right.

25          MR. BARTON:  But I think the way that you have

1    captured it is another way to put it, as well.

2            THE COURT:  All right.  Continue.

3            MR. BARTON:  Certainly.  The other element that the

4    defendants contest is predominance of whether or not -- and they

5    argue that individual issues will predominate.  And they claim

6    that resolving the claims will require, quote, "mini trials"

7    although they don't identify what needs to be decided in the

8    mini trials other than, perhaps, damages, which does not

9    undermine predominance.

10           The entirety of their argument, as I can tell, is based on

11   the assumption that the class member would actually need to be

12   demoted to succeed on the claims.  And what they're really

13   arguing about is whether or not you can sufficiently identify

14   the members of the class and how do you go about doing that?

15   But the Ninth Circuit and another Court in this District has

16   made clear that that exercise, identifying who is -- who is a

17   member of the class, who -- and -- and class membership, is an

18   issue about class membership.  It is not a membership -- I'm

19   sorry, not an issue about predominance.

20           And the defendants only cite two cases on predominance with

21   respect to the Virtual Credit Claim.  One is a District Court

22   case that involved questions of -- individual questions of

23   reliance.  It's of questionable validity given the Ninth Circuit

24   law on that issue.

25           And then another anti-trust -- and an anti-trust case where

1  the plaintiff's expert had assumed a pass-on in an anti-trust

2  case.  And once the Court -- once the expert refined his opinion

3  -- his opinion, the Court certified the class.  These are very

4  distinguishable cases.

5      The defendants -- the defendants make the argument that

6  determining who is a member of the class would require

7  individualized analysis, but the defendants' own witness --

8  their 30(b)(6) representative -- acknowledged all this

9  information is contained in defendants' own records.  They had

10  not -- at least as of the date of the class certification

11  motion, had not yet produced that data.

12      But what Courts, including this Court, have recognized is

13  that when you've got -- when the proof that you need is

14  contained in business records, that does not undermine

15  predominance.  That is generalized proof that satisfies

16  predominance.

17      And so what defendants are really left with with respect to

18  this argument is an issue that purely addresses damages, which

19  does not defeat predominance, or an issue that resolves or

20  addresses inclusion of who's in -- or who's included in the

21  class, which also does not defeat predominance.

22      Moving on to the Paid Leave Claim.  Defendants' central

23  argument is really that they challenge the fact that there are

24  multiple written policies and whether or not a class that

25  includes multiple written policies can be certified.  And their

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1  issue does not concern certification of a pilot-only class.

2  They appear to concede that a class is on behalf of the American

3  and -- and Horizon pilots, so long as Mr. Clarkson has standing,

4  can be certified.

5      What they fail to understand, though, is that -- that a

6  practice -- a policy does not have to exist in a single

7  document.  The Ninth Circuit has repeatedly rejected that.  And

8  where there are practices that are common, where there's a

9  course of conduct that the defendants have used even if they're

10  set forth in multiple written policies at multiple facilities,

11  classes can be certified as a result.

12      What defendant -- with respect -- and the defendants

13  challenge three elements on Rule 23(a):  Commonality,

14  typicality, and adequacy.  And then they challenge predominance

15  on the -- on the Paid Leave Claim, as well.  They do not

16  challenge that there's sufficient numbers with respect to the

17  Paid Leave Class.

18      What the defendants are trying to argue -- and they try to

19  make an analysis or analogy to *Wal-Mart v. Dukes*.  But in that

20  case, the company had a specific policy against having uniform

21  practices.  And there was no specific employment practice that

22  the plaintiff was able to identify.

23      That is very different from this case.  There is a uniform

24  practice across the workgroups and across the two companies.

25  And the uniform practice is that there are a set of paid leave

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1  practices for what we contend is comparable leave and a practice

2  across the company of providing no paid leave for short-term

3  military leave.  That's the common practice.

4      The common issue -- and when you look at commonality, the

5  question has to be:  What are the elements and what do you have

6  to look at?

7      So the common issues here are whether these leaves are

8  comparable and whether this practice violates USERRA.  In order

9  to determine comparability, which is really going to be the fact

10  question that goes before the jury, there's a DOL regulation

11  that sets forth what are the elements.  Those are the duration

12  of leave, the purpose, and the voluntariness of the leave.

13      Defendants cite a case -- the *Hoefert* case, which confirms

14  that's what you're looking for.  Defendants' own witnesses

15  testified that the purposes for these leaves are the same across

16  the groups, the voluntariness does not vary across the groups,

17  and defendants' witnesses conceded not only that the date -- the

18  duration would be determined by data but they were unaware of

19  any differences among the groups in terms of the durations of

20  the leave as to why duration of the leave would vary across the

21  groups.

22      THE COURT:  Mr. Barton, I'm going to interrupt you

23  here.  So play this out.  We take it to a jury.  Are we gonna

24  have to introduce all the Collective Bargaining Agreements for

25  the eight different categories of employees in order to show

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1  comparability as to, for instance, jury service or some -- some

2  other leaves because they're treated differently in each of the

3  Collective Bargaining Agreements and they're treated differently

4  at various times, as well?

5          MR. BARTON:  I think that -- if you go through, I

6  think the witnesses are fairly clear that the leaves are

7  actually fairly consistent over time.  I think there are slight

8  differences in terms of the policies, certainly, in terms of

9  what -- in terms of the Collective Bargaining Agreements or the

10 language of the agreements.  But that's really -- that doesn't

11 address the factors that need to be addressed by the jury in

12 terms of what make -- whether these particular types of leaves

13 or whether a particular type of leave is comparable to military

14 leave.  And those really go to the three elements in the DOL

15 regulations.

16          THE COURT:  All right.  My follow-up question is:  How

17 can he be a representative all the way back to October 10th,

18 2004, when he began work November 23rd, 2013, for Horizon?

19          MR. BARTON:  Because there's a similar policy and the

20 defendants' own witnesses were consistent that the policies that

21 have been in place have been in place essentially the same since

22 2004.  And so he's challenging a practice, even though it

23 existed before the time that he started, on behalf of other

24 people.  This is not a question -- this is -- this is the

25 difference between does he have standing versus whether or not

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1   he is an adequate or typical class representative.  That -- that

2   secondary question is really what we're looking at here.  He's

3   not bringing claims on behalf of himself going back to 2004, but

4   he's challenging a policy that is effectively the same as the

5   one that he was subject to that goes back to 2004.  So long as

6   the policies were essentially the same, he's challenging the

7   same practice that exists -- has existed back to 2004.  That is

8   why he can challenge -- he can -- he's an appropriate class

9   presentative.

10          I would say it's the same thing as if I -- I purchased a

11  stock that there was an existing fraud, and the fraud dated

12  back -- and assume I had no statute of limitations problem --

13  back to 2004, whatever time prior to the time I actually

14  purchased the stock.  The essential claim is that there was a --

15  there was a fraud that existed and it inflated the price of the

16  stock; that it preexisted my purchase; and my purchase was

17  affected by that fraud.  I can represent people who purchased

18  days, weeks, years before since the beginning of the fraud so

19  long as the fraud and the overall practice is the same.  It's

20  the same course of conduct.

21          The same would be true for an anti-trust case.  The

22  anti-trust conspiracy preexisted my purchase that harmed me.

23  Even though it was going on for years, I can represent those

24  people.

25          Same thing would be true in terms of a consumer case where

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1   I'm challenging a practice that they've had so long as we're

2   within the statute of limitations.  It's the practice that has

3   been going on even though the practice preexists the time that I

4   was harmed.

5       And that's why -- so long as the practice is the same, the

6   overall course of conduct is the same, that's why he's an

7   appropriate class representative to go back to 2004 even though

8   it predates when he was personally harmed.

9       Moving on to typicality, the standard with respect to

10  typicality -- and I think this also addresses your question --

11  is if the standard is:  Is it reasonably coextensive?  What the

12  Ninth Circuit has said it need not be substantially identical.

13      And defendants identify or make two arguments.  One is that

14  pilots are not typical of non-pilots because pilots take more

15  military leave and two is they identified scheduling -- how

16  scheduling leave is different for pilots than for some other

17  groups.  So I think it would probably be similar to the flight

18  attendants.

19      The question of whether or not a particular group -- and,

20  particularly here, defendants claim the pilots take more

21  military leave.  The only thing that means is more leave means

22  they have more damages.  But damages -- increased amount of

23  damages among the class or even among the plaintiff does not

24  defeat typicality.  And the merely -- merely the fact that the

25  plaintiff's claim is great than other class members also does

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON

1   not defeat typicality.

2        Defendants also want to argue -- make an argument about the

3   frequency by which the pilots take military leave.  But

4   frequency is not one of the factors that they -- the Department

5   of Labor regulations identify.  They want to confuse frequency

6   with duration.  But they cite no case under -- in this context,

7   which is considered frequency.  The case that they actually cite

8   actually considered duration of the leave, not the frequency of

9   the leave.

10        They do cite a case involving a discrimination case, but

11  it's a -- it's a very different context.  We're not talking

12  about comparability there.  We're talking about a very different

13  situation and a very different claim under 4311, not 4316.  And

14  the defendants' own witnesses conceded that frequency with

15  respect to leave is different than duration.  The comparable

16  leaves might have limits on duration, but none of the leaves

17  have any limits on frequency.

18        With respect to the pilot's schedule, they argue that

19  there's differences here; but none of those differences, again,

20  address the factors that are at issue in this case.  The

21  relevant factors, which are the duration, voluntariness, and

22  purpose and typicality -- and they ignore -- the typicality

23  refers to the nature of the claim, not the specific facts from

24  which it arose.  Immaterial fact differences do not undermine

25  typicality.

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON*

1    And what -- the defendants' own witnesses conceded that

2  military leave was unpaid for all employee groups since 2004,

3  and they -- and the relevant factors have been uniform across

4  the workgroups.

5    So, at bottom, what defendants are arguing about are

6  differences in damages and not factors that are -- that

7  ultimately affect typicality.

8    Defendants repeat their argument with respect to

9  Mr. Clarkson's adequacy that they made with the Virtual Credit

10 Policy and making an argument that he's not personally familiar

11 with the leave policy for -- for class members other than

12 pilots.  But there's no authority.  They cite no authority.  And

13 as one case said -- cited -- explicitly stated there is no

14 authority for the proposition that class members must have

15 personal knowledge with respect to other class members'

16 circumstances in order to represent the class.  And we cite

17 multiple places that say that.

18    What's required and what Mr. Clarkson has is he has a very

19 good familiarity with his own claims, and they don't dispute

20 that he has sufficient familiarity with his own claims.

21    The final issue with respect that -- that defendants

22 dispute is whether common questions predominate.  They argue

23 here that there are significant differences between pilots and

24 non-pilot groups, but they don't identify anything that's a

25 material difference between the groups that affects the evidence

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 73) BY MR. BARTON

1  that's required to prove the claim.  And that's the critical

2  thing.  It's what the Supreme Court said in *Halliburton*; what

3  the Ninth Circuit case -- *Walker* also said the assessment of

4  predominance begins with the elements of a cause of action, and

5  they ignore what the elements of the cause of action is.

6      The central question here that will go to the jury is

7  whether military leave is comparable to the other forms of paid

8  leave.  Again, I know I sound like a broken record; but it's the

9  DOL regulations -- the factors that the DOL considers -- those

10 things are similar.  They're similar across the groups.  They've

11 not identified any differences across the groups with respect to

12 the factors that are contained within the DOL regulation.

13     And they don't explain anything with respect to how

14 scheduling or anything else affects the ultimate determination

15 that the jury and this Court will have to make.

16     Let me just address very briefly anything that I've touched

17 on with respect to standing that I haven't yet covered.  They

18 make these arguments as to why Mr. Clarkson does not have

19 standing as to either the Virtual Credit Class or the Paid Leave

20 Claims.

21     I think I've largely covered the Virtual Credit Claims.

22 And as to the Paid Leave Claim, they assume, based on nothing in

23 the Complaint, that it's solely based on differential pay.  But

24 as the *Brill* case explained in a case involving comparability of

25 leaves that, if the comparable leave provides full pay, then

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
RESPONSE BY MR. METLITSKY

1  that is an appropriate remedy.  So arguments that the defendants

2  might have as to whether at certain points of time Mr. Clarkson

3  received more money from the military really are irrelevant as

4  to his standing.

5       Unless the Court has further questions --

6            THE COURT:  No, I don't.  Let's hear from the defense.

7            MR. METLITSKY:  Thank you, your Honor.

8  Anton Metlitsky for the defense.  I hear an echo.  Can -- can

9  you hear me?

10           THE COURT:  I can.  Are you on a speakerphone or how

11  are you speaking?

12           MR. METLITSKY:  I -- I am on a speakerphone.

13  Unfortunately, I don't have a headset where I am.  Maybe it will

14  help if I bring the speakerphone closer?

15           THE COURT:  Or maybe further away.

16           MR. METLITSKY:  Or maybe further away.  How's that?

17           THE COURT:  It's better now.

18           MR. METLITSKY:  Okay.  Good.  I'll -- I'll stand here

19  then.  Thank you.  Thank you, your Honor.

20      So if I could, I'd like to, basically, go in reverse order

21  from the way Mr. Barton went and start with standing and more

22  general -- or, generally, the adequacy of the plaintiff to

23  represent any of these classes, then go to the (Audio Connection

24  Gap) class and the inability to certify a non-pilot -- a class

25  involving non-pilots, and then the Virtual Credit Class.

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
RESPONSE BY MR. METLITSKY

1      So on standing, I think Mr. Barton left out a (Audio

2  Connection Gap) point that we made in our brief.  Some of the --

3  I'd like to start first with --

4           THE COURT:  Mr. Metlitsky, I can't hear you now.

5           MR. METLITSKY:  Okay.

6           THE COURT:  Do you have a handset that you could use?

7           MR. METLITSKY:  You know, let me -- let me -- can I --

8  I'll try to dial back in from another telephone and -- and see

9  if that works better if that's okay.

10          THE COURT:  Yes, please.

11          MR. METLITSKY:  Okay.  One second.

12     (Pause in the proceedings)

13          THE COURT:  Counsel, while we're waiting for

14  Mr. Metlitsky to dial back in, could the rest of us mute our

15  phones in case we're getting feedback from any one of those

16  phones?  Thank you.

17     (Pause in the proceedings)

18          THE COURT:  Mr. Metlitsky --

19          MR. METLITSKY:  Hello?

20          THE COURT:  -- can you hear me?

21          MR. METLITSKY:  Yes.

22          THE COURT:  This -- this is Judge Rice.

23          MR. METLITSKY:  Yes, your Honor.  Sorry about that.

24  Can you hear me?

25          THE COURT:  Yes.

25

1        MR. METLITSKY:  Okay.  Apologize.  Apologize, your

2   Honor.

3        So as I was saying, I'd -- I'd like to start with the --

4   the point about standing and Major Clarkson's adequacy,

5   generally, to represent any of these classes; and I'd like to

6   start with the declaratory relief claims.  We think he doesn't

7   have standing pretty clearly to seek any sort of declaratory

8   relief.  The Ninth Circuit rule is where a party is seeking

9   injunctive or declaratory relief, she must demonstrate that she

10  is realistically threatened by repetition of the violation.

11  And, here, Mr. Clarkson is no longer a Horizon employee and he's

12  retired from the military, which means there's no realistic

13  threat of any repetition of any of these violations at all.

14       Now, he says that he's a retired member of the military,

15  which means that, in theory, he could be recalled; but the DOD

16  regulations make clear -- I'm quoting -- that "Regular and

17  Reserve retired members may be used as a manpower source of last

18  resort after other sources are determined not to be available or

19  a source for unique skills not otherwise obtainable."  That's

20  DoD Instruction 1352.01 at Page 4.

21       So there's no realistic possibility that Major Clarkson is

22  going to be recalled for some future military leave, and so he

23  doesn't have any standing to seek declaratory relief.

24       Now, their major response in their reply brief was, well,

25  they're not seeking any forward-looking relief.  That was kind

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
RESPONSE BY MR. METLITSKY

1  of a surprising response because Paragraph 28 of their Complaint

2  expressly seeks, quote, "an order requiring [defendant] to

3  comply with USERRA in the future."  And the fact that the

4  plaintiffs are willing to jettison that kind of relief by itself

5  calls into question his adequacy to represent the class.  I'll

6  get to that in a moment.

7      But, in any event, it's -- it's, basically, a non sequitur

8  because declaratory relief for purposes of standing is always

9  forward looking because the point of it is to clarify the

10  parties' rights; and that only matters if there's some kind of

11  realistic threat of a violation in the future.  If there's not,

12  all you need is damages to remedy past violations, which is why

13  the Ninth Circuit precedent just -- clearly is that, where a

14  party is seeking injunctive or declaratory relief, they have to

15  show a realistic threat of a repetition in the future.

16      So we think he's got no standing to seek declaratory

17  relief, and so the question is whether he can adequately

18  represent a money-damages class.  The answer to that is "No" for

19  several reasons.  The first is claim splitting.  So, you know,

20  obviously, if he's gonna -- he would have to drop his equitable

21  claims to represent a money-damages claim.  And there's a lot of

22  precedent within this Circuit that you can't do that; that a

23  plaintiff that needs to claim split is inadequate because he

24  puts his absent class members at risk of preclusion.

25      We cite several of these cases at Pages 8 to 9 of our

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
RESPONSE BY MR. METLITSKY

1  brief.  There's another case we don't cite, for example, called

2  *Beal against Lifetouch* that's 2012 WESTLAW 3705171.  They cite

3  out-of-circuit cases that say you can claim split in the -- in

4  the class-action context.  That doesn't appear to be the law of

5  this Circuit; and it doesn't really make any sense to me

6  because, after all, a class action is just a mechanism to

7  aggregate individual claims.  And so if you have a thousand

8  individuals with split claims, that just means you have a

9  thousand individuals in the aggregate that are at risk of

10  preclusion in the future.  And a plaintiff, by definition, who's

11  willing to risk precluding absent class members from seeking

12  relief, especially relief that's available -- that's being asked

13  for in his own Complaint, is an inadequate class representative.

14      But, you know, the Court doesn't really have to decide that

15  question because there are two other reasons why Major Clarkson

16  is an inadequate class rep.  One is, again, as I said, he's

17  willing to jettison relief that he expressly asks for in his

18  Complaint.  And there are -- you know, they did that in their

19  reply brief; and there are cases out there within this Circuit

20  making clear that that is itself a reason to deem a class member

21  inadequate.  One is *Park against Webloyalty*.  That's 2019

22  WESTLAW 1227062.  Another is *Western States Wholesale against*

23  *Synthetic Industries*, 206 F.R.D. 271.  Another is *Tasion against*

24  *Ubiquiti Networks*, 308 F.R.D. 630.  Those are from the Southern,

25  Central, and Northern Districts of California.  So that's

1  another reason why Major Clarkson is an inadequate class rep.

2       And then the final reason has to do with this differential

3  pay point that Mr. Barton just mentioned at the end.  So we

4  argued in our opposition Mr. Clarkson doesn't have standing

5  because he testified that he made about the same money -- amount

6  of money or less at the airlines as he did in the military.  And

7  we said, well, the -- the regular remedy is differential pay;

8  and so he can't bring his claim because his injury wouldn't be

9  redressed.

10       They responded that, actually, the remedy is full pay,

11  meaning that he could get double recovery.  He gets to get

12  everything that he would have made working at Alaska plus what

13  he made working for the military.

14       Now, the Court doesn't have to decide whether that's wrong

15  or right right now.  We think it's pretty clearly wrong.  For

16  example, the Supreme Court in *Monroe against Standard Oil* --

17  that's 452 U.S. 549 -- in interpreting a USERRA predecessor

18  statute and holding that military -- paid military leave as a

19  general matter is not required.  One of the reasons that's true

20  is because Congress did not intend for, quote, double

21  compensation for such periods, which is exactly what the

22  plaintiffs would be asking for.

23       So they would have to make this very aggressive argument

24  for the plaintiff in this case to succeed yet many, if not most,

25  class members don't need that argument to succeed.  All they

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*RESPONSE BY MR. METLITSKY*

1  need is differential pay, and yet this plaintiff can't seek

2  differential pay; has no incentive to make any argument for that

3  remedy because he doesn't even have standing to make an argument

4  for that remedy; and, in any event, setting aside Article III

5  intricacies, he just doesn't have any incentive to do it because

6  he won't make any money if that's the remedy.

7       So it seems to me that, as to the Paid Leave Class at

8  least, the fact that they will have to make this very aggressive

9  remedial argument that other class members just don't need to be

10  correct is itself a reason that Mr. Clarkson is an inadequate

11  class representative of -- of the Paid Leave Class at least.

12      So those are, I think, in a nutshell the standing and

13  adequacy issues that apply to the classes generally.  If the

14  Court has any questions there, I'm happy to answer them.

15  Otherwise, I'll move on to the Paid Leave Class and -- and the

16  non-pilots.

17            THE COURT:  Please move forward.

18            MR. METLITSKY:  Okay.  So on the -- on -- on the Paid

19  Leave Class, I think that it's worth just clarifying the basic

20  elements of the claim.  This is -- this is the claim that, you

21  know, Alaska, say, provides paid jury duty leave they say; and

22  so, for that reason, they have to provide paid military leave.

23  And so Mr. Barton focused on one of the elements, which is

24  comparability.  The jury duty leave has to be comparable to the

25  military leave.  And -- and he's right.  The duration, purpose,

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*RESPONSE BY MR. METLITSKY*

1    and voluntariness are the elements there.

2         But there's another element, which is that the statute

3    requires that the two leaves, if they're comparable, the

4    employer has to generally provide the same benefits.  And so the

5    question in this case, for example -- the way that translates

6    into this case is the civilian leave, let's say bereavement

7    leave, has to be paid and the military leave has to be unpaid.

8    And if either one of those things is untrue, they wouldn't

9    satisfy one of the elements of their claims.

10        So that's where -- it's that second element where the CBA

11   differences come this.  Right?  So just to take one example, the

12   pilots' CBA at Alaska does not provide for paid bereavement

13   leave.  It provides for -- if you want to take bereavement

14   leave, you can either take an unpaid personal day or you can use

15   your sick leave.  Right?

16        Now, that's not true for flight attendants.  Flight

17   attendants, under their CBA, get four days of paid bereavement

18   leave.  So that -- just that one type of leave you'd have to

19   absolutely look at both of those CBAs and, of course, the CBAs

20   of the other workgroups to figure out what you actually get on

21   bereavement leave.

22        There's other examples that demonstrate not just that you

23   have to look at different CBAs but that pilots' CBAs, in

24   particular, are extremely complicated.  So, for example, if you

25   look at reserve pilots for Alaska and jury duty, it's -- they

1  don't get paid for jury duty.  What happens is they have to work

2  a minimum -- be available a minimum number of days; and if they

3  get jury duty and it brings them below the minimum threshold,

4  that doesn't -- they still get the minimum amount of pay.  But

5  if they -- if they get jury duty on days that would not require

6  them to otherwise go below the minimum threshold, jury duty

7  doesn't affect their pay at all.  So, you know, there's no

8  comparable provision for non-pilot CBAs.

9      So those are just sort of a few examples of why you

10  absolutely have to look at the different CBAs.  And if there was

11  a trial here, you would have to introduce all of them.  And not

12  just introduce all of them but you would have to ask the jury to

13  construe and understand all of them.

14      And so we think, obviously, there's a commonality and a

15  problem and -- excuse me, predominance problem as to that

16  element, especially the -- what is actually provided on these

17  various sorts of leaves.

18      Now, as to the comparability element, Mr. Barton mentioned

19  that duration -- and he contrasts that with frequency of the

20  leaves.  But I don't understand the difference between those

21  two.  The -- the point is just that pilots take a lot more leave

22  individually than people in other workgroups.  And so the

23  argument that a pilot has to make -- so, for example, I -- I

24  think Major Clarkson took, like, a hundred and something days

25  of -- of military leave in 2017 before he left Horizon.  You

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*RESPONSE BY MR. METLITSKY*

1  know, he testified that this was like a second career.  You

2  know, military leave for -- for pilots.  A parallel career for

3  pilots.  And, you know, that's -- I think it's undisputed that

4  that's not true for the other workgroups.  And that matters for

5  duration because, you know, 150 days or 60 days or whatever it

6  is of a leave is a lot different than, say, two weeks of leave,

7  right, when you're comparing it to the kind of leaves that

8  they're relying on, like, bereavement leave where people

9  hopefully don't take too much of that, you know, ever and,

10 certainly, not in a particular year.

11      And so I think their -- their response is that you're only

12 supposed to look at the duration of each snippet of leave.  So

13 if you take two weeks of leave ten times a year, the relevant

14 duration is not 120 days a year but 2 weeks.

15      And, you know, again, the Court doesn't have to resolve

16 that argument; but it seems like a pretty aggressive argument to

17 me after all the fact that Congress might have intended that, if

18 an employer gives paid jury duty leave where he expected an

19 employee to be gone for maybe a week, that he has to give --

20 that the employer also has to give paid military leave for

21 approximately the same amount of time is a lot different than

22 saying if an employee -- if an employer provides for paid

23 military leave for a week of jury duty, he now has to provide

24 paid military leave for, you know, ten weeks or seven weeks or

25 whatever of military leave.

33

1        And the point from a class action perspective is that

2   pilots can't win the case unless they're right about that more

3   aggressive argument.  And they have no incentive to make the

4   less aggressive argument, which would help the other -- the --

5   you know, the non-pilot workgroups because the non-pilot

6   workgroups don't need that extremely aggressive argument or at

7   least need it less, right, just because they take less military

8   leave.  So that seems to me to go to the comparability point

9   and -- and make it clear that pilots are very differently

10  situated than non-pilot groups for purposes of class

11  certification.

12        So those -- those are the major arguments for -- for the

13  Paid Leave Class.  It's also, I would say -- one other thing on

14  that.  It's not true that a -- that a class representative can

15  be an adequate -- excuse me, that an individual can be an

16  adequate class representative if he knows nothing about absent

17  class members.  The cases that they cite say that you don't need

18  personal knowledge of the experiences of each of their fellow

19  class members.  And that's, of course, true.  But in their

20  brief, you know, they -- that's the *Delagarza* case I'm citing --

21  they, you know, bracketed out each of their fellow class members

22  and just said, [other class members] in brackets.  That's a

23  completely different concept.  Yes, it's true you don't need to

24  have knowledge of every single class member; but it seems to me

25  that you should at least have knowledge of some of them.  Right?

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
RESPONSE BY MR. METLITSKY

1    And that's, for example, the *Burkhalter* case that we cite.  One

2    of the reasons the plaintiff was inadequate was because he had

3    no conception of the class of people he purportedly represents.

4    And that's sort of concededly true in this case as to anybody

5    other than pilots.  So that's a third reason that he can't

6    represent a Paid Leave Class beyond pilots.

7         So as to the Virtual Credit Class -- so I think part of the

8    dispute there is I think maybe the first question that -- that

9    your Honor asked:  What is the actual violation?  Right?  The

10   statute.  So, for example, Section 4313 is about re-employment.

11   The proper re-employment position after you come back from a

12   leave.  And so their claim there has to be that he was

13   re-employed into a reserve position rather than the regular

14   line.  Right?  That -- they have to demonstrate that to win

15   their claim as far as I understand their claims.

16        The same thing with 4316(c).  That one is about

17   circumstances in which you can't discharge a returning service

18   member, but Courts have construed discharge to include denote.

19   So you have to show some kind of demotion or that you were put

20   in the wrong employment position or -- or whatever.

21        And so that -- that aspect of their claim poses a problem

22   for class certification because the way this -- the system works

23   and the way it interacts with the Virtual Credit Policy is that

24   it is necessary for a pilot to -- to bid, you know, more than

25   70 hours to -- to get on the regular line; but it's not

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
RESPONSE BY MR. METLITSKY

1  sufficient.  Somebody who -- who bids 70 hours, including, you

2  know, less than 70 but he -- but he gets brought over the line

3  through virtual credit, is eligible for the regular line; but

4  there is a minimum number of reserve slots that have to be

5  filled at Horizon every month.  And even people that satisfy

6  that 70-hour threshold may not -- may be bumped down to the

7  reserve status.  For one thing, they might ask for reserve

8  status in which case they'll get reserve status.  And, for

9  another thing, if people above them of greater seniority have

10  preferences that trump, those people will get on the -- on the

11  regular line; and they will get reserve status.

12      And so what that means is that only in some cases will the

13  credit policy that is -- will it make any difference?  In other

14  words, if you've got more credits for military leave than the

15  two-and-a-half credits that they got under the pre-February 2018

16  Horizon policy, would make any difference to their claim at all.

17  Right?

18      So once you understand that, I think the class cert issues

19  become a little clearer.

20      So for numerosity, if you just look at up to the

21  February 2018 policy, there are, I believe, 16 people who fall

22  into the following category:  People who took military leave in

23  a particular month and ended up on the reserve line in a

24  particular month -- or ended up with reserve status in a

25  particular month.  Now, that's the maximum number of people that

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*RESPONSE BY MR. METLITSKY*

1  could have been -- that could be in the class.

2       But the fact that they had military leave and were -- had

3  reserve status in the same month doesn't mean that the credit

4  policy had anything at all to do with that.  So tops is 16.

5  It's probably lower than that.

6       Now, the way they want to fix this problem is extending the

7  class past February 2018.  But, as your Honor mentioned, there

8  was a new policy after 2018.  Major Clarkson was never subject

9  to that policy because he was gone by that point.  And when he

10  emailed the Union executive about the new policy -- the new

11  policy was collectively bargained by the Union to account for

12  some of the types of problems that -- that the plaintiff is

13  raising in this case and the response was that the policy is,

14  quote, working out very well and the Union was, quote, not aware

15  of anyone being awarded reserve when they have seniority to hold

16  the line under the new policy, which means there's no reason to

17  believe that there's any substantial number of people that were

18  affected by the new policy beyond the people that were affected,

19  however many that was, before February 2018.

20       So I don't think extending the date really solves any

21  numerosity problem.  You have a very small number of even

22  potential class members and no reason why it needs to be

23  litigated as a class.

24       As to commonality or -- and predominance, the issue is,

25  because you have no idea whether the Virtual Credit Policy by

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*RESPONSE BY MR. METLITSKY*

1  itself would have affected you in any way -- would have affected

2  whether you got regular line or reserve status.  To figure that

3  out -- and that -- that's not just the question who's in the

4  class.  That's a question of whether there's been a violation.

5  Right?  That's an element.  To figure that out, you have to

6  rerun every pilot's preferences, you know, hypothetically based

7  on the new amount for, you know, whatever -- whatever number of

8  credits they say should have been allocated per day to military

9  leave and see what would have happened.  Right?  So it -- it's

10  true that those are in the company's business records, but I

11  don't see how that could make those analyses any less

12  individualized.  After all, you have to start with Pilot A,

13  who's potentially in the class, and figure out what would have

14  happened to Pilot A under the system if the Virtual Credit

15  Policy were different.  Okay.  Now you know.  Now you have to go

16  to Pilot B and rerun it all over again.  Right?

17      So that is the -- the commonality and predominance problem

18  or -- for the Virtual Credit Class.

19      If the -- if the Court has any questions, I'm happy to

20  answer them; but that's -- those are the basic points.

21          THE COURT:  No.  Thank you.  I have no questions.

22  Mr. --

23          MR. BARTON:  Your Honor, may I respond?

24          THE COURT:  Mr. Barton, I'll just give you a minute or

25  two in reply.

*TELEPHONIC MOTION HEARING - AUGUST 4, 2020*
*REPLY BY MR. BARTON*

1    MR. BARTON:  Certainly.  Let me just quickly go

2  through.

3    I think we -- we cited case explain -- I'm gonna start

4  exactly where the defendants started on with respect to the

5  declaratory relief.  We cited a case that explained declaratory

6  relief can be both prospective and retrospective.

7    In terms of claim splitting -- and I think this is the

8  issue -- is they don't cite any Ninth Circuit case.  They cite

9  some District Court cases, and I think what they're -- here's

10  why they're different, your Honor:  We can obtain damages.  No

11  class member who is currently there is gonna be prejudiced in

12  any way.  If we win at a jury trial in February 2021 and they

13  continue this practice, no one's gonna be precluded from

14  challenging a practice that they -- adversely affecting them

15  after the Judgment.  They can still obtain damages for a claim

16  that arises after that, and they can obtain prospective relief

17  if somebody wants.  And any determination that we get out of a

18  jury that determines that the practices are illegal only helps

19  somebody with a claim for prospective relief.

20    With respect to differential pay, defendants made a

21  statement that many class members only need differential pay.

22  There is no evidence in the record to support that.  That's just

23  argument.  There's nothing that supports that.  They have cited

24  nothing in their brief.  It's just a statement that they've

25  made.

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
REPLY BY MR. BARTON

1      With respect to the Paid Leave Class, I think the most --

2  the first point that I want to make is, with respect to

3  commonality, defendants appear to concede -- and I think, with

4  respect to all the elements, they appear to concede that a

5  pilot-only class can be certified here.  So we're really talking

6  about whether or not you can certify beyond a pilot-only class.

7      Their argument with respect to the CBAs really goes to

8  whether -- comparing military -- unpaid military leave with

9  respect to one group versus the other group.  We don't disagree.

10  We're not gonna make an argument that flight attendants should

11  be entitled to comparability as to what some other pilot -- some

12  pilot gets or that pilots should be entitled to what flight

13  attendants get for other paid leave.  It's the comp -- the

14  particular type of leave the military leave is comparable to

15  within that group.  That's the only thing the statute says, and

16  that's the argument that they're making.  But it doesn't get

17  into the minutiae that they want to get into.

18      With respect to duration versus frequency, again,

19  they're -- they made an argument that other groups don't need to

20  have the same frequency; and they don't seem to understand the

21  difference between duration and frequency.  And the -- their own

22  client -- their witnesses did.  It's the length of leave versus

23  how often you take it.

24      With respect to the knowledge of the class representative,

25  the *Burkhalter* case that they cite?  That's a case where the

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
REPLY BY MR. BARTON

1  individual class representative didn't have enough information

2  about his own claim, not about the claims of class

3  representatives.

4      With respect to the Virtual Credit Claim, I think they're

5  having an overly narrow reading of the statute.  It's a change

6  in status.  It does not have -- and the status change is the

7  amount of not properly crediting them and not merely the fact

8  that they become a -- demoted to a reserve status.  It's that

9  change of status is not appropriately credited.  That's the way

10  to read the statute.

11      Just a couple other points, your Honor.  They're really

12  talking about how -- again, they're talking about how to

13  identify people.  Their own representatives -- their own

14  30(b)(6) representatives told us that you can make those

15  determinations in terms of identifying who was harmed by the

16  policy -- the Virtual Credit Policy -- by the data.  The problem

17  is, at least at the time of the motion for class certification,

18  they hadn't produced the data.  But they -- they admitted --

19  their own representative admitted that it is available in the

20  data.  The fact that we have to go through and make an analysis

21  doesn't make it not predominant.  It's simply a damage

22  calculation.

23      And with respect to the statement, which is a hearsay

24  statement, that is in their own.  They cite it in the brief and

25  they claim the post-2018 policy was, quote, working out well.

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
REPLY BY MR. BARTON

1  They asked Mr. Clarkson at his deposition if he knew specific

2  people that were experiencing the policy post-2018.  He

3  identified two of them.  We then went and got a Declaration from

4  one of them, and that is attached in our reply brief.  It

5  establishes the 2018 matrix that still applies.  The same policy

6  but with a different number in it.  It still has a problem with

7  respect to people on military leave.

8       And unless the Court has further questions, I will rest

9  there.

10          THE COURT:  Mr. Barton, have you had a chance to look

11 at the pending motion to amend the jury trial scheduling order

12 and the proposed new dates at Pages 1 and 2 of that motion?

13          MR. BARTON:  That's -- it's actually our motion, your

14 Honor.  So, yes, I have.

15          THE COURT:  Oh, all right.  And then I apologize.

16          MR. BARTON:  That's okay.

17          THE COURT:  Mr. Metlitsky, have you had a chance to

18 look at that motion; and what are your objections or

19 observations?

20          MR. METLITSKY:  Mr. Morales, do you want to take that

21 one?

22          MR. ROBERTSON:  Yeah.  This is, your Honor,

23 Mark Robertson for defendants on the line.  Apologize for the

24 echo.

25       But, yes, we've reviewed that.  And we submitted a short

TELEPHONIC MOTION HEARING - AUGUST 4, 2020
REPLY BY MR. BARTON

1  opposition, your Honor, basically making the point that a

2  four-month extension when the entire basis is provision of class

3  member data and we don't yet have a class cert decision is

4  premature.  And I think, until we get that ruling, neither party

5  is really in a position to know how much additional time, if

6  any, is needed.

7        But even if you certify the entire class -- and, obviously,

8  for the reasons outlined today by defendants, we certainly don't

9  believe you should -- I'm not even sure even then a four-month

10  extension is necessary.

11        But the bottom line is, in our view, that it's premature

12  until a decision is issued.

13              THE COURT:  All right.  Well, I intend to get the

14  class certification order out promptly.  And because of the

15  COVID-19 pandemic, it appears to me that this -- this

16  continuance is reasonable.

17        So I'm going to enter an order continuing these dates

18  substantially similar to the proposal.  And, if necessary, that

19  can be modified for good cause later.

20        Thank you, Counsel, for your arguments.  I'll get my orders

21  out as soon as I can.

22              MR. BARTON:  Thank you, your Honor.

23              MR. METLITSKY:  Thank you, your Honor.

24                    (Court adjourned at 11:07 a.m.)

25

1                               **GENERAL INDEX**

2                                                           **PAGE**

3   Motion Hearing - August 4, 2020....................... 2

4   Plaintiff's Motion for Class Certification (ECF No. 73)
         By Mr. Barton........................................ 3
5        Response by Mr. Metlitsky........................... 23
         Reply by Mr. Barton................................. 38
6
    Reporter's Certificate............................... 44
7

8
                                **WITNESS INDEX**
9   **PLAINTIFF WITNESSES:**                                **PAGE**

10  None

11  **DEFENDANT WITNESSES**                                 **PAGE**

12  None

13

14                              **EXHIBIT INDEX**

15  **NO.    DESCRIPTION**                                  **ADMITTED**

16  None

17

18

19

20

21

22

23

24

25

```
1                   C E R T I F I C A T E

2

3        I, RONELLE F. CORBEY, do hereby certify:

4        That I am an Official Court Reporter for the United States

5    District Court for the Eastern District of Washington in

6    Spokane, Washington;

7        That the foregoing proceedings were taken on the date and

8    at the time and place as shown on the first page hereto; and

9        That the foregoing proceedings are a full, true and

10   accurate transcription of the requested proceedings, duly

11   transcribed by me or under my direction.

12       I do further certify that I am not a relative of, employee

13   of, or counsel for any of said parties, or otherwise interested

14   in the event of said proceedings.

15       DATED this 8th day of December, 2020.

16

17                          _____

18                          RONELLE F. CORBEY, RPR, CRR, CCR
                            Washington CCR No. 2968
19                          Official Court Reporter for the
                            U.S. District Court for the
20                          Eastern District of Washington in
                            Spokane County, Washington
21

22

23

24

25
```