1  R. Joseph Barton
   (admitted pro hac vice)
2  BLOCK & LEVITON LLP
   1735 20th Street NW
3  Washington, DC 20009
   Telephone: (202) 734-7046
4  jbarton@blockleviton.com

5  *Attorneys for Plaintiff & the Class*
   *(additional counsel listed on signature page)*

6

7              **UNITED STATES DISTRICT COURT**
               **EASTERN DISTRICT OF WASHINGTON**
8

9  CASEY CLARKSON,

                *Plaintiff,*              No. 2:19-CV-005-TOR
10
                                          **PLAINTIFF'S OPPOSITION TO**
11    v.                                  **DEFENDANTS' MOTION FOR**
                                          **SUMMARY JUDGMENT**
   ALASKA AIRLINES, INC, and
12 HORIZON AIR INDUSTRIES,
   INC.,
13
                *Defendants*
14

15

16

17

18

19

20

-- PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT

1

## Table of Contents

Introduction ...................................................................................... 1

Statement of Facts ............................................................................ 2

I.    Mr. Clarkson's Military Status and Leaves with Horizon and Alaska .......... 2

II.    Horizon's Virtual Credit Policy ..................................................... 2

III.    Complaints About the Virtual Credit Policy's Violation of USERRA .......... 4

IV.    Leaves of Absence and Pilot Compensation at Horizon and Alaska ............. 5

Argument ........................................................................................... 6

I.    Summary Judgment Should be Denied on the Paid Leave Claim
      (Count IV). ............................................................................... 7

      A.    Defendants Provide the Benefit of Protection from Loss of Pay to
            Pilots Who Take the Comparator Leaves. ........................................ 8

      B.    Whether the Comparator Leaves are Comparable to the Class's
            Short-term Military Leaves are Genuine Issues of Material Fact...... 11

            1.    The Short-term Military Leaves of Paid Leave Class
                  Members are Comparable to the Comparator Leaves in
                  Duration. .............................................................. 12

                  a.    Duration Means the Length of Time a Leave Lasts. ..... 12

                  b.    USERRA § 4316 Requires Comparing the Duration
                        of Specific Leaves Taken to the Duration of the
                        Comparator Leaves......................................... 13

                  c.    The Short-term Military Leaves Taken by Class
                        Members are Comparable in Duration to the
                        Comparator Leaves......................................... 15

            1.    The Purpose of Short-term Military leaves of Paid Leave
                  Class Members are Comparable to the Comparator
                  Leaves. .................................................................. 19

2.      Pilots' Short-term Military Leave is Comparable to the
        Comparator Leaves on the Ability of Pilots to Choose
        When to take the Leave. ........................................................... 21

3.      Even if Defendants' Other Proposed Factors are
        Considered, They Only Create A Disputed Issue of Fact........ 25

        a.      Even if Frequency is a Relevant Factor, It Merely
                Creates a Disputed Issue of Fact. .................................. 25

        b.      Character of Accrual is Not an Appropriate Factor
                for the Comparability Analysis. .................................... 26

II.    Summary Judgment Should be Denied on Plaintiff's Virtual Credit
       Claims (Counts I-III). ....................................................................... 28

       A.     Horizon is Not Entitled to Summary Judgment on Counts I & III. ... 28

       B.     Horizon is Not Entitled to Summary Judgment on Count II. ............ 31

III.   Sufficient Evidence Supports Willfulness and Liquidated Damages. ......... 34

Conclusion ........................................................................................................ 35

# Table of Authorities

**Pages**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................ 6

*Blue Ridge Envtl. Def. League v. Pruitt*,
    261 F.Supp.3d 53 (D.D.C. 2017) ..................................................... 13

*Bostock v. Clayton County*,
    140 S. Ct. 1731 (2020) .................................................................. 11

*Bouman v. Block*,
    940 F.2d 1211 (9th Cir. 1991) ........................................................ 18

*Brill v. AK Steel Corp.*,
    No. 2:09-CV-534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012) ................ 17, 19

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................................ 6

*City of Pomona v. SQM N. Am. Corp.*,
    750 F.3d 1036 (9th Cir. 2014) ........................................................ 18

*Coffy v. Republic Steel Corp.*,
    447 U.S. 191 (1980) ...................................................................... 32

*Crews v. City of Mt. Vernon*,
    No. 06-1012, 2008 WL 2224898 (S.D. Ill. May 27, 2008) ....................... 34

*Cunha v. IntelliCheck, LLC*,
    254 F.Supp.3d 1124 (N.D. Cal. 2017) .............................................. 30

*DeLee v. City of Plymouth, Ind.*,
    773 F.3d 172 (7th Cir. 2014) .......................................................... 32

*Duffer v. United Contl. Holdings, Inc.*,
    173 F.Supp.3d 689 (N.D. Ill. 2016) ............................................. 18, 26

*Foor v. Torrington Co.*,
    170 F.2d 487 (7th Cir. 1948) .......................................................... 29

*Foster v. Dravo Corp.*,
  420 U.S. 92 (1975) ............................................................................. 32

*Green v. Brennan*,
  136 S. Ct. 1769 (2016) ..................................................................... 12

*Hanson v. County of Kitsap*,
  21 F.Supp.3d 1124 (W.D. Wash. 2014) ............................................. 29

*Hoefert v. Am. Airlines, Inc.*,
  438 F.Supp.3d 724 (N.D. Tex. 2020) ................................................ 18

*Huhmann v. Fed. Express Corp.*,
  874 F.3d 1102 (9th Cir. 2017) .......................................................... 31

*Kirkendall v. Dep't of Army*,
  479 F.3d 830 (Fed. Cir. 2007) .......................................................... 28

*Lovell v. Consol. Edison Co. of N.Y., Inc.*,
  758 Fed. Appx. 222 (2d Cir. 2019) ................................................... 30

*Metal Jeans, Inc. v. Metal Sport, Inc.*,
  987 F.3d 1242 (9th Cir. 2021) ............................................................ 7

*Middleton v. City of Sherwood*,
  621 F.Supp.2d 1089 (D. Or. 2009) ................................................... 29

*Monroe v. Stand. Oil Co.*,
  452 U.S. 549 (1981) ......................................................................... 34

*Moss v. United Airlines, Inc.*,
  420 F.Supp.3d 768 (N.D. Ill. 2019) ...................................... 10, 19, 27

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*,
  210 F.3d 1099 (9th Cir. 2000) ............................................................ 6

*Ouimette v. County of L.A.*,
  No. 2:12-CV-6268, 2012 WL 6214305 (C.D. Cal. Dec. 12, 2012) ................... 28

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Glaser*,
  945 F.3d 1076 (9th Cir. 2019) ............................................................ 7

*Paxton v. City of Montebello*,
  712 F.Supp.2d 1007 (C.D. Cal. 2010) ........................................ 11, 26

*Petty v. Metro. Gov't of Nashville & Davidson County*,
    687 F.3d 710 (6th Cir. 2012)............................................................. 34

*Pickern v. Pier 1 Imports (U.S.), Inc.*,
    457 F.3d 963 (9th Cir. 2006)............................................................. 7

*Reich v. Monfort, Inc.*,
    144 F.3d 1329 (10th Cir. 1998)........................................................ 34

*Rogers v. City of San Antonio*,
    392 F.3d 758 (5th Cir. 2004)........................................... 11, 14, 17, 26

*Scanlan v. Am. Airlines Grp., Inc.*,
    384 F.Supp.3d 520 (E.D. Pa. 2019) ............................................ 9, 27

*Scott v. Harris*,
    550 U.S. 372 (2007) ........................................................................... 7

*Serricchio v. Wachovia Secs. LLC*,
    658 F.3d 169 (2d Cir. 2011) ...................................................... 29, 34

*Travers v. FedEx Corp.*,
    473 F.Supp.3d 421 (E.D. Pa. 2020) ................................................. 9

*Tully v. Dep't of J.*,
    481 F.3d 1367 (Fed. Cir. 2007)...................................... 11, 14, 26

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ........................................................................ 18

*Waltermyer v. Aluminum Co. of Am.*,
    804 F.2d 821 (3d Cir. 1986) ...................................... 12, 16, 28

*White v. Assoc. Ind. of Ala., Inc*,
    373 So. 2d 616 (Ala. 1979) .............................................................. 25

*White v. United Airlines, Inc.*,
    416 F.Supp.3d 736 (N.D. Ill. 2019) ................................................ 26

*White v. United Airlines, Inc.*,
    987 F.3d 616 (7th Cir. 2021)..................................................... passim

*Zetwick v. County of Yolo*,
    850 F.3d 436 (9th Cir. 2017)............................................................ 6

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - vi

1

**STATUTES**

2

28 U.S.C. § 1866 ................................................................ 22

3

38 U.S.C. § 4303 .................................................................. 9

4

38 U.S.C. § 4303 ................................................................ 31

38 U.S.C. § 4312 ................................................................ 15

5

38 U.S.C. § 4316 ............................................... 7, 15, 27, 31

6

38 U.S.C. § 4317 ................................................................ 15

7

I.C. § 2-212 ....................................................................... 22

8

N.Y. Judiciary Law § 506 ................................................. 23

9

**OTHER AUTHORITIES**

20 C.F.R. § 1002.150 ................................................. passim

10

20 C.F.R. § 1002.193 ........................................................ 29

11

20 C.F.R. § 1002.194 ........................................................ 29

12

20 C.F.R. § 1002.212 ........................................................ 31

13

Black's Law Dictionary (11th ed. 2019) ........................... 12

14

15

16

17

18

19

20

21

1

**Index of Exhibits**

2  Declaration of Vincent Cheng with the following attachments:

3    Exhibit 1:    Excerpts of the Transcript of the Rule 30(b)(6) Deposition of
               Alaska Airlines, Inc. through its Designated Representative S.
4               Elizabeth Ryan on May 5, 2020 ("Alaska Dep.")

5    Exhibit 2:    Excerpts of the Transcript of the Rule 30(b)(6) Deposition of
               Horizon Air Industries, Inc. through its Designated
6               Representative Bernadette Davis on May 6, 2020 ("Horizon
               Dep.")

7
     Exhibit 3:    Excerpts of the Transcript of the Deposition of Alison Lee
8               Faddis on March 5, 2021 ("Faddis Dep.")

9    Exhibit 4:    Excerpts of the Transcript of the Deposition of Casey Clarkson
               on May 28, 2020 ("Clarkson Dep.")

10
     Exhibit 5:    Defendants' May 8, 2020 Objections and Responses to
11               Plaintiffs' Third Set of Interrogatories

12   Exhibit 6:    Defendant Horizon Air Industries, Inc.'s March 12, 2021
               Objections and Responses to Plaintiff's First Set of Requests
13               for Admission

14   Exhibit 7:    Defendant Alaska Airlines, Inc.'s March 12, 2021 Objections
               and Responses to Plaintiff's First Set of Requests for
15               Admission

16   Exhibit 8:    Excerpts of Collective Bargaining Agreement Between Horizon
               Air Pilot Group as Represented by the International
17               Brotherhood of Teamster Local 1224 and Horizon Air
               Industries, Inc. Effective February 1, 2016 through December
18               31, 2024, produced by Defendants in this litigation and bates-
               stamped ALASKA_CLARKSON_0001638

19
     Exhibit 9:    Email thread dated June 22, 2017 from Alison Donway to Bill
20               Thomson, produced by Defendants in this litigation and bates-
               stamped ALASKA_CLARKSON_0004240 to
21               ALASKA_CLARKSON_0004241

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - viii

Exhibit 10:    Email thread dated June 12, 2017 from Brian Miller to Bill Thomson, bates-stamped ALASKA_CLARKSON_0004255 to ALASKA_CLARKSON_0004257

Exhibit 11:    Horizon Air Pilots' System Board of Adjustment – Submission of Grievance QXE-2017-14, produced by Defendants in this litigation and bates-stamped ALASKA_CLARKSON_0024102 to ALASKA_CLARKSON_0024105

Exhibit 12:    Letter of Agreement 05-01, "Currency During Military Conflict," between Alaska Airlines, Inc. and the Air Line Pilots Association, dated May 1, 2005, produced by Defendants in this litigation and Bates-stamped ALASKA_CLARKSON_0000435 to ALASKA_CLARKSON_0000437;

Exhibit 13:    Letter of Agreement 05-01, "Currency During Military Conflict," between Alaska Airlines, Inc. and the Air Line Pilots Association, dated May 1, 2005, produced by Defendants in this litigation and Bates-stamped ALASKA_CLARKSON_0000690 to ALASKA_CLARKSON_0000692;

Exhibit 14:    Excerpts of the Deposition of Ronald Limes on February 26, 2021 ("Limes Dep.")

Exhibit 15:    Excerpts of the Deposition of William Thomson on February 18, 2021 ("Thomson Dep.")

Declaration of Casey Clarkson

Declaration of Jeffry Cox with the following attachments:

Exhibit A:    Credit Matrix produced by Defendants in this litigation and Bates-stamped ALASKA_CLARKSON_0001797

Exhibit B:    Email dated May 3, 2017 from Jeffry Cox to Alison Donway, Bates-stamped ALASKA_CLARKSON_0024163

Exhibit C:    Email dated December 1, 2017 from Carlos Zendejas to Jeffry Cox, Bates-stamped ALASKA_CLARKSON_0024135

Exhibit D:   Revised Credit Matrix produced by Defendants in this litigation
             and Bates-stamped ALASKA_CLARKSON_0024136

# INTRODUCTION

Defendants Horizon Air Industries, Inc. ("Horizon") and Alaska Airlines, Inc. ("Alaska") have both maintained policies under which pilots on short-term military leave do not receive benefits afforded pilots who take other, comparable forms of leave. Horizon also maintained a policy under which Plaintiff was demoted, denied seniority benefits, and discharged for taking military leave.

Defendants have moved for summary judgment on all of Plaintiff's claims. As to the Paid Leave Claim (Count IV), Defendants assert that they do not offer a benefit to pilots on short-term military leaves that they do not also offer to pilots on jury duty leave, bereavement leave, sick leave, or vacation (the "Comparator Leaves"). But the Comparator Leaves are protected from loss of pay, while short-term military leave is not (and is unpaid). Defendants also argue that the Comparator Leaves are not comparable to short-term military leaves. But weighing the factors set forth in the Department of Labor ("DOL") Regulations—duration, purpose, and the ability of pilots to choose when to take leave—a reasonable jury could find each leave comparable to the short-term military leaves taken by pilots.

As to the Virtual Credit Claims (Counts I-III), Defendants misunderstand both their reemployment obligations under USERRA and the legal standard for what constitutes a seniority benefit under the statute. Finally, as there is evidence that Defendants were on notice of their violations of USERRA, there are genuine

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 1

issues of material fact as to liquidated damages that should be put to the jury.

Defendants' motion should thus be denied.

## STATEMENT OF FACTS

### I.    Mr. Clarkson's Military Status and Leaves with Horizon and Alaska

Clarkson was a member of the Washington Air National Guard for 26 years until June 30, 2018. Clarkson Dep. at 14:10-15:12; Ex. 6 at Nos. 18-19. He worked for Horizon as a Turboprop pilot from November 2013 until he was hired by Alaska on November 6, 2017. *Id*. at No. 19; ECF No. 31 ("Compl.") & ECF No. 32 ("Answ.") ¶ 13. While employed by Horizon, he took leave to perform military duties including (1) from June 8, 2017 through July 8, 2017, and (2) September 26, 2017 through October 26, 2017. Ex. 6 at Nos. 13-14; ECF No. 73-22 at 2; ECF No. 82-6 at 2. Clarkson also took short-term military leave to perform military duties while employed at Alaska and Horizon. Compl. & Answ. ¶ 55.

### II.    Horizon's Virtual Credit Policy

Horizon Pilots bid their trip schedules for each month from the 2nd through the 8th day of the month prior. Ex. 5 at 4; Horizon Dep. at 112:2-4. Horizon had a system of "Pilot Seniority" based on length of service. Ex. 8 § 11.A. Horizon awarded monthly schedules for trips and days off based on pilots' preferences *in seniority order*. Horizon Dep. at 83:1-17, 109:24-110:4, 111:12-24, 119:13-16; Clarkson Dep. at 30:11-19; ECF No. 138-8 § 13.C.7; Cox Decl. ¶ 10. Turboprop pilots were generally assigned the status of "Regular Line Holder" (*i.e.* with "a line of flying") or "Reserve Pilot" (*i.e.*, on call). ECF No. 138-8 § 5.B.1.b. To maintain

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 2

their minimum pay guarantee for Regular Line Holders, Turboprop pilots must be awarded a line schedule and "line of flying" and work at least 70 hours during a bid period (*i.e.*, a calendar month). Horizon Dep. at 136:4-14; Clarkson Dep. at 104:20-105:6 & 221:20-22. Reserve Pilots were not awarded a line of flying, but were on call and assigned duties "from trips that become available last minute." Horizon Dep. at 73:8-74:2. Horizon's scheduling program for Regular Line Holders required a minimum of 74 hours, but Turboprop pilots were usually assigned a line of 74-80 work hours per month. Cox Decl. ¶ 6. Regular Line Holders had a more predictable schedule than reserve pilots. Horizon Dep. at 210:18-211:2; Cox Decl. ¶ 8.

Horizon launched a new scheduling system called Preferential Bidding System ("PBS") through which pilots bid their schedules and Horizon awarded, "based on seniority," their lines for May 2017 and after. ECF No. 5 at 4; ECF No. 138-8 at 9; Horizon Dep. at 71:12-15, 118:11-17, 148:7-10; Cox Decl. ¶ 10. About the same time, Horizon implemented a Virtual Credit Policy pursuant to a "Credit Matrix" that credited Turboprop pilots taking military leave in May 2017 or after with 2.45 "virtual credit" hours per day through PBS. ECF No. 5 at 4; ECF No. 73-16; Horizon Dep. at 124:16-125:1; Cox Decl. ¶ 5. For each flight flown, Turboprop pilots were credited a minimum of 4.0-4.2 hours per day (even if they flew less) and received more credit for longer trips. Horizon Dep. at 121:2-5, 123:6-9, 123:24-124:2, 171:11-17; Clarkson Dep. at 219:6-10. As a result of the low virtual

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 3

credit hours, some pilots were denied a line of flying and the pay guarantee for Regular Line Holders and forced into reserve status in the month they took military leave. Horizon Dep. at 138:13-139:25; Faddis Dep. at 24:3-25:21; Cox Decl. ¶ 13.

For example, Clarkson was credited 19.6 virtual credit hours for his July 1-8, 2017 military leave even though he would have most likely worked 6 out of those 8 days based on his typical schedule of at least 4 hours a day or a total of 24 credit hours. ECF No. 73-22 ¶ 5. Horizon denied him a line of flying and forced him into reserve status for July 2017. *Id*.; Clarkson Dep. at 207:21-209:9; Ex. 6 at No. 8. And Clarkson worked 14 days the rest of month—two more days than he would have worked had he not been on military leave. ECF Nos. 82-6 ¶ 3 & 82-7; ECF No. 138-8 at App. F. To avoid being forced into reserve status in October 2017, Clarkson worked extra hours by flying additional and longer trips when he was not on military leave, and on days that would have been his days off. Clarkson Dep. at 251:15-252:17; ECF No.73-22 ¶ 6; ECF No. 82-6 ¶ 6. Had military leave been properly credited (i.e., as if he was working), he would have received premium or "overtime" pay for those extra hours and/or additional trips. *Id*.; Clarkson Dep. at 253:6-12, 283:2-284:14; Ex. ECF No. 138-8 § 5.F.

### III.    Complaints About the Virtual Credit Policy's Violation of USERRA

By May 3, 2017, Horizon learned that the daily 2.45 virtual credit hours provided to Turboprop pilots for military leave were "too low." Cox. Decl. ¶ 14 & Ex. B; Faddis Dep. at 18:20-19:8, 22:12-24:17, 24:24-25:21, 28:7-31:14. A pilot filed on May 11, 2017 a grievance against Horizon that the virtual credits provided

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 4

for military leave were too low and violated USERRA, and requested Horizon to provide "premium pay." Ex. 11; Faddis Dep. at 59:11-25, 60:25-61:3, 64:6-65:16. Although the pilots union tried in May 2017 to negotiate an increase in the credit hours for military leave, Horizon refused to agree. Cox Decl. ¶ 15 & Ex. B. Clarkson complained in June 2017 to Horizon management about the adverse effects the Virtual Credit Policy had on him. ECF No. 73-22 ¶ 7; Ex. 10; Faddis Dep. at 38:7-18. Horizon's management, including then-Chief Pilot Alison Donway (now Faddis), agreed that the virtual credit for military leave was too low. Ex. 10; Ex. 9; Faddis Dep. at 12:23-13:16, 34:24-35:5, 38:7-40:2, 42:12-44:9, 49:9-50:13. In response to Clarkson's administrative complaint, the DOL found on October 4, 2017 that the Virtual Credit Policy violated USERRA and that Clarkson is entitled to damages at his premium rate. ECF No. 73-25; Clarkson Dep. at 248:8-249:11; ECF No. 82-8. Horizon never took steps to remedy that violation.

## IV.    Leaves of Absence and Pilot Compensation at Horizon and Alaska

Pilots at Horizon are guaranteed a certain number of hours of pay per month based on their status as regular or reserve lineholders and turbojet or turboprop pilots. ECF No. 138 at 14. Similarly pilots at Alaska are guaranteed a certain number of hours of pay per month, based on their status as a line holder or reserve pilot. ECF No. 138-12 at 4-1. When pilots take unpaid leaves, their minimum guaranteed pay is decreased for each day of unpaid leave. ECF No. 138 at 14; Horizon Dep. at 47:6-16; Alaska Dep. at 113:9-21; ECF No. 138-12 at 4-1. All military leaves are unpaid. Horizon Dep. at 47:6-16; Alaska Dep. at 70:8-11.

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 5

1  Alaska categorizes military leave of 30 days or less as short-term rather than

2  "extended" military leave. Alaska Dep. at 121:12-20; Ex. 12; Ex. 13. Horizon also

3  distinguishes short-term from other military leaves. Horizon Dep. at 59:8-19.

4       Alaska and Horizon provide leaves of absence to employees that are

5  "protected from Loss of Pay" such that taking those leaves does not reduce a

6  pilot's minimum guarantee. ECF No. 138-8 at 14, 74-75. Alaska Dep. at 86:24-

7  87:7, 88:3-7. Such leaves include leaves for jury duty, bereavement, sick, and

8  vacation. ECF No. 138-12 at 7-4, 13-1, 14-2, 26-2. ECF No. 138-8 at 14, 74-75.

9                                **ARGUMENT**

10      Summary judgment is appropriate only if the evidence shows that there is no

11  genuine dispute of material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

12  (1986). "In order to carry its burden of production, the moving party must either

13  produce evidence negating an essential element of the nonmoving party's claim or

14  defense or show that the nonmoving party does not have enough evidence of an

15  essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire &*

16  *Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). If these

17  requirements are met, the nonmoving party must set forth "facts showing that there

18  is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256

19  (1986). There only needs to be enough evidence on which a jury "might return a

20  verdict in [the party's] favor." *Id*. at 257; *Zetwick v. County of Yolo*, 850 F.3d 436,

21  441 (9th Cir. 2017). All evidence and factual inferences are viewed "in the light

1  most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378

2  (2007). The court cannot "weigh the evidence or determine the truth of the matter."

3  *Metal Jeans, Inc. v. Metal Sport, Inc.*, 987 F.3d 1242, 1244 (9th Cir. 2021).

4  **I.     Summary Judgment Should be Denied on the Paid Leave Claim (Count**
   **IV).**

5         "[A] person who is absent from a position of employment by reason of

6  service in the uniformed services" must receive the same non-seniority "rights and

7  benefits" they provide similarly situated employees who are on a "leave of absence

8  under a contract, agreement, policy, practice, or plan." 38 U.S.C. § 4316(b)(1)(B).

9  "If the non-seniority benefits to which employees on furlough or leave of absence

10 are entitled vary according to the type of leave, the employee must be given the

11 most favorable treatment accorded to any comparable form of leave." 20 C.F.R. §

12 1002.150(b). Pilots at Alaska and Horizon who take leave for sickness, jury duty,

13 bereavement, or vacation[1] (the "Comparator Leaves") are protected from loss of

14

15

16 _____

   [1] Defendants suggest vacation should be considered because it is not explicitly

17 mentioned in the Complaint. Mot at 27 n.5. But Rule 8 only requires a complaint to

18 "'give the defendant fair notice of what the plaintiff's claim is and the grounds

   upon which it rests.'" *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th

19 Cir. 2006). A complaint need not "plead specific legal theories … so long as the

20 other side receives notice as to what is at issue in the case." *Pac. Coast Fed'n of

21 Fishermen's Ass'ns v. Glaser*, 945 F.3d 1076, 1086 (9th Cir. 2019). The use of

   "including" explains that the list of comparable leaves was non-exclusive. Am.

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 7

pay. But pilots who take short-term military leave lose pay. Under USERRA § 4316(b), pilots on military leave are entitled to the same loss of pay protection as comparable leaves.

Defendants move for summary judgment as to Count IV on two grounds. First, they assert that Defendants do not provide the benefit Plaintiff seeks. But the pilots at Horizon and Alaska who take Comparator Leaves do not lose pay, while pilots who take short-term military leave do. Second, Defendants argue that the Comparator Leaves are not comparable to the leaves taken by members of the Class. But the evidence establishes genuine issues of material fact appropriate for resolution by a jury at trial, not on summary judgment.

## A.  Defendants Provide the Benefit of Protection from Loss of Pay to Pilots Who Take the Comparator Leaves.

Defendants assert that there is "no benefit" that "employees on non-military [leave] receive but those on military leave do not." ECF No. 136 ("Mot.") at 8. This argument misstate the record and is without any basis in the statutory text or case law. USERRA defines "rights and benefits" as follows:

> the terms, conditions, or privileges of employment, including any advantage, profit, privilege, gain, status, account, or interest (including wages or salary for work performed) that accrues by reason of an employment contract or agreement or an employer policy, plan, or practice and includes … awards, bonuses, severance pay, supplemental unemployment benefits, vacations, and the opportunity to select work

_____

Compl. ¶ 84. Defendants have known since at least class certification that vacation was a Comparator Leave. ECF No. 73 at 8.

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 8

1   hours or location of employment.

2   38 U.S.C. § 4303(2). This "broad" definition encompasses "compensation at the

3   normal rate during a leave of absence." *White v. United Airlines, Inc.*, 987 F.3d

4   616, 621 (7th Cir. 2021); *Scanlan v. Am. Airlines Grp., Inc.*, 384 F.Supp.3d 520,

5   528 (E.D. Pa. 2019) (same).[2] At both Horizon and Alaska, this benefit is afforded

6   to pilots on certain leaves of absence and is called protection from loss of pay or

7   pay-protection. At Horizon, the pilot CBA provides that:

8   > Loss of Pay means a reduction in [a pilot's] minimum pay guarantee
9   > for the Bid Period, or loss of the credit value of trips missed. (Where
    > this Agreement indicates a Pilot will be excused without, or with no
    > Loss of Pay, the Pilot will not have his guarantee reduced for the period
10  > the Pilot is unavailable, and he will be given credit for the value of trips
    > missed).

11   ECF No. 138-8 at 7. Alaska uses the terms "pay-protect" and "paid-protected" to

12  describe the same concept. Alaska Dep. at 86:24-87:7, 88:3-7. Each of the

13  Comparator Leaves at Horizon is "protected from Loss of Pay" and does not

14  reduce a pilot's minimum pay guarantee. ECF No. 138-8 at 14-15 ("paid vacation,

15  paid sick leave or other paid time off" will not reduce minimum guarantee), 74

16  (leave for "jury duty will not suffer any Loss of Pay"), 74-75 (providing three days

17  without "Loss of Pay" for bereavement leave). The same leaves are pay-protected

18  at Alaska. ECF No. 138-12 at 7-4 (vacation paid and credited); 13-1 (emergency

19

20  [2] The only decision to depart from this consensus, *Travers v. FedEx Corp.*, 473

21  F.Supp.3d 421 (E.D. Pa. 2020), is currently on appeal to the Third Circuit and its

    reasoning was rejected by the Seventh Circuit. *White* at 987 F.3d 621.

    PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 9

charged against sick leave), 14-2 (sick leave paid and credited), 26-2 (jury duty).

Short-term military leave is not protected from Loss of Pay or pay-protected at

either airline, but is unpaid. Horizon Dep. at 47:6-16; Alaska Dep. at 70:8-11,

113:9-21 (explaining that unpaid absences reduce a pilot's minimum guarantee).

Contrary to Defendants unsupported assertion that their policies "do not establish

the benefit of the continued receipt of one's wages during a leave of absence" that

is precisely what these protections from loss of pay provide for pilots who take the

Comparator Leaves. Mot. at 10-12.

Defendants conjure the phrases "USERRA benefit," "freestanding benefit,"

or "whole benefit" to manufacture a distinction where none exists. Mot. at 8-9. But

these are invented concepts without basis in the statute and that distorts case law.

First, Defendants appeal to the "nature of the benefit" test applied by *Moss v.*

*United Airlines, Inc.*, 420 F.Supp.3d 768 (N.D. Ill. 2019). Mot. at 12. But this test

applies to distinguish between seniority benefits under § 4316(a) and non-seniority

benefits under 4316(b). *Moss*, 420 F.Supp.3d 771. As that is not an issue in this

case, the appropriate standard whether a benefit is a "right or benefit" is the broad

statutory definition of 38 U.S.C. § 4303(2). *White,* 987 F.3d at 621-623.

Second, Defendants assert without citation that Plaintiff views the benefits

as two separate benefits – (i) the right to leave work and (ii) the right to receive

wages. Mot. at 12-13. Precisely because Defendants provide benefits with both

components, but only the former component for military leave, is what establishes

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 10

the USERRA § 4316(b) violation. *White,* 987 F.3d at 625; *Tully v. Dep't of J.,* 481 F.3d 1367, 1370 (Fed. Cir. 2007) (rejecting argument that comparable leave was different because the comparator leave was paid while military leave was unpaid).

Finally, Defendants suggest that USERRA only protects vacation and sick leave as a form of paid leave, but not the right to accrue benefits. Mot at 12-13. Not only is this irrelevant, but USERRA also protects the accrual of leave while on military leave if such leave would accrue for other absences. *Paxton v. City of Montebello,* 712 F.Supp.2d 1007, 1016 (C.D. Cal. 2010). It wrongly assumes that a list of examples "create[] a tacit exception" to the broad definition. *Bostock v. Clayton County*, 140 S. Ct. 1731, 1747 (2020) (rejecting similar argument).

**B.    Whether the Comparator Leaves are Comparable to the Class's Short-term Military Leaves are Genuine Issues of Material Fact.**

The DOL has established a multifactor test for determining whether leaves are comparable for purposes of 38 U.S.C. § 4316(b):

> In order to determine whether any two types of leave are comparable, the duration of the leave may be the most significant factor to compare…. In addition to comparing the duration of the absences, other factors such as the purpose of the leave and the ability of the employee to choose when to take the leave should also be considered.

20 C.F.R. § 1002.150. As multiple courts have explained, "[t]his [comparison] is primarily a question of fact." *White,* 987 F.3d at 625 (citing *Rogers v. City of San Antonio,* 392 F.3d 758, 771-72 (5th Cir. 2004)). Construing the facts and inferences in the light most favorable to Plaintiff, a jury could find each of the Comparator Leaves comparable to short-term military leave because they are all

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 11

(1) are in the overwhelming majority of cases, only a few days long, (2) share common purposes of public service and civic duty, and (3) are similar in terms of the ability of pilots to choose when to take the leave.

> **1.    The Short-term Military Leaves of Paid Leave Class Members are Comparable to the Comparator Leaves in Duration.**

Duration of leaves are comparable when both the military leave and the Comparator Leaves "would not generally be of extended duration." *Waltermyer v. Aluminum Co. of Am.*, 804 F.2d 821, 825 (3d Cir. 1986). As the overwhelming majority of short-term military leaves and the Comparator Leaves last only a few days, Defendants instead conflate the concept of duration with frequency and also discuss extended military leaves. Mot. at 14-19. But this framing does not comport with USERRA or its implementing regulations.

> **a.    Duration Means the Length of Time a Leave Lasts.**

Duration is "the most significant factor to compare." 20 C.F.R. § 1002.150. Duration is "[t]he length of time something lasts." Black's Law Dictionary (11th ed. 2019); Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/duration (accessed 6 Apr. 2021 ("the time during which something exists or lasts"); *see Green v. Brennan*, 136 S. Ct. 1769, 1776 (2016) (referring to dictionary definitions for interpretation of regulatory text).

Ignoring this definition, Defendants assume that duration considers not only the length of the leave, but also the "frequency" with which it is taken. Mot. at 14. "Frequency and duration are two different things." *Blue Ridge Envtl. Def. League*

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 12

1  *v. Pruitt*, 261 F.Supp.3d 53, 60 (D.D.C. 2017) (rejecting an argument conflating

2  these concepts). Frequency does not address length, but the rate at which

3  something occurs. Merriam-Webster, *available at* https://www.merriam-

4  webster.com/dictionary/frequency (accessed 6 Apr. 2021); *see* Alaska Dep. at

5  167:20-23. The example in regulations illustrates this point by comparing only the

6  *length of leave*, but not frequency when making a comparison. 20 C.F.R. §

7  1002.150 (comparing "a two-day funeral leave" with "extended leave for service in

8  the uniformed service"). Even if frequency (or incidence) is a relevant

9  consideration, it is of lesser importance than duration. *Infra* I.B.4.

        **b.**    **USERRA § 4316 Requires Comparing the Duration of Specific Leaves Taken to the Duration of the Comparator Leaves.**

11        Defendants assert that "short-term military leave"—leave of no more than

12  30 days—is "fictional" and that the appropriate comparison is the duration is all

13  military leave generally. Mot. at 18-19. But the correct question is whether "any

14  leave of absence for which his employer provides paid leave is comparable to any

15  given stretch of military leave." *White*, 987 F.3d at 625. Thus, the structure of §

16  4316(b)(1) requires comparing *specific* lengths of military leave to the length of

17  other, allegedly comparable *forms* of leave offered by the defendant employer.

18        First, the DOL Regulation on USERRA § 4316(b)(1) requires a comparison

19  of particular length of military absence and the policies governing "comparable

20  form of leave." 20 C.F.R. § 1002.150(b). The illustrative example explains that one

21  compares a policy about "*a two-day funeral leave*" with "*an* extended leave for

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 13

service in the uniformed service." *Id.* (emphases added). The relevant question is whether a military leave of a specific duration is treated the same as a comparable length of another form of leave.

Second, every Circuit to consider the issue agrees. In addition to the Seventh Circuit, the Fifth Circuit held that here were "genuinely disputable issues as to the material facts of whether involuntary non-military leaves, not generally for extended durations, for jury duty, bereavement, [and sick leave]… are comparable to *each plaintiff's military leaves* taken for service in the uniformed services." *Rogers*, 392 F.3d at, 771–72 (emphasis added) (reversing summary judgment). Likewise, the Federal Circuit examined the specific duration of military leave (a "two-and-a-half-year absence") versus short-term paid jury duty/witness leave. *Tully*, 481 F.3d at 1370. The Federal Circuit held that the relevant comparison was to the duration of "the leave provided to the service member for military service." *Id.* at 1369. That specific duration is then compared to the "typical period" (or duration) of the comparator leave. *Id.*[3]

Third, *short-term military leave is* a specific form of leave at both Horizon and Alaska. Horizon uses separate codes in its scheduling systems to delineate between short-term and long-term military leave. Horizon Dep. at 59:8-19. Alaska

---

[3] *Tully* relied on *Waltermyer* for its legal principle, but reached an opposite outcome based on the facts. This illustrates that the determination is a fact-based one that considers the particular absences at issue, not military leave as a category.

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 14

categorizes leaves of under 30 days as "short-term." Alaska Dep. at 121:12-20.

From May 1, 2005, to June 30, 2013, Alaska had a letter of agreement with its

pilots' union, under which pilots on "an extended military leave of absence"—

more than 30 days in length—could fly a trip or attend training to maintain their

flight qualifications. Ex. 12; Ex. 13.

      Finally, USERRA distinguishes between short-term (30 days or fewer) and

long-term military leave (31 days or more). These differences apply to service-

members rights to (1) employer sponsored healthcare, 38 U.S.C. § 4317(a)(2), (2)

when they need to return to work following leave, 38 U.S.C. § 4312(e)(1)(A)(i),

and (3) protection from discharge following a leave of absence, 38 U.S.C. §

4316(c)(2). Thus, short-term military leave is not a fiction or manufactured, but is

distinct from longer military leave.

### c.    The Short-term Military Leaves Taken by Class Members are Comparable in Duration to the Comparator Leaves.

      Defendants rely on their expert's opinion to argue that the 90th percentile

durations of *all lengths of* military leave, rather than short-term leaves, suggest a

"categorical difference" based on duration. Mot. at 17-19. Using even that flawed

analysis, their calculation of the average military leave is *only 9* days at Alaska. *Id.*

at 17. They admit that most jury duty and bereavement leave is under 9 days. *Id.*

      When the correct comparison of short-term military leave is compared to the

Comparator Leaves, the similarly in duration becomes more apparent. The 90th

percentile duration of short-term military leave at Alaska is 6 days; the average

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 15

duration is 3.1 days. Breshears Rebuttal Rep. at ¶¶ 27, 37. The average lengths of jury duty, bereavement leave, sick leave, and vacation are 2.94, 2.77, 2.52, and 6.06 days, respectively. *Id.* at ¶ 35. At Horizon, the 90th percentile duration of short-term military leave is 9 days; the average duration is 4.23 days. *Id.* at ¶¶ 29, 38. The average lengths of jury duty, bereavement leave, sick leave, and vacation at Horizon are 2.66, 2.48, 2.17, and 5.15 days, respectively. *Id.* at ¶ 38. These measures show that short-term military leaves and the Comparator Leaves do not differ substantially in duration. *Id.* at ¶ 34.

| Summary of Measures of Leave Duration (in Days) | | | | | | |
|---|---|---|---|---|---|---|
| Airline | Measure of Duration | Short-term Military | Jury | Bereavement | Sick | Vacation |
| Alaska | Average | 3.10 | 2.94 | 2.77 | 2.52 | 6.06 |
| | Mode | 1 | 3 | 2 | 2 | 1 |
| | Max at 90th %tile | 6 | 4 | 4 | 4 | 14 |
| Horizon | Average | 4.23 | 2.66 | 2.48 | 2.17 | 5.15 |
| | Mode | 2 | 2 | 3 | 2 | 7 |
| | Max at 90th %tile | 9 | 4 | 3 | 4 | 10 |
| Sources: ECF No. 133-3 at ¶37; ECF No. 132-2 at C-2, C-3. Data from the longest available time period presented. "Mode" means the most common duration of a leave of the given type. "Max at 90th %tile" means the longest duration leave excluding the longest 10% of leaves. | | | | | | |

Such comparisons in durations at the least, sufficiently create a disputed fact issue. The Third Circuit found that a two-week military leave was comparable to other leaves in a CBA, including jury duty, as all "would not generally be of

extended duration." *Waltermyer,* 804 F.2d at 825.[4] The Fifth Circuit reversed summary judgment as to whether "non-military leaves, not generally for extended durations," including "for jury duty, bereavement," and "sick leave" were "comparable to each plaintiff's military leaves" for their "annual two week" training. *Rogers,* 392 F.3d at 761, 771–72. Finally, in *Brill v. AK Steel Corp.*, No. 2:09-CV-534, 2012 WL 893902 (S.D. Ohio Mar. 14, 2012), the court denied summary judgment, holding that where military leaves "generally last between three and five days, or two and four weeks at the longest," that "[s]uch a length may be comparable to the duration of jury duty." *Id.*, at *6. In each of these cases, the courts compared the *short-term* military leaves at issue to certain other leaves provided by the employer.[5] Here, too, none of the absences on which the Class's claims are based are of an extended duration. The average, mode and median durations of the Comparator leaves, viewed in the light most favorable to plaintiff, are sufficient for a reasonable jury to conclude that the short-term military leaves of the Class are comparable in duration to the Comparator Leaves.

Additionally, Plaintiff's expert opined that Defendants' expert's analysis is

---

[4] USERRA § 4316(b) codified the holding in *Waltermyer. See* H.R. Rep. 103–65, Pt. I, *33–34 (April 28, 1993).

[5] Defendants note that Mr. Clarkson himself never took jury duty or bereavement leave, but USERRA does not require the servicemember to have taken the comparable leave. *See* Mot. at 17.

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 17

1    "skewed" and "distorted" by the inclusion of a "small number" of extended

2    military leaves that are not part of any claim of the Class. Breshears' Rebuttal Rep.

3    at ¶¶ 25, 27, 29. Defendants' own case found "the difference in average length of

4    absence more convincing" than reliance on statistical tails (i.e. the differences at

5    the upper end of duration distributions). *Hoefert v. Am. Airlines, Inc.*, 438

6    F.Supp.3d 724, 740 (N.D. Tex. 2020). "In any event, if outliers are considered,

7    then jury duty and sick leave also can last months in certain cases." *Duffer v.*

8    *United Contl. Holdings, Inc.,* 173 F.Supp.3d 689, 705 (N.D. Ill. 2016).

9         Disagreements over how to weigh different statistical facts about these

10   distributions, particularly where that issue is the subject of expert disagreement, are

11   jury questions. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016) ("Once

12   a district court finds [expert testimony] to be admissible, its persuasiveness is, in

13   general, a matter for the jury"). Such "[a] factual dispute is best settled by a battle

14   of the experts before the fact finder, not by judicial fiat. Where two credible

15   experts disagree, it is the job of the fact finder, not the trial court, to determine

16   which source is more credible and reliable." *City of Pomona v. SQM N. Am. Corp.*,

17   750 F.3d 1036, 1049 (9th Cir. 2014); *Bouman v. Block*, 940 F.2d 1211, 1225 (9th

18   Cir. 1991) ("Whether the statistics are undermined or rebutted in a specific case

19   would normally be a question for the trier of fact.").

20        Defendants' out-of-circuit cases do not establish otherwise. Defendants note

21   that the *Hoefert* court granted summary judgment on § 4316(b) claims because of

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 18

differences in duration between jury duty and military leaves. Mot. at 18. But the *Hoefert* claims involved military leaves of *more than 16 days*. *Hoefert* 438 F.Supp.3d at 730. The average length of the military absences at issue was 23.2 days, which was 12.8 times the average length of jury duty leaves (1.8 days). *Id.* at 740. The longest military absence at issue was 14.6 years, or approximately 102 times the longest leave for jury duty (52 days). *Id*. That dramatically differs from this case, where the averages are tightly clustered around just a few days and the longest military absence at issue (30 days) is only slightly longer than the longest jury duty period at Alaska (20 days). Lee Rep. at ¶ 18 Ex. 6. Defendants only other case involved military leaves *all of which* lasted longer than 90 days; was not, "about short leaves of absence." *Moss*, 420 F.Supp.3d at 774.

### 1.    The Purpose of Short-term Military leaves of Paid Leave Class Members are Comparable to the Comparator Leaves.

Defendants appear to concede that jury duty and military service share the same purpose of performance of a civic duty. Mot. at 17. Alaska admitted in discovery that the purposes of military leave include "allowing pilots to perform a public service." Alaska Dep. 117:14-118:5; Ex. 7 at No. 17. *see* Cox Decl. at ¶ 20. Each of the comparator leaves likewise shares a civic or public purpose.

Defendants argue that the purposes of jury duty and military leave differ because servicemembers are paid more than jurors. Mot at 26. This same argument was rejected on summary judgment by another court. *Brill*, 2012 WL 893902, at *7. As the *Brill* court explained, "under Defendants' reasoning, military leave

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 19

could never be comparable to any unpaid leave." *Id.* at *8. Such a result would

contrary to both USERRA's legislative history and the DOL Regulations. *Id.*

(quoting H.R. Rep. 103–65, at 34–35 (1993)). Moreover, Defendants' argument

ignores their own admission that the purposes of both military duty and jury duty is

to perform a public service. Ex. 7 at Nos. 17 & 18. Clarkson testified he joined the

military "to serve" and remained in the military after joining Horizon out of a

"commitment to service" to the "nation" and "the constitution." Clarkson Dep. at

276:5-18. That responsibility is the same for pilots at Horizon. Cox Decl. at ¶ 20.

At Alaska and Horizon, sick leave, bereavement, and vacation for pilots all

share a common public purpose because these forms of leave all share a public

safety function. Pilots are not permitted to report for work sick. Limes Dep. at

43:12-14; Thomson Dep. 52:13-18. The reason? "Safety. To do your job safely you

need to be 100 percent there mentally and physically." Thomson Dep. 52:19-21.

Sick leave serves a public purpose by protecting the safety of airline passengers

and the public who might be endangered if illness interfered with a pilot's ability

to fly. Cox Decl. at ¶ 23.

Defendants concede that bereavement leave serves a public safety function.

Mot. at 24. As a Horizon chief pilot explained, "a bereavement can be extremely

upsetting" and the leave exists to provide a plot time "to be away from flying until

such time as they are okay with returning to flying." Thomson Dep. at 59:12-18;

*see* Cox Decl. at ¶ 24 (bereavement leave "protect[s] safety of airline passengers

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 20

who might be endangered if grief interfered with a pilot's ability to perform their

job duties"). Similarly, vacation provides "rest and recuperation for pilots prevent

pilot fatigue and burnout," that serves a public safety function to protect likewise

protecting airline passengers and the general public. Cox Decl. at ¶ 25. Thus, all of

these leaves share a common purpose with military leave—they serve not just the

private interests of the pilot, but the public good.

> **2.    Pilots' Short-term Military Leave is Comparable to the Comparator Leaves on the Ability of Pilots to Choose When to take the Leave.**

The final factor is "the ability of the employee to choose when to take the

leave." *See* 20 CFR § 1002.150(b). "[W]hat matters is an employee's control over

the timing of her leave of absence—i.e., whether she has the option to choose when

to take a given stretch of leave." *White*, 987 F.3d at 625 (rejecting argument that

military duties are voluntary because servicemembers voluntarily join). The Rule

30(b)(6) representatives testified that Alaska and Horizon considered military leave

to be voluntary. Horizon Dep. at 65:16-19; Horizon Dep. 118:2-5. That argument

was rejected by the Seventh Circuit as a legal matter. *White*, 987 F.3d at 625. Now

Defendants claim that reservist pilots have "unique and categorically distinct"

control over the timing of military leaves. Mot. at 19. Not only is this unsupported

by evidence, but the Comparator Leaves and military leaves share a comparable set

of constraints combined with a certain amount of pilot flexibility and choice.

Defendants overstate the amount of flexibility that pilot reservists have to

schedule their military duties. Mot. at 21. Pilots are assigned dates for monthly

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 21

1   two-day weekend drills at which all members of the unit are expected to be

2   performing their duties. Clarkson Dep. at 29:12-20. The ability of pilots to

3   reschedule these drill obligations varies based on the status of their currency

4   requirements, and based on rank or leadership responsibilities, Limes Dep. at

5   36:24-37:9, 38:16-39:13. Commanders designate some obligations as "mandatory

6   drill weekends," and "require everyone to be there" in order to develop unit

7   cohesiveness, and thus pilots cannot reschedule these drills. *Id.* at 38:16-39:13.

8   Pilots also have training and mission obligations outside of drills, and while they

9   have some ability to negotiate their schedule with military officials, that depends

10  on the nature of the mission, the availability of instructors, training needs within

11  the unit, the currency status of pilots, and the availability of training opportunities

12  involving specific military equipment. Clarkson Dep. at 31:13-32:11; Clarkson

13  Decl. ¶¶ 6-8; Limes Dep. at 30:15-23. When pilot reservists are ordered to perform

14  military duty, they do not have a choice regarding whether to perform those duties.

15  Cox Decl. at ¶ 20.

16        Defendants posit that jury summonses are issued in a "regimented fashion"

17  that involuntarily commands service. Mot. at 22. But every state in which a Class

18  member resides (and the federal government), have statutory provisions allowing

19  jurors to defer or be excused from service under certain conditions. *E.g.,* 28 U.S.C.

20  § 1866(c) (permitting deferral of jury service upon showing of undue hardship);

21  RCWA 2.36.100 (permitting deferral of jury duty for "any reason deemed

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 22

1    sufficient by the court for a period of time the court deems necessary"); I.C. § 2-

2    212 (permitting postponement "upon a showing of undue hardship, extreme

3    inconvenience, or public necessity, or upon a showing that the juror is a mother

4    breastfeeding"). Defendants attempt to distinguish these provisions from a pilot's

5    ability to reschedule his military obligations. Mot. at 22. But the process is similar:

6    faced with a conflict or an inability to serve, a juror articulates reasons, the court

7    official either denies the request or grants it and sets an alternative date for service.

8    Defendants also assert that pilots cannot volunteer for jury duty. Mot. at 22. But

9    some jurisdictions permit just that. *E.g.* N.Y. Judiciary Law § 506.  Thus, jury duty

10   is similar to military leave in the ability of pilots to choose when to serve.

11          Defendants concede that "pilots at Alaska and Horizon cannot report to duty

12   when they are sick," but otherwise do not address voluntariness of sick leave. Mot.

13   at 26, Of course, pilots do not choose when they become sick. Cox Decl. ¶ 23;

14   Limes Dep. 41:14-16. But they can use sick leave to attend doctors' appointments,

15   consult with specialists, or undergo pre-arranged and elective surgical procedures,

16   the timing of which they can control. Limes Dep. at 42:8-22; Thomson Dep. at

17   54:13-55:13. Horizon's representative testified that sick leave is "voluntary"

18   because "it's up to the individual to determine when they would need to use their

19   sick leave." Horizon Dep. at 66:17-22. Thus, while pilots cannot control when they

20   get sick, they do have some flexibility in whether and when to use sick leave.

21          Defendants assert that "a bereavement absence is by definition, not subject

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 23

to a pilot's control," but do not otherwise address this factor as to bereavement leave. Mot. at 21-22. Of course, pilots do not choose when their family members pass away. Limes Dep. at 43:22-25; Thomson Dep. at 61:6-9. But as Horizon's chief pilot explained, some eligible pilots choose not to take bereavement leave or take only some of the bereavement leave to which they are entitled. Thomson Dep. at 57:15-58:16. And paid bereavement leave can be used to "handle affairs made immediately necessary by the deceased person's death, such as arranging the funeral" or "to attend the funeral" that a memorial service has just arranged and scheduled. ECF No. 138-9 at 129; *see* Limes Dep. at 45:4-18. Thus, while pilots cannot control life and death, they have flexibility and control whether and when to take bereavement leave

Defendants do not even address pilots' ability to choose when to take vacation. According to the testimony of their representatives, both military leave and vacation are voluntary. Alaska Dep. 102:22-103:2, 118:2-5; Horizon Dep. at 65:16-19, 67:12-14. In addition to that admission of comparability, pilots at both Alaska and Horizon schedule vacations in the Fall of the preceding calendar year, on a seniority basis. ECF No. 138-12 at 7-1; ECF No. 138-8 at 59. Once scheduled, there is flexibility to adjust the dates. ECF No. 138-8 at 60; ECF No. 138-12 at § 7(D). As Defendants do not even address vacation, they concede the comparability of this factor as to vacation on this motion.

### 3.    Even if Defendants' Other Proposed Factors are Considered, They Only Create A Disputed Issue of Fact.

Defendants rely on two factors not identified in the DOL regulations. First, they argue that jury duty and bereavement leave are not comparable to military leave in frequency. Mot. at 14-18. Second, they argue that sick leave and vacation are not comparable to military leave because the ability to take sick and vacation accrues over time. *Id.* at 26-27 & n.5. Even if these extraneous factors are an appropriate basis for comparison, they merely create a disputed issue of fact.

### a.    Even if Frequency is a Relevant Factor, It Merely Creates a Disputed Issue of Fact.

Defendants argue that military leave occurs generally more frequently than leave for bereavement or jury duty. Mot. at 14-18. But the frequency of military leave in general should not be a comparability factor because USERRA focuses on comparing specific military absences of employees, rather than military leaves in general, to other forms of leave offered by an employer. *Supra* at I.B.1.b. Even if frequency were a factor, it must be weighed against duration, which is "the most significant factor." 20 C.F.R. § 1002.150(b).

The sole basis for Defendants' assertion that "frequency" is a potential comparability factor did so in a single passing reference in dicta. *White*, 987 F.3d

at 625.[6] Like this Court, the Seventh Circuit held that comparability of leaves could not be decided on a motion to dismiss. *Id.* As the *White* district court did not mention frequency and the parties did not brief the question of what extraneous comparability factors should be considered, the Seventh Circuit likely mentioned frequency based on defendants' mere argument that it should be considered. *See White v. United Airlines, Inc.,* 416 F.Supp.3d 736, 739–40 (N.D. Ill. 2019) (finding military leave and jury duty to "be sporadic and uncontrollable in timing").

**b. Character of Accrual is Not an Appropriate Factor for the Comparability Analysis.**

Defendants assert that sick leave and vacation are not comparable to short-term military leave because Alaska and Horizon "do not simply continue to pay employees their wages or salaries" but rather "whether that absence is paid or unpaid depends entirely on whether the pilot has accrued sufficient" leave to cover the absence. Mot. at 26 & n.5. This argument fails for three reasons.

First, Defendants rely on *Hoefert* to suggest that accrual of paid leave is not comparable to military leave as a matter of law simply because the leave benefits accrue. Mot. at 27. Not only does that conflict with this Court's prior decision, but mere accrual of benefits does not preclude comparability. *Rogers*, 392 F.3d at 772

---

[6] The other case cited by Defendants is a state court case applying the Alabama constitution's due process clause, not a case applying USERRA or its predecessor statutes. *White v. Assoc. Ind. of Ala., Inc*, 373 So. 2d 616, 619 (Ala. 1979).

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 26

(finding disputed issue of fact as to whether sick leave comparable); *Paxton*, 712 F.Supp.2d at 1016 (finding accrued vacation to be protected by § 4316(b)); *see Duffer,* 173 F.Supp.3d at 705 (finding comparability of sick leave with military leave to be a triable issue of fact).

Second, Defendants conflate the available relief with a characteristic of the leave and erroneously assume that characteristic bars relief. *See Tully,* 481 F.3d at 1370 (rejecting similar rationale because "[t]o allow differences in the available benefits to negate relief under [§] 4316(b)(1)(B) would undermine the effect of the statute, which is designed to remedy differences in the benefits provided for military leave and leave for other purposes."). If Plaintiff establishes at trial that sick leave or vacation are comparable to short-term military leaves, the Class will be entitled to the same "rights and benefits" afforded pilots who take sick leave or vacation including accrual of leave. 38 U.S.C. § 4316(b). If pilots can accrue sick leave or vacation and use that accrual to protect their absences from loss of pay, pilots can accrue paid military leave, under the same procedures, and use that accrual to protect their absences from loss of pay. Plaintiff's expert's damages analysis models hypothetical military leave accruals and usage by Class Members using the same rules as the Comparator Leaves (including sick and vacation). Breshears Rep. at ¶¶ 47, 55, 76, 91.

Finally, Defendants' remaining case did not address whether accrual-based

leaves are comparable to military leave. *Moss*, 420 F.Supp.3d at 775.[7] As *Moss*

involved "military leave longer than 90 days," the *Moss* court merely distinguished

short-term leaves of absence like sick leave from long term leave in what that CBA

denominated as a "leave of absence," *Id.* A "'leave of absence' is not a technical

term under USERRA but simply means an absence from work." *Scanlan,* 384

F.Supp.3d at 527. Defendants' interpretation is inconsistent with the application of

the equality principle to leaves that "would not generally be of extended duration."

*Waltermyer*, 804 F.2d at 825.

## II.     Summary Judgment Should be Denied on Plaintiff's Virtual Credit Claims (Counts I-III).

Defendants argue that Horizon treats all leaves of absence identically. Mot.

at 28. But USERRA does not merely prohibit discrimination based on military

service, but also provides "protections for service members seeking restoration to

employment." *Kirkendall v. Dep't of Army,* 479 F.3d 830, 867 n.2 (Fed. Cir. 2007);

*see Ouimette v. County of L.A.*, No. 2:12-CV-6268, 2012 WL 6214305, at *4 (C.D.

Cal. Dec. 12, 2012) (same). USERRA §§ 4312-4316 do *not require "*that the

employer discriminated against [the servicemember.]" *Id.* at *5.

### A.     Horizon is Not Entitled to Summary Judgment on Counts I & III.

Count I alleges that because the Virtual Credit Policy provided fewer credit

hours than Clarkson would have received but for military leave, Horizon failed to

---

[7] *Moss* is also currently on appeal to the Seventh Circuit.

reemploy him in a proper position under USERRA §§ 4312 and 4313. Compl. ¶¶ 61-69. Count III alleges that Horizon violated USERRA § 4316(c) by applying the Policy to demote Clarkson to an inferior position following his military leave of at least 31 days without cause. *Id*. ¶¶ 75-78. Defendants do not dispute that Clarkson satisfied USERRA § 4312(a)'s requirements for reemployment. Mot. at 30-32. Instead, they argue that the Horizon pilots' CBA defines "POSITION" and "DOWNGRADED" without mentioning the Regular Line Holder or Reserve status and Clarkson's title remained the same as his pre-service position. *Id*. at 30-32.

But a reemployment position must "include[] the seniority, status, and rate of pay that an employee would ordinarily have attained in that position given his or her job history, including prospects for future earnings and advancement." 20 C.F.R. § 1002.193(a). "Status" assesses factors such as "the employee's opportunities for advancement," "working conditions," and "shift assignment." *Id.* § 1002.194. The mere fact that the pre- and post-service positions have the same title or definition does not mean that they are equivalent. *Serricchio v. Wachovia Secs. LLC*, 658 F.3d 169, 183 (2d Cir. 2011) ("[S]tatus must be assessed with regard to factors beyond mere title or 'rank'"); *Middleton v. City of Sherwood*, 621 F.Supp.2d 1089, 1093-95 (D. Or. 2009) (rejecting argument that position with "the same title, rate of pay, and working location" satisfied § 4313). "It is crystal clear that a demotion is the equivalent of a discharge." *Foor v. Torrington Co.,* 170 F.2d 487, 490 (7th Cir. 1948); *Hanson v. County of Kitsap,* 21 F.Supp.3d 1124, 1142

(W.D. Wash. 2014) (finding that demoting returning servicemember was a discharge under USERRA § 4316(c)).

Defendants argue that reserve pilots have a greater minimum pay guarantee (73 hours) than Regular Line Holders. Mot. at 31. But Regular Line Holders were usually provided a 74-80 hour schedule in 2017 and thus made more money than reserve pilots. Cox Decl. ¶ 6. In a rare situation, a pilot may bid reserve to ensure getting "specific days off" if he or she had "junior" status. Horizon Dep. at 119:3-7. By contrast, Regular Line Holder status provides a more predictable schedule and greater certainty of days off. *Id*. at 210:18-211:2; Cox Decl. ¶ 8.

Defendants argue that Clarkson suffered no harm because he only had to work additional hours to maintain his Regular Line Holder status. Mot. at 31. This argument mischaracterizes Clarkson's claims. Counts I and III allege that Clarkson was *both* forced into reserve in July 2017 and was required to work additional hours in June, September, and October 2017 and thus reemployed in a Regular Line Holder position *of lesser status*. Compl. ¶¶ 39-40, 68-69, 77-78; ECF Nos. 73-22 ¶ 6. In July 2017, Clarkson had to work on days that should have been his off days but for military leave. ECF Nos. 82-6 ¶ 3. Plaintiff's expert takes into account all these injuries. ECF No. 138-19 at 2-4. The DOL found that Horizon violated USERRA and Clarkson is entitled to monetary relief. ECF No. 73-25. Defendants' cases involved whether a plaintiff had standing to seek "injunctive relief," which Clarkson does not seek. *Lovell v. Consol. Edison Co. of N.Y., Inc*.,

758 Fed. Appx. 222, 224 (2d Cir. 2019); *Cunha v. IntelliCheck, LLC*, 254

F.Supp.3d 1124, 1138 (N.D. Cal. 2017) (discussing "injunctive relief"). As such,

Clarkson has standing to bring Counts I and III for declaratory and monetary relief,

summary judgment should be denied on Counts I and III.

### B.    Horizon is Not Entitled to Summary Judgment on Count II.

Count II alleges that Horizon violated USERRA § 4316(a) by failing to treat

military leave as continuous employment in determining Clarkson's reemployment

position. Compl. ¶¶ 70-74. An employer must provide a reemployed employee

with "the seniority and other rights and benefits determined by seniority that the

person had" on the date the uniformed service began "*plus the additional* seniority

and rights and benefits that such person would have attained if the person had

remained continuously employed." 38 U.S.C. § 4316(a) (emphasis added).

"Seniority" means "longevity in employment together with any benefits of

employment which accrue with, or are determined by, longevity in employment."

*Id*. § 4303(12).

Defendants argue that "[a] line schedule at Horizon" is based on work

performance, and is not seniority-based. Mot. at 32-33.  But this ignores that

Horizon awarded line schedules including trips and days off *based on seniority*.

Horizon Dep. at 83:1-17, 109:24-110:4, 111:12-24, 119:13-16; Clarkson Dep. at

30:11-19; ECF No. 138-8 at § 13.C.7; Cox Decl. ¶ 10. USERRA § 4303(12) does

not require that "the number of years an employee worked for an employer" be the

"the *sole* element." *Huhmann v. Fed. Express Corp*., 874 F.3d 1102, 1111 (9th Cir.

2017). Whether a right or benefit is seniority-based depends on whether (a) it is "a reward for length of service rather than a form of short-term compensation for work performed"; (b) "it is reasonably certain that the employee would have received the right or benefit if he or she had remained continuously employed during the period of service"; and (c) "it is the employer's actual custom or practice to provide or withhold the right or benefit as a reward for length of service." 20 C.F.R. § 1002.212. As to the first factor, Count II does not seek compensation based on hours worked but instead the rights and benefits accompanying the Regular Line Holder status that Clarkson would have obtained but for his military leave. Compl. ¶¶ 39-40, 74. These rights and benefits included the minimum pay guarantee of 70 hours and in practice of 74-80 hours and thus a greater earning potential, and a more predictable schedule. Horizon Dep. at 210:18-211:2; Cox Decl. ¶¶ 6, 8. Defendants argue that pilots had to perform "at least some work" after return from military leave. Mot. at 33. But that addresses "the effect" of Horizon's conduct, not the nature of these rights and benefits. ECF No. 73-25; Clarkson Dep. at 248:8-249:11.

As to the other two factors, Horizon has maintained seniority-based policies or practices of providing these rights and benefits for the Regular Line Holder status while withholding them for those placed on reserve. Horizon Dep. at 210:18-211:2 & 73:8-74:2; Cox Decl. ¶¶ 7-8. Defendants' pre-USERRA case *Foster v. Dravo Corp.*, 420 U.S. 92 (1975), held that vacation accrual was a form of short-

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 32

term compensation for work performed and not a seniority-based benefit. *Id.* at 100. Consistent with that decision, the "accrual of vacation leave is considered to be a non-seniority benefit" under USERRA. 20 C.F.R. § 1002.150(c). Horizon's non-vacation accrual cases support Clarkson's position. *See Coffy v. Republic Steel Corp.*, 447 U.S. 191, 205 (1980) (finding supplemental unemployment benefits designed to "provide economic security" to be "perquisites of seniority"); *DeLee v. City of Plymouth, Ind.*, 773 F.3d 172, 181-82 (7th Cir. 2014).

Defendants argue that Clarkson received under the Policy more credit hours than he would have to average on a daily basis as a Regular Line Holder if he had not been on military leave. Mot. at 33-34. This argument ignores several key facts. First, Turboprop pilots were credited a minimum of 4-4.2 hours per day of flying even if they flew less than that. Horizon Dep. at 121:2-5, 123:6-9, 123:24-124:2, 171:11-17; Clarkson Dep. at 219:6-10. Defendants' use of 2.33 or 2.26 (i.e., 70/30 or 70/31) as Clarkson's daily average of hours worked in a month without military leave fails to take into account this daily minimum guarantee. Second, Horizon guaranteed every pilot a minimum of 12 days off in a 31-day month and 12 days off in a 30-day month without any military leave. ECF No. 138-8 at App. F. As stated above, when pilots could take days off in a month and how many days off were determined in seniority order. Clarkson was required to work on days that should have been his days off. ECF Nos. 73-22 ¶ 6 & 82-6 ¶ 3. Horizon's management agreed that the 2.45 daily virtual credit value for military leave was

"a very low value." Ex. 9; *see* Ex. 10; Faddis Dep. at 12:23-13:16, 34:24-35:5, 38:7-40:2, 42:12-44:9, 49:9-50:13. The DOL found that the Policy violated USERRA and that that Clarkson is entitled to damages at his premium rate. ECF No. 73-25. As such, Clarkson was disadvantaged by the Policy.

Defendants argue that Clarkson seeks a "windfall"—i.e., 30 days of virtual credit equal to 82.5 hours for a month. Mot. at 34. But Clarkson does not seek such credit as he was on military leave for no more than 26 days in any of the four months at issue. ECF No. 138-20; ECF No. 138-19 at 2-4. None of Defendants' cases involved any seniority-based rights or benefits upon reemployment. *See Monroe v. Stand. Oil Co.*, 452 U.S. 549, 561 (1981) (pre-USERRA case that involved no claims for such rights or benefits); *Crews v. City of Mt. Vernon*, No. 06-1012, 2008 WL 2224898, at *4 (S.D. Ill. May 27, 2008) (addressing USERRA § *4316(b)* claim). Thus, summary judgment should be denied on Count II.

## III. Sufficient Evidence Supports Willfulness and Liquidated Damages.

Defendants argue that they should be absolved from liquidated damages because they did not act willfully based on their assertion of a "good-faith disagreement about what the law requires." Mot at 35. But Defendants' own case explains that if an employer is notified of a violation, but fails to promptly comply with the law, that suffices for willfulness. *Petty v. Metro. Gov't of Nashville & Davidson County*, 687 F.3d 710, 722 (6th Cir. 2012) (affirming award of liquidated damages); *see Serricchio v. Wachovia Secs. LLC*, 658 F.3d 169, 191 (2d Cir. 2011) (affirming liquidated damages where employer did not try to comply); *Reich v.*

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 34

*Monfort, Inc.*, 144 F.3d 1329, 1335 (10th Cir. 1998) (affirming willfulness finding where employer was on notice of violation). In Defendants other cases, the employer was either never notified or acted promptly to comply with the law.

By May 3, 2017, Horizon learned that the daily 2.45 virtual credit hours provided to Turboprop pilots for military leave were "too low" to comply with USERRA. Cox. Decl. ¶ 14 & Ex. B; Faddis Dep. at 18:20-19:8, 22:12-24:17, 24:24-25:21, 28:7-31:14. Another pilot filed a grievance to that effect on May 11, 2017. Ex. 11; Faddis Dep. at 59:11-25, 60:25-61:3, 64:6-65:16. As Plaintiff's Virtual Credit Claims arose after that date, Horizon was aware at the time that the virtual credit for military leave was too low. Ex. 9; Ex. 10; Faddis Dep. at 12:23-13:16, 34:24-35:5, 38:7-40:2, 42:12-44:9, 49:9-50:13.

As to the Paid Leave Claim, Defendants admit that they were aware by at least January 7, 2019 that their practices violated USERRA § 4316(b). Ex. 6 at No. 11; Ex. 7 at No. 18. A jury could find that any good-faith disagreement ended by no later than when the Court denied the motion to dismiss. ECF No. 30 at 17-20. As the Class Period extends until the date of judgment, and Defendants have not changed their practices, they can be liable for liquidated damages at least on leaves after January 7, 2019.

## CONCLUSION

For the forgoing reasons, Defendants' Motion for Summary Judgement should be denied.

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 35

Dated April 12, 2021                    Respectfully submitted,

                                        */s/ R. Joseph Barton*
                                        R. Joseph Barton
                                        (*admitted pro hac vice*)
                                        Colin M. Downes
                                        (*admitted pro hac vice*)
                                        BLOCK & LEVITON LLP
                                        1735 20th Street NW
                                        Washington, DC 20009
                                        Telephone: (202) 734-7046
                                        Facsimile: (617) 507-6020
                                        jbarton@blockleviton.com
                                        colin@blockleviton.com

                                        Vincent Cheng
                                        (*admitted pro hac vice*)
                                        BLOCK & LEVITON LLP
                                        100 Pine St., Suite 1250
                                        San Francisco, CA 94111
                                        Telephone: (415) 968-8999
                                        Facsimile: (617) 507-6020
                                        vincent@blockesq.com

                                        Michael J. Scimone
                                        (admitted pro hac vice)
                                        OUTTEN & GOLDEN LLP
                                        685 Third Avenue 25th Floor
                                        New York, NY 10017
                                        Tel: (212) 245-1000
                                        mscimone@outtengolden.com

                                        Hannah Cole-Chu
                                        (*admitted pro hac vice*)
                                        OUTTEN & GOLDEN LLP
                                        601 Massachusetts Avenue NW
                                        Second Floor West Suite
                                        Washington, DC 20001
                                        Telephone: (202) 847-4400
                                        Facsimile: (202) 847-4410
                                        hcoleschu@outtengolden.com

PLAINTIFF'S OPP. TO MOT. FOR SUMMARY JUDGMENT - 36

Peter Romer-Friedman
(*admitted pro hac vice*)
GUPTA WESSLER PLLC
1900 L Street, NW, Suite 312
Washington, DC 20036
Tel: (202) 888-1741
peter@guptawessler.com

Matthew Z. Crotty (WSBA #39284)
CROTTY & SON LAW FIRM, PLLC
905 W. Riverside Ave., Suite 404
Spokane, WA 99201
Telephone: (509) 850-7011
matt@crottyandson.com

*/s/ Thomas G. Jarrard*
Thomas G. Jarrard (WSBA #39774)
LAW OFFICE OF THOMAS JARRARD, PLLC
1020 N. Washington St.
Spokane, WA 99201
Telephone: (425) 239-7290
Facsimile: (509) 326-2932
tjarrard@att.net

*Attorneys for Plaintiff and the Class*

1

## CERTIFICATE OF SERVICE

2

I certify that on April 12, 2021, I caused the foregoing Plaintiff's Opposition

3  to Motion for Summary Judgment to be electronically filed with the Clerk of the

4  Court using the CM/ECF system, which sent notification of such filing to all

5  counsel of record.

6

7                         */s/ R. Joseph Barton*
                        R. Joseph Barton
8                        (*admitted pro hac vice*)
                        BLOCK & LEVITON LLP
9                        1735 20th Street NW
                        Washington, DC 20009
10                       Telephone: (202) 734-7046
                        Facsimile: (617) 507-6020
11                       jbarton@blockleviton.com

12

13

14

15

16

17

18

19

20

21