1    Colin M. Downes (admitted *pro hac vice*)
     BARTON & DOWNES LLP
2    1633 Connecticut Avenue NW, Suite 200
     Washington D.C. 20009
3    Tel: (202) 734-7046
     colin@bartondownes.com
4
     *Attorney for Plaintiff*
5

6            **UNITED STATES DISTRICT COURT**
             **EASTERN DISTRICT OF WASHINGTON**

7    CASEY CLARKSON,                    Case No. 2:19-cv-0005 TOR

8              *Plaintiff*,             **PLAINTIFF'S UNOPPOSED**
                                        **MOTION FOR PRELIMINARY**
         v.                             **APPROVAL OF CLASS ACTION**
9                                       **SETTLEMENT AND**
     ALASKA AIRLINES, INC. and          **MEMORANDUM OF POINTS**
     HORIZON AIR INDUSTRIES, INC.       **AND AUTHORITIES**
10
              *Defendants*             **NOTED FOR HEARING:**
11                                      **September 25, 2024**

12                                      **WITHOUT ORAL ARGUMENT**

13

14

15

16

17

18

19

20

21

# TABLE OF CONTENTS

Memorandum of Points and Authorities........................................................................2

    I.    History and Status of the Case .............................................................2

          A.    Factual Background ....................................................................2

          B.    The Claim and Relief Requested .................................................3

          C.    Procedural History .......................................................................4

          D.    Terms of the Settlement ..............................................................6

    II.    The Proposed Settlement and Plan of Allocation Merit Preliminary Approval. ..........................................................................7

          A.    The Settlement is a Result of Serious, Informed, and Non-Collusive Negotiations.........................................................8

          B.    The Settlement Provides Significant Benefits to the Class and is Well Within the Range of Reasonableness ....................11

          C.    The Settlement has No Obvious Deficiencies. .........................14

    III.    The Notice and Plan of Notice Should be Approved..........................18

Conclusion .................................................................................................................20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Anderson-Butler v. Charming Charlie Inc.*,
    No. 14 CV 1921, 2015 WL 4599420 (E.D. Cal. July 29, 2015) .......................16

5

*Beanland v. Fed. Express Corp.*,
    No. 22-672-MAK (D. Del. Aug. 1, 2023) .........................................................11

6

7

*Bennett v. SimplexGrinnell LP*,
    No. 11-CV-01854-JST, 2015 WL 1849543 (N.D. Cal. Apr. 22, 2015) ............................................................................................................12

8

9

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................15

10

*Burnett v. W. Customer Mgmt. Grp., LLC*,
    No. 10 CV 56, 2011 WL 13290339 (E.D. Wash. Feb. 22, 2011) ...............10, 18

11

12

*Carideo v. Dell Inc.*,
    No. 06 CV 1772, 2010 WL 11530601 (W.D. Wash. Sept. 13, 2010) ................................................................................................................9

13

14

*Chen v. W. Digital Corp.*,
    No. 819CV00909JLSDFM, 2020 WL 13587954 (C.D. Cal. Apr. 3, 2020) ................................................................................................................12

15

16

*Clarkson v. Alaska Airlines, Inc.*,
    No. 2:19-CV-0005-TOR, 2020 WL 13311693 (E.D. Wash. Nov. 3, 2020) ................................................................................................................14

17

18

*Clarkson v. Alaska Airlines Inc.*,
    No. 2:19-CV-0005-TOR, 2020 WL 4495278 (E.D. Wash. Aug. 4, 2020) ................................................................................................................10

19

*De La O v. Arnold-Williams*,
    No. 04 CV 192, 2008 WL 11426817 (E.D. Wash. Aug. 12, 2008) ..................19

20

21

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - iii

*Dennings v. Clearwire Corp.*,
    No. 10 CV 1859, 2013 WL 1858797 (W.D. Wash. May 3, 2013),
    *aff'd* No. 13-35491 (9th Cir. Sept. 9, 2013) ...................................................15, 16

*Gabriel v. Nationwide Life Ins. Co.*,
    No. 09 CV 508, 2010 WL 11684279 (W.D. Wash. May 17, 2010)...................11

*Hall v. L-3 Commc'ns Corp.*,
    No. 15 CV 231, 2019 WL 3845462 (E.D. Wash. Jan. 25, 2019) .........7, 8, 11, 12

*Jenson, v. First Tr. Corp.*,
    CV 05-3124 ABC, 2008 WL 11338161 (C.D. Cal. June 9, 2008)....................17

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-02420YGRDMR, 2020 WL 7264559 (N.D. Cal. Dec.
    10, 2020) ........................................................................................................17

*Logan v. Hargraves*,
    No. 04 CV 214, 2008 WL 11425713 (E.D. Wash. Sept. 25, 2008) ..................18

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ...........................................................................7

*Peters v. Nat'l R.R. Passenger Corp.*,
    966 F.2d 1483 (D.C. Cir. 1992) ......................................................................19

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
    No. 14 CV 268, 2016 WL 4052588 (W.D. Wash. Feb. 3, 2016) .................8, 11

*Rosas v. Sarbanand Farms, LLC*,
    No. 18 CV 112, 2019 WL 859225 (W.D. Wash. Feb. 22, 2019) ...............18, 19

*Scott v. United Servs. Auto. Ass'n*,
    No. 11 CV 1422, 2013 WL 12251170 (W.D. Wash. Jan. 7, 2013)...............8, 14

*Smith v. Legal Helpers Debt Resolution, LLC*,
    No. 11 CV 5054, 2012 WL 12863173 (W.D. Wash. Aug. 30, 2012) .................7

*Util. Reform Project v. Bonneville Power Admin.*,
    869 F.2d 437 (9th Cir. 1989) ............................................................................7

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. 11 CV 406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ..........................17

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - iv

*Zamora Jordan v. Nationstar Mortg., LLC*,
  No. 14 CV 175, 2019 WL 1966112 (E.D. Wash. May 2, 2019) ..........................9

**Statutes**

USERRA § 4316 ..........................................................................................3, 4, 11

**Other Authorities**

20 C.F.R. § 1002.150(b) ..............................................................................................4

Fed. R. Civ. P. 23 ...............................................................................................*passim*

*Manual for Complex Litigation* (4th ed. 2004) .....................................................7, 18

*Newberg on Class Actions* (4th ed. 2010) ...........................................................14, 15

William B. Rubenstein *et al.*, *Newberg on Class Actions* § 13:10 (5th
  ed. 2013) ..................................................................................................................7

1

## INDEX OF EXHIBITS

2

Declaration of Colin M. Downes with the following attachments:

3

**Exhibit 1**:   Class Action Settlement Agreement dated August 15, 2024;

4

**Exhibit 2**:   Proposed Plan of Allocation;

**Exhibit 3**:   Proposed Notice of Class Action Settlement;

5

**Exhibit 4**:   Proposed Claim Form;

6

**Exhibit 5**:   Proposed Appendix to Notice of Class Action Settlement;

7

**Exhibit 6**:   *Beanland v. Fed. Express Corp.*, No. 22-672-MAK, Final Order

Approving Class Action Settlement (Aug. 1, 2023).

8

9

10

11

12

13

14

15

16

17

18

19

20

21

Plaintiff Casey Clarkson moves this Court to enter an order under Rule 23 of the Federal Rules of Civil Procedure:

1.    Preliminarily approving the Settlement Agreement between Plaintiff and Defendants as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

2.    Approving the proposed Class Notice and the plan for dissemination of notice to the Class as satisfying the requirements of Rule 23(c)(2) and (e)(1);

3.    Preliminarily approving the proposed Plan of Allocation;

4.    Appointing the Settlement Administrator; and

5.    Setting the following dates and deadlines under Rule 23(d) and (e) of the Federal Rules of Civil Procedure:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to provide notice to the Class | 21 days after Preliminary Approval |
| Deadline for Class Counsel to file motion for award of attorneys' fees and costs Motion for Service Award for Class Representative(s) | 60 days after Preliminary Approval |
| Last day for Class Members to submit objections to the Settlement | 60 days after Notice is sent (i.e. 81 days after Preliminary Approval) |
| Last day for Class Counsel to file Motion for Final Approval of Settlement | At least 14 days after the objection deadline (i.e. 95 days after Preliminary Approval) |
| Final Approval Hearing | At least 100 days after the Preliminary Approval Motion is Filed |

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 1

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Casey Clarkson respectfully submits this Memorandum in support of his motion to preliminarily approve the proposed Class Action Settlement. The Settlement represents the result of more than five years of hard-fought litigation and negotiations. Defendants have agreed to pay $4.75 million to the Class and to provide Class members with four days per calendar year of paid short-term military leave, with no offset for military pay. Given the uncertainty of establishing both liability and damages, this represents an excellent result for the Paid Leave Class and the Settlement should be preliminarily approved by the Court.

## I.    History and Status of the Case

### A.    Factual Background

Plaintiff alleges that the material facts of this case are as follows: Plaintiff Casey Clarkson is a veteran of the Washington Air National Guard, in which he served until June 30, 2018. ECF No. 73-22 at ¶ 3. While in the Guard, Clarkson was employed as a civilian pilot—at Horizon, from late 2013 through late 2017, and then at Alaska through the present. *Id*. ¶ 2. During his employment with both airlines, Clarkson took periods of short-term military leave to perform his Guard duties. ECF No. 73-22 at 2; ECF No. 82-6 at 2. Pilots at both Horizon and Alaska are guaranteed a certain number of hours of pay per month based on their status. ECF No. 138 at 14; ECF No. 138-12 at 4-1. But when pilots take military leave,

their minimum guaranteed pay is decreased for each day of leave. ECF No. 138 at 14; ECF No. 150-3 at 47:6-16; ECF No. 150-2 at 113:9-21; ECF No. 138-12 at 4-1. Alaska categorizes military leave of 30 days or less as short-term rather than "extended" military leave. ECF No. 150-2 at 121:12-20. Horizon also distinguishes short-term military leave from other military leaves. ECF No. 150-3 at 59:8-19. But unlike short-term military leave, many forms of non-military leave are "protected from loss of pay," such that taking those leaves does not reduce a pilot's minimum guarantee. ECF No. 138-8 at 14, 74-75; ECF No. 150-2 at 86:24-87:7, 88:3-7. These include leaves for jury duty, bereavement leave, sick leave, and vacation. ECF No. 138-12 at 7-4, 13-1, 14-2, 26-2. ECF No. 138-8 at 14, 74-75.

## B.    The Claim and Relief Requested

The only remaining claim in this case (following the settlement of Clarkson's individual claims) is Count IV of the Amended Complaint, by which Plaintiff alleges a claim under USERRA § 4316(b)(1), ECF No. 31 at ¶¶ 79-86, as follows: The statute provides that a person who is absent from a position of employment by reason of service in the uniformed services shall be (A) deemed to be on furlough or leave of absence while performing such service; and (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract,

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 3

agreement, policy, practice, or plan in effect at the commencement of such service or established while such person performs such service. 38 U.S.C. § 4316(b)(1). The Complaint alleges that jury duty, bereavement leave, sick leave, and vacation as offered to pilots by Alaska and Horizon are comparable to short-term military leave in terms of duration, purpose, and the ability of pilots to choose when to take the leaves. *See* 20 C.F.R. § 1002.150(b). Because Defendants provide the benefit of pay protection to pilots who take those comparable forms of leave, the Complaint alleges that Defendants are likewise required to provide that benefit to pilots who take short term military leave. The Complaint primarily sought as relief a declaration that this practice violated USERRA and an order requiring Defendants to pay him and other similarly affected Alaska and Horizon pilots their unpaid wages and benefits. ECF No. 31 at Prayer for Relief ¶¶ B, D.

### C.    Procedural History

Clarkson sued Horizon and Alaska in January 2019. ECF No. 1. After denying a motion to dismiss, ECF No. 30, and following class discovery, this Court certified a class of "all current or former Alaska or Horizon pilots who have taken short-term military leave" from October 10, 2004, to the present. ECF No. 89. Additional discovery followed, including the exchange of expert reports, and Defendants filed a motion for summary judgment on all counts. ECF No. 136. Plaintiff sought summary judgment on, among other things, Defendants' defense

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 4

1    that it was entitled to offset pilots' military pay against their damages. ECF No.

2    133. Shortly before the original trial date, the Court granted Defendants' motion in

3    its entirety and denied Plaintiff's as moot. ECF No. 187.

4    Plaintiff appealed that decision and the Ninth Circuit reversed. On remand,

5    the Court reopened discovery. ECF No. 206. Defendants produced updated pay

6    and leave data and sought pay data from the Department of Defense, Plaintiff's

7    expert updated his damages calculations, Defendants took the deposition of certain

8    absent class members as a prelude to a potential decertification motion, and Class

9    Counsel took additional fact discovery. Downes Decl. ¶ 2.

10    The parties negotiated the principal monetary terms of the agreement in an

11    all-day, in-person mediation facilitated by Hunter Hughes, an independent,

12    professional mediator with particular expertise in employee benefits class actions,

13    on October 11, 2023. *Id*. ¶ 3. The parties—together with the Additional Class

14    Representatives—then negotiated the principal non-monetary terms of the

15    agreement at a second, hybrid remote/in-person mediation on December 6, 2023,

16    also facilitated by Hunter Hughes. *Id*.. After reaching the principal terms of the

17    Settlement, those terms were shared with the unions that represent pilots at Alaska

18    and Horizon. ECF No. 230 ¶¶ 2-3. Following their review, Plaintiff and

19    Defendants spent additional time crafting the detailed terms of a formal agreement

20    and finalizing them in the Settlement Agreement. *Id*. ¶ 4; Downes Decl. ¶ 4.

21

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 5

1

### D.    Terms of the Settlement

2    The terms of the proposed settlement between Plaintiff and Defendants

3    provide both monetary and non-monetary consideration. As monetary

4    consideration, Defendants will pay $4.75 million dollars into a Settlement fund

5    which, less Court-approved expenses, attorneys' fees, and service awards, will be

6    distributed to the Class according to a Court-approved plan of allocation. Agmt. §§

7    V(1), VII. As non-monetary consideration, beginning in the year in which the Final

8    Approval Order becomes Non-Appealable, Defendants will provide members of

9    the Class with up to four days of paid short-term military leave per calendar year.

10   *Id*. § IV(1)(a). On days in which pilots take qualifying military leave, Alaska pilots

11   will be paid their Minimum Daily Guarantee under their collective bargaining

12   agreement (currently five hours), while Horizon pilots will be paid their Minimum

13   Daily Credit under their collective bargaining agreement (currently four hours and

14   twelve minutes), in each case at their standard hourly wage. *Id*. § IV(1)(b).

15   In exchange, Plaintiff and the Class will dismiss with prejudice Count IV

16   and agree to a release. *Id*. § XV(1). Defendants will likewise release Plaintiff and

17   each Class Member from all claims that could have been asserted in this case,

18   including any claims for attorneys' fees, costs, expenses, or sanctions, that relate to

19   the filing, commencement, prosecution, or settlement of this case. *Id*. § XV(2).

20

21

1   **II.    The Proposed Settlement and Plan of Allocation Merit Preliminary**

2           **Approval.**

3           As a matter of public policy, settlement is a strongly favored method for

4   resolving disputes. *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d

5   437, 443 (9th Cir. 1989). This is especially true in class actions. *Officers for*

6   *Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir.

7   1982); *Smith v. Legal Helpers Debt Resolution, LLC*, No. 11 CV 5054, 2012 WL

8   12863173, at *3 (W.D. Wash. Aug. 30, 2012) ("Strong judicial policy favors

9   settlements, particularly where complex class action litigation is concerned."). To

10  protect the interests of the class, Rule 23(e) provides that a class action cannot be

11  settled without court approval. Fed. R. Civ. P. 23(e). Preliminary approval is

12  simply the "first step toward final approval." *Hall v. L-3 Commc'ns Corp.*, No. 15

13  CV 231, 2019 WL 3845462, at *3 (E.D. Wash. Jan. 25, 2019).

14          The request for preliminary approval only requires an "initial evaluation" of

15  the fairness of the proposed settlement. *Manual for Complex Litigation* § 21.632

16  (4th ed. 2004). The purpose of preliminary approval is to determine "whether to

17  direct notice of the proposed settlement to the class, invite the class's reaction, and

18  schedule a fairness hearing." William B. Rubenstein *et al.*, *Newberg on Class*

19  *Actions* § 13:10 (5th ed. 2013). As approval is only preliminary, it only requires a

20  limited review of the proposed settlement. *Id.* "In granting preliminary approval,

21

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 7

1    the Court considers whether the Settlement Agreement appears to be the product of

2    serious, informed, non-collusive negotiations; has no obvious deficiencies; does

3    not grant preferential treatment to class representatives, and falls within the range

4    of possible approval." *Hall*, 2019 WL 3845462, at *3; *Scott v. United Servs. Auto.*

5    *Ass'n*, No. 11 CV 1422, 2013 WL 12251170, at *1 (W.D. Wash. Jan. 7, 2013)

6    (same). The Settlement readily satisfies the requirements for preliminary approval.

7        **A.**    **The Settlement is a Result of Serious, Informed, and Non-Collusive Negotiations.**

8            The fact that experienced counsel has been actively engaged in the litigation

9    and has diligently pursued the necessary discovery evidences the non-collusive

10    nature of the settlement. *Rinky Dink, Inc. v. World Bus. Lenders, LLC*, No. 14 CV

11    268, 2016 WL 4052588, at *5 (W.D. Wash. Feb. 3, 2016) ("The presence of

12    substantial formal discovery is an indicator that the parties were informed

13    regarding the wisdom of settlement and engaged in arms-length bargaining."). In

14    this case, a settlement was not reached until Class Counsel had conducted

15    substantial discovery. Class Counsel not only sought, obtained, and reviewed

16    approximately 25,000 pages of documents, a substantial volume of electronic data,

17    answers to nine sets of interrogatories (encompassing 23 interrogatories), and

18    responses to 52 requests for admission, but also met and conferred with Defendants

19    on numerous discovery matters and, ultimately, twice moved to compel

20    Defendants to provide further responses to interrogatories and produce additional

21    

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 8

documents. ECF No. 62; ECF No. 63; Downes Decl. ¶ 5. Class Counsel also took 7 fact witness depositions of Defendants: Rule 30(b)(6) depositions of both Horizon and Alaska, Ronald Limes and William Thomson (Alaska and Horizon chief pilots, respectively), Bernadette Davis (Horizon's Director, Crew Scheduling and later Alaska's Manager Flight Operations Training & Scheduling), Alison Faddis (Horizon's Vice President of Program Operations), Cheri Ruger (Horizon's Managing Director of People and Labor Relations). *Id*. ¶ 6. Plaintiff also took the depositions of Defendants' quantitative expert, Darin Lee, and their military expert, J.F. Joseph. *Id*. Class Counsel defended the deposition of Mr. Clarkson and four absent members of the Class. *Id*. Class Counsel also examined Mr. Meldrum, an official of the Air Line Pilots' Association, at deposition. Class Counsel engaged a quantitative expert (David Breshears) and a human resources expert (Laura Ingegneri) to analyze the data and the policies produced by Defendants, and had obtained and produced reports by each of those experts by the time the parties began mediation. *Id*.

The assistance of a neutral mediator in the settlement negotiations further evidences the non-collusive nature of the negotiations. *Zamora Jordan v. Nationstar Mortg., LLC*, No. 14 CV 175, 2019 WL 1966112, at *3 (E.D. Wash. May 2, 2019) (finding no collusion where the settlement "was achieved under the supervision of a trusted third-party mediator"); *Carideo v. Dell Inc.*, No. 06 CV

1772, 2010 WL 11530601, at *3 (W.D. Wash. Sept. 13, 2010) ("The assistance of an experienced mediator … confirms that the settlement is non-collusive."). Here, the parties negotiated the principal monetary terms of the agreement in an all-day, in-person mediation facilitated by Hunter Hughes, a professional mediator with experience mediating employment class actions, on October 11, 2023. Downes Decl. ¶ 3. The parties—with the proposed Additional Class Representatives—then negotiated the principal non-monetary terms of the agreement at a second, hybrid remote/in-person mediation on December 6, 2023, also facilitated by Hunter Hughes. *Id*. After reaching an agreement in principle, those terms were shared with the unions representing the Alaska and Horizon pilots. ECF No. 230 ¶¶ 2-3. Following union review, Class Counsel and Defendants spent additional time negotiating the terms and finalizing them in the Settlement Agreement. *Id*. ¶ 4; Downes Decl. ¶ 4.

The opinion of experienced class action attorneys is to be considered on preliminary approval. *Burnett v. W. Customer Mgmt. Grp., LLC*, No. 10 CV 56, 2011 WL 13290339, at *6 (E.D. Wash. Feb. 22, 2011). As the Court previously acknowledged, Class Counsel "have significant experience litigating class action and USERRA cases." *Clarkson v. Alaska Airlines Inc.*, No. 2:19-CV-0005-TOR, 2020 WL 4495278, at *5 (E.D. Wash. Aug. 4, 2020). Class Counsel believe that the proposed Settlement is a very good result for the Class. Downes Decl. ¶ 8.

As a product of extensive negotiations aided by a neutral professional mediator and conducted by informed and experienced counsel over five years of hard-fought litigation and negotiation, the Settlement Agreement is the product of informed, vigorous, arms-length bargaining.

**B.    The Settlement Provides Significant Benefits to the Class and is Well Within the Range of Reasonableness**

While the Court's ultimate assessment of whether to approve the settlement depends on many factors, at preliminary approval, the court must only be satisfied that the settlement "falls within the range of *possible* approval" and has no "obvious deficiencies." *Gabriel v. Nationwide Life Ins. Co.*, No. 09 CV 508, 2010 WL 11684279, at *6 (W.D. Wash. May 17, 2010) (emphasis added); *Rinky Dink*, 2016 WL 4052588, at *4 (same). "To determine whether a settlement amount falls within the range of reasonableness, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Hall*, 2019 WL 3845462, at *4 (citations and quotation marks removed). Here, the Settlement Agreement provides that $4.75 million to be paid into a Settlement Fund for the Class. Agmt. § V(1). Based on the 532 identified class members, that results in a gross average value of $8,928 per Class Member. Downes Decl. ¶ 8. This per class member recovery is higher than in other USERRA class settlements. *E.g. Beanland v. Fed. Express Corp.*, No. 22-672-MAK, Final Order Approving Class Action Settlement (Aug. 1, 2023) (approving USERRA § 4316(b)(1) class settlement of

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 11

$1.5 million for 4,020 class members, or $373.13 per class member) (Ex. 6); *Hall*, 2019 WL 3845462, at *4 (approving USERRA class settlement of $2 million for 250 class members, or $8,000 per class member).

The maximum Class recovery that Plaintiff's expert calculated was $9.7 million (before prejudgment interest, liquidated damages) and *without* any offset for military pay. Downes Decl. ¶ 7. The $4.75 million recovery represents 48.9% of that $9.7 million (and a greater percentage if Defendants' offset defense were to succeed). That significantly exceeds the results achieved in other employment class action settlements approved in this Circuit. *E.g. Chen v. W. Digital Corp.*, No. 819CV00909JLSDFM, 2020 WL 13587954, at *11 (C.D. Cal. Apr. 3, 2020) (preliminarily approving settlement that was 10.8% to 15.9% of maximum damages in employment case); *Bennett v. SimplexGrinnell LP*, No. 11-CV-01854-JST, 2015 WL 1849543, at *7 (N.D. Cal. Apr. 22, 2015) (preliminarily approving settlement that was 30% of maximum damages in wage and hour case). Even without considering other factors, this Settlement represents a very good result.

But, the expense, risk, and length of continued proceedings necessary to prosecute this litigation through trial and likely subsequent appeal weighs in favor of settlement. Defendants were likely to renew their motion for summary judgment as to willfulness (required for liquidated damages), to seek summary judgment on their laches defense as to Horizon pilots in the 2004-08 timeframe (for which

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 12

Horizon had no leave data), and to seek decertification of the Paid Leave Class. Class Counsel assessed the risks as to liquidated damages and laches to be meaningful. Downes Decl. ¶ 9. If Defendants succeeded in offsetting damages by the amount of a pilot's military pay, that could have eliminated any recovery for some Class Members and could have offset others by 50% or more. *Id*. At trial, a jury could have concluded that none of the comparator leaves were comparable to short-term military leave, and the Class could have recovered nothing. A jury could also have disagreed with Class Counsel's proposed measure of damages, for instance by finding that bereavement leave was comparable to short-term military leave (resulting in an estimated $4.6 million in gross damages) but not jury duty (which produced the larger $9.7 million figure). *Id*. A jury could have concluded that some but not all short-term military leaves were comparable to comparator leaves, for example by finding that short-term military leaves of four days or less were comparable to a three-day bereavement leave, but that longer leaves were not. Had Plaintiff prevailed at trial and maintained class certification, Defendants would almost certainly have appealed a second time, including on the class certification issues. Any recovery for the class would thus likely have taken years to make its way to class members. The Settlement avoids these risks and provides the Class with immediate relief.

1    The settlement also includes substantial prospective relief. Going forward,

2    pilots in the Class employed by Defendants will receive four days per calendar

3    year of paid military leave going forward. Agmt. § IV(1). Class Counsel estimates

4    this benefit has an annual value of $2,000.00-$6,619.40 for each pilot employed at

5    Alaska and $1,512.00-$3,612.00 for each pilot employed at Horizon, depending on

6    seniority and position. Downes Decl. ¶ 8. As this Court previously held that

7    Clarkson could not pursue prospective relief, this benefit could only have been

8    achieved unless there was a successful appeal or through adding another a class

9    representative. *Clarkson v. Alaska Airlines, Inc.*, No. 2:19-CV-0005-TOR, 2020

10   WL 13311693, at *4 (E.D. Wash. Nov. 3, 2020). The significant prospective relief

11   further supports preliminary approval.

12        **C.    The Settlement has No Obvious Deficiencies.**

13        The final factor on preliminary approval is whether the agreement has any

14   obvious deficiencies, such as "unduly preferential treatment of class

15   representatives or of segments of the class, or excessive compensation of

16   attorneys." *Scott*, 2013 WL 12251170, at *1; *Newberg on Class Actions* § 11:25

17   (4th ed. 2010). The Ninth Circuit has advised courts to be concerned (a) "when

18   counsel receive a disproportionate distribution of the settlement, or when the class

19   receives no monetary distribution but class counsel are amply rewarded"; (b)

20   "when the parties negotiate a 'clear sailing' arrangement providing for the payment

21

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 14

1    of attorneys' fees separate and apart from class funds, which carries 'the potential

2    of enabling a defendant to pay class counsel excessive fees and costs in exchange

3    for counsel accepting an unfair settlement on behalf of the class'"; and (c) "when

4    the parties arrange for fees not awarded to revert to defendants rather than be

5    added to the class fund." *In re Bluetooth Headset Prods. Liab. Litig*., 654 F.3d 935,

6    947 (9th Cir. 2011). Such signs do not necessarily mean that a settlement is

7    improper, but only that it is supported by an explanation of why the fee is justified

8    and does not betray the class's interests. *Id.* at 949.

9            As to the first potential area of concern, the Settlement provides for prompt

10   payment to Class Members out of a $4.75 million Settlement Fund. Agmt. § V(1).

11   Any award of attorneys' fees to Class Counsel will be in an amount approved by

12   the Court. *Id*. § IX(1). While Defendants have agreed not to oppose a fee request of

13   up to one-third of the Settlement Fund, *id*. § IX(2), this does not suggest collusion.

14   In *Dennings v. Clearwire Corp.*, No. 10 CV 1859, 2013 WL 1858797, at *9 (W.D.

15   Wash. May 3, 2013), *aff'd* No. 13-35491 (9th Cir. Sept. 9, 2013), the court held

16   that there was no evidence of collusion despite the existence of a "clear sailing"

17   provision. *Id*. at 8. Like here, the negotiations had been conducted at arm's length

18   with the assistance of a mediator. *Id*. Where the "clear sailing" feature provides

19   any amounts not awarded will revert to the Class, there is no indication of

20   collusion. *Id*. at 9. Here the settlement likewise provides that any amount of the

21

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 15

Settlement Fund not awarded in fees, expenses, or service awards or paid in taxes will be distributed to the Class. Agmt § VI(3).

At this point, the question is merely whether the agreement is preliminarily fair. In *Anderson-Butler v. Charming Charlie Inc*., No. 14 CV 1921, 2015 WL 4599420 (E.D. Cal. July 29, 2015), a proposed class settlement allowed counsel to apply for a fee award, which defendant had agreed not to oppose. *Id.* at \*2. The court preliminarily approved the settlement and declined to "evaluate the fee award at length" in "considering whether the settlement is adequate," because "[i]f the court, in ruling on the fees motion, finds that the amount of the settlement warrants a fee award at a rate lower than what plaintiff's counsel requested" the court had the power to reduce the award accordingly. *Id.* at 11. Likewise, here the specific amounts of attorneys' fees and any class representative incentive award can be reserved on this preliminary approval motion to the final approval hearing and the discretion of the Court.

No Class Member or group of Class Members will receive unduly favorable treatment under the terms of the Settlement. The Plan of Allocation contemplates that the settlement proceeds will be divided between Class Members pro rata based on the amount of their claim, which is based on their rate of pay and dates of short-term military leave. Ex. 2. "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and

competent counsel." *Vinh Nguyen v. Radient Pharm. Corp.*, No. 11 CV 406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (internal quotation marks and modifications omitted). Defendants do not have data reflecting short-term military leaves at Horizon from October 10, 2004, through October 2, 2008. Downes Decl. ¶ 10. Class Members with claims from this period will receive an allocation for each calendar year in which they had claims based on an annualized average of the recovery for Horizon pilots for whom data does exist, discounted by 75%. Ex. 2 at 2. Class Counsel assessed that the absence of such data made these claims particularly vulnerable to a laches defense, justifying a substantial discount to their value. Downes Decl. ¶ 9. Courts approve plans of allocation that treat segments of a class differently where those distinctions are fair and accurately reflect the different risks between those segments. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420YGRDMR, 2020 WL 7264559, at *12-13 (N.D. Cal. Dec. 10, 2020) (approving 90/10 split between subgroups of class based on differences in strength of claim); *Jenson, v. First Tr. Corp.*, CV 05-3124 ABC (CTX), 2008 WL 11338161, at *9 (C.D. Cal. June 9, 2008) (approving plan of allocation where stronger claims would recover based on 100% of allowed claim while others would recover based on 20% of allowed claim). Additionally, while the Class Representatives can apply for a service award, the amount, if any, will be decided by the Court. Agmt. § IX(1).

1    **III.        The Notice and Plan of Notice Should be Approved.**

2         Rule 23(e) requires that notice by provided in a reasonable manner to all

3    Class Members who would be bound by the settlement. *Logan v. Hargraves*, No.

4    04 CV 214, 2008 WL 11425713, at *3 (E.D. Wash. Sept. 25, 2008). A proper

5    notice should (1) describe the facts underlying the action and the class, (2) describe

6    the terms of the settlement, (3) disclose any benefits provided to class

7    representatives, (4) provide information regarding attorney's fees, (5) state the time

8    and place of the final hearing, (6) provide counsel's contact information and

9    instructions on how to object and/or make inquiries, and (7) explain the procedure

10   for allocation. *Manual for Complex Litigation, supra,* § 21.312; *see Rosas v.*

11   *Sarbanand Farms, LLC*, No. 18 CV 112, 2019 WL 859225, at *3 (W.D. Wash.

12   Feb. 22, 2019) (approving notice that provided such information); *Burnett*, 2011

13   WL 13290339, at *4 (same). Here, the proposed Class notice provides information

14   on all of these subjects. *See* Ex. 3.

15        Rule 23(c)(2)(B) requires that the notice inform class members of the

16   following: "(i) the nature of the action; (ii) the definition of the class certified; (iii)

17   the class claims, issues, or defenses; (iv) that a class member may enter an

18   appearance through an attorney if the member so desires; (v) that the court will

19   exclude from the class any member who requests exclusion; (vi) the time and

20   manner for requesting exclusion; and (vii) the binding effect of a class judgment on

21

members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii). Here, the proposed notice to the Class meets these requirements. See Ex. 3.

"District courts possess broad discretion to shape such notice to comply with Rule 23." *Rosas*, 2019 WL 859225, at *1; Fed. R. Civ. P. 23(e)(1)(B); *see* Fed. R. Civ. P. 23(c)(2)(B) (requiring "the best notice practicable under the circumstances"). "It is beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances." *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992); *see Manual for Complex Litigation*, supra, § 21.311 (explaining that individual notice via mail is preferred). Where the names are known and there is reliable address information, courts authorized notice only by mail. *See De La O v. Arnold-Williams*, No. 04 CV 192, 2008 WL 11426817, at *5 (E.D. Wash. Aug. 12, 2008). Here, the members of the Class will receive notice by U.S. Mail. Agmt. § III(3). Thus, these procedures satisfy due process, meet the requirements of Rule 23, and should be approved.

One subset of the Class cannot be definitively identified using Defendants' data: pilots who took short-term military leave from Horizon between 2004 and 2008. Downes Decl. ¶ 10. But Defendants have provided addresses for *all* Horizon pilots in the 2004 to 2008 timeframe. *Id.* The notice plan contemplates that all such pilots will receive notice and have the opportunity to identify themselves and

obtain a monetary payment by submitting a claim form. See Ex. 4. Thus, all potential members of the Class will receive notice by mail.

Publication notice is not necessary in this case, because data identifies the names and addresses of Class Members. Not only would publication notice be of minimal value, but it would significantly increase the costs of administration and decrease the benefits available to pay Class Members. *Id.* ¶ 11.

Class Counsel solicited bids for class notice and administration services through a competitive process. Class Counsel solicited responses to a request for proposals from ten settlement administration services vendors, of which six submitted bids. *Id.* ¶ 13. Class Counsel recommends the appointment of Simpluris, which previously acted as Notice Administrator and which submitted the lowest priced bid for this engagement. *Id.* The Court should appoint Simpluris as the Settlement Administrator.

## CONCLUSION

For the forgoing reasons, the Court should grant Plaintiff's motion to preliminarily approve the proposed Settlement.

Dated: August 23, 2024

Respectfully submitted,

R. Joseph Barton
(admitted *pro hac vice*)
Colin M. Downes
(admitted *pro hac vice*)
BARTON & DOWNES LLP
1633 Connecticut Ave. N.W.
Suite 200
Washington, DC 20009
Tel: (202) 734-7046
jbarton@bartondownes.com
colin@bartondownes.com

Michael J. Scimone
(admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
685 Third Avenue 25th Floor
New York, NY 10017
Tel: (212) 245-1000
mscimone@outtengolden.com

Hannah Cole-Chu
(admitted *pro hac vice*)
OUTTEN & GOLDEN LLP
1225 New York Avenue NW
Suite 1200B
Washington, DC 20005
Tel: (202) 847-4400
hcoleschu@outtengolden.com

Peter Romer-Friedman
(admitted *pro hac vice*)
PETER ROMER-FRIEDMAN LAW PLLC
1629 K Street, NW, Suite 300
Washington, DC 20006
Tel: (202) 355-6364
peter@prf-law.com

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 21

1

2
_____
Matthew Z. Crotty (WSBA #39284)

3
RIVERSIDE LAW GROUP, PLLC
905 W. Riverside Ave. Suite 404
Spokane, WA 99201

4
Tel: (509) 850-7011
mzc@rnwlg.com

5

6
Thomas G. Jarrard (WSBA #39774)
LAW OFFICE OF THOMAS JARRARD, PLLC
1020 N. Washington St.

7
Spokane, WA 99201
Tel: (425) 239-7290

8
tjarrard@att.net

9
*Attorneys for Plaintiff and the Class*

10

11

12

13

14

15

16

17

18

19

20

21

Plaintiff's Motion for Preliminary Approval of Class Action Settlement - 22