R. Joseph Barton
(admitted *pro hac vice*)
The Barton Firm LLP
1633 Connecticut Ave. N.W.
Suite 200
Washington, DC 20009
Telephone: (202) 734-7046
jbarton@thebartonfirm.com

*Attorneys for Plaintiff & the Class*
*(additional counsel listed below)*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CASEY CLARKSON,<br><br>       *Plaintiff*,<br><br> v.<br><br>ALASKA AIRLINES, INC, and HORIZON AIR INDUSTRIES, INC.,<br><br>       *Defendants* | No. 2:19-CV-005-TOR<br><br>**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**NOTED FOR HEARING: January 15, 2025**<br><br>**WITH ORAL ARGUMENT** |

MOTION FOR FINAL APPROVAL

1

# **TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................1

   A.   BACKGROUND............................................................................1

      1.   Factual Background ...........................................................1

      2.   The Claim and Relief Requested ...................................2

      3.   Procedural History .............................................................3

      4.   The Terms of the Settlement Agreement.....................5

   B.   THE SETTLEMENT WARRANTS FINAL APPROVAL...................7

      1.   The Settlement Satisfies Rule 23(e) Factors..............9

         a.   The Class Representatives and Class Counsel Have Adequately Represented the Class ...................................9

         b.   The Settlement was Negotiated at Arm's Length ..........11

         c.   The Relief Provided for the Class is Adequate ..............11

            (i)    The Costs, Risks & Delay of Trial & Appeal ......12

            (ii)   Method of Distribution to the Class ....................13

            (iii)  Attorneys' Fees.................................................13

            (iv)   Other Agreements ..................................................14

         d.   The Settlement Treats Class Members Equitably ..........14

      2.   The Settlement Satisfies the Ninth Circuit Factors...................17

         a.   The Strength of Plaintiff's Case .....................................17

         b.   The Risk, Expense, Complexity, and Likely Duration of Further Litigation .........................................19

         c.   The Risk of Maintaining Class Action Status ...............22

         d.   The Amount Offered in Settlement ................................22

e.  The Extent of Discovery and the Stage of the Proceedings .......................................................... 25

f.  The Experience and Views of Counsel .......................... 27

g.  The Presence of a Governmental Participant ................. 28

h.  The Reaction of the Class Members to the Settlement ...................................................................... 29

C.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE & ADEQUATE ......................................................................... 29

II.  CONCLUSION ................................................................................ 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Beanland v. Fed. Express Corp.*,
   No. 22-672-MAK (Aug. 1, 2023) ........................................................22

*Bennett v. SimplexGrinnell LP*,
   No. 11-CV-01854-JST, 2015 WL 1849543 (N.D. Cal. Apr. 22,
   2015) ...................................................................................................23

*In re Blue Cross Blue Shield Antitrust Litig.*,
   85 F.4th 1070 (11th Cir. 2023) .........................................................15

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ...............................................................9

*Brown v. CVS Pharmacy, Inc.*,
   No. CV15-7631 PSG, 2017 WL 3494297 (C.D. Cal. Apr. 24,
   2017) ...................................................................................................28

*Estate of Brown v. Consumer Law Assocs., LLC*,
   No. 11-CV-0194-TOR, 2013 WL 2285368 (E.D. Wash. May 23,
   2013) ...........................................................................................*passim*

*Chen v. W. Digital Corp.*,
   No. 819CV00909JLSDFM, 2020 WL 13587954 (C.D. Cal. Apr. 3,
   2020) ...................................................................................................23

*Churchill Vill., L.L.C., v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ...............................................................9

*Clarkson v. Alaska Airlines, Inc.*,
   No. 2:19-CV-0005-TOR, 2020 WL 13311693 (E.D. Wash. Nov. 3,
   2020) ...................................................................................................24

*Clarkson v. Alaska Airlines Inc.*,
   No. 2:19-CV-0005-TOR, 2020 WL 4495278 (E.D. Wash. Aug. 4,
   2020) ...................................................................................................27

*Clemans v. New Werner Co.*,
   No. 3:12-CV-05186, 2013 WL 12108739 (W.D. Wash. Nov. 22,
   2013) ............................................................................................26, 29

*Cohen v. Resolution Tr. Corp.*,
   61 F.3d 725 (9th Cir. 1995) ........................................................15, 17

*Dennings v. Clearwire Corp.*,
   No. 10 CV 1859, 2013 WL 1858797 (W.D. Wash. May 3, 2013) ....................14

*Gudimetla v. Ambow Educ. Holding*,
   No. CV 12-5062 PSG, 2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) ........................................................................28

*Gutierrez v Wells Fargo Bank, N.A.*,
   704 F.3d 712 (9th Cir. 2012) ........................................................21

*Hall v. L-3 Commc'n Corp.*,
   No. 2:15-cv-0231-SAB, 2019 WL 3845462 (E.D. Wash. Jan. 25, 2019) ........................................................................23

*Holmes v. Cont'l Can Co.*,
   706 F.2d 1144 (11th Cir. 1983) ........................................................17

*Hurtado v. Rainbow Disposal Co., Inc.*,
   No. 8:17-cv-01605-JLS-DFM, 2021 WL 79350 (C.D. Cal. Jan. 4, 2021) ........................................................................22, 25

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) ........................................................17

*Jenson, v. First Tr. Corp.*,
   CV 05-3124 ABC, 2008 WL 11338161 (C.D. Cal. June 9, 2008) ....................16

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ........................................................25

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-MD-02420YGRDMR, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ........................................................................16

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................23

*Morris v. FPI Mgmt., Inc.*,
   No. 2:19-CV-0128-TOR, 2022 WL 3013076 (E.D. Wash. Feb. 3, 2022) ........................................................................*passim*

*Munday v. Navy Fed. Credit Union*,
   No. 15-1629-JLS, 2016 WL 7655807 (C.D. Cal. Sept. 15, 2016) ....................27

MOTION FOR FINAL APPROVAL                                             iv

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ..................................................7, 8, 18

*Paredes Garcia v. Harborstone Credit Union*,
   No. 3:21-CV-05148-LK, 2023 WL 7412842 (W.D. Wash. Nov. 9,
   2023) ................................................................................................9

*In re Pet Food Prods. Liab. Litig.*,
   629 F.3d 333 (3d Cir. 2010) ..........................................................17

*Plumbers Union Loc. No. 12, Pension Fund v. Ambassadors Grp.
   Inc.*,
   No. CV-09-0214-JLQ, 2012 WL 12965710 (E.D. Wash. June 28,
   2012) ..............................................................................................29

*Ramsey v. MRV Commc'ns Inc.*,
   No. CV 08-04561 (GAF), 2010 WL 11596641 (C.D. Cal. Nov. 16,
   2010) ..............................................................................................29

*Rinky Dink, Inc. v. World Bus. Lenders, LLC*,
   No. 14 CV 268, 2016 WL 3087073 (W.D. Wash. May 31, 2016)....................10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .......................................................7, 9

*Santos v. Camacho*,
   No. Civil 04-00006, 2008 WL 8602098 (D. Guam Apr. 23, 2008) ..................15

*Smith v. Legal Helpers Debt Resolution, LLC*,
   No. 11 CV 5054, 2012 WL 12863173 (W.D. Wash. Aug. 30, 2012) .................7

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ...........................................................8

*Tibble v. Edison Int'l*,
   CV 07-5359 SVW (AGRx), 2017 WL 3523737 (C.D. Cal. Aug.
   16, 2017) ........................................................................................21

*Tom v. Com Dev USA, LLC*,
   No. 16CV1363, 2017 WL 10378629 (C.D. Cal. Dec. 4, 2017) ......................18

*Tussey v. ABB, Inc.*,
   850 F.3d 951 (8th Cir. 2017) ..........................................................21

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
  No. SACV 15-1614-JLS (JCG), 2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) ..............................................................................18, 22, 27

*Util. Reform Project v. Bonneville Power Admin.*,
  869 F.2d 437 (9th Cir. 1989) ...........................................................7

*Vinh Nguyen v. Radient Pharm. Corp.*,
  No. 11 CV 406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ..........................16

*Wit v. United Behav. Health*,
  58 F.4th 1080 (9th Cir. 2023) ........................................................20

*Zamora Jordan v. Nationstar Mortg., LLC*,
  No. 14 CV 175, 2019 WL 1966112 (E.D. Wash. May 2, 2019)
  (Rice. J) ..........................................................................*passim*

**Statutes**

USERRA § 4316 ...................................................................2, 3, 23

**Other Authorities**

20 C.F.R. § 1002.150 ................................................................3

Fed. R. Civ. P. 23 ............................................................*passim*

Fed. R. Civ. P. 30 .................................................................26

## I.  INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff respectfully moves for Final Approval of the Class Action Settlement. After more than five years of hard-fought litigation, including an appeal that reversed a grant of summary judgment against the Class, and further discovery after remand, the Parties negotiated a settlement.  The Settlement requires Defendants to pay $4.75 million to the Class to provide current employee Class members with four calendar days of paid short-term military leave (without any offset for miliary pay) going forward.  Given the risks of establishing liability and damages, this is an excellent result for the Class.  No Class member has objected.  As a result, this Settlement should receive final approval by the Court.

### A.    BACKGROUND

#### 1.    Factual Background

The material facts of this case are as follows: Plaintiff Casey Clarkson is a veteran of the Washington Air National Guard, in which he served until June 30, 2018. ECF No. 73-22 at ¶ 3. While in the Guard, Clarkson was employed as a civilian pilot—at Horizon, from late 2013 through late 2017, and then at Alaska through the present. *Id*. ¶ 2. During his employment with both airlines, Clarkson took periods of short-term military leave to perform his Guard duties. ECF No. 73-22 at 2; ECF No. 82-6 at 2. Pilots at both Horizon and Alaska are guaranteed a

certain number of hours of pay per month based on their status. ECF No. 138 at 14; ECF No. 138-12 at 4-1. But when pilots take military leave, their minimum guaranteed pay is decreased for each day of leave. ECF No. 138 at 14; ECF No. 150-3 at 47:6-16; ECF No. 150-2 at 113:9-21; ECF No. 138-12 at 4-1. Alaska categorizes military leave of 30 days or less as short-term rather than "extended" military leave. ECF No. 150-2 at 121:12-20. Horizon also distinguishes short-term military leave from other military leaves. ECF No. 150-3 at 59:8-19. But unlike short-term military leave, many forms of non-military leave are "protected from loss of pay," such that taking those leaves does not reduce a pilot's minimum guarantee. ECF No. 138-8 at 14, 74-75; ECF No. 150-2 at 86:24-87:7, 88:3-7. These include leaves for jury duty, bereavement leave, sick leave, and vacation. ECF No. 138-12 at 7-4, 13-1, 14-2, 26-2. ECF No. 138-8 at 14, 74-75.

### 2.    The Claim and Relief Requested

The remaining claim in this case (following the settlement of Clarkson's individual claims) is Count IV of the Amended Complaint, which alleges that Defendants violated USERRA § 4316(b)(1). ECF No. 31 at ¶¶ 79-86. USERRA § 4316(b)(1) provides that a person who is absent from a position of employment by reason of service in the uniformed services shall be (B) entitled to such other rights and benefits not determined by seniority as are generally provided by the employer of the person to employees having similar seniority, status, and pay who are on furlough or leave of absence under a contract, agreement, policy, practice, or plan

in effect at the commencement of such service or established while such person performs such service. 38 U.S.C. § 4316(b)(1). ECF No. 31 ¶ 80. Count IV alleges that the paid jury duty, bereavement, sick, and vacation leave offered to pilots by Alaska and Horizon are comparable to short-term military leave in terms of duration, purpose, and the ability of pilots to choose when to take the leaves. *Id.* ¶¶ 79-86; *see* 20 C.F.R. § 1002.150(b). Because Defendants provide the benefit of pay protection to pilots who take those comparable forms of leave, the Complaint alleges that Defendants were required to provide that benefit to pilots who take short-term military leave. *Id.* As a relief, the Complaint sought a declaration that this practice violated USERRA and an order requiring Defendants to pay Plaintiff and the Class their unpaid wages and benefits. ECF No. 31 at Prayer for Relief ¶¶ B, D.

### 3.    Procedural History

The Complaint was filed in January 2019. ECF No. 1. After denying a motion to dismiss, ECF No. 30, and following class discovery, this Court certified a class of "all current or former Alaska or Horizon pilots who have taken short-term military leave" from October 10, 2004, to the present. ECF No. 89. After expert disclosures and the conclusion of all discovery Defendants filed a motion for summary judgment. ECF No. 136. Plaintiff sought summary judgment on, among other things, Defendants' defense that it was entitled to offset pilots' military pay against their damages. ECF No. 133. Shortly before the original trial

date, the Court granted Defendants' motion and denied Plaintiff's summary judgment motion as moot. ECF No. 187.

Plaintiff appealed that decision and the Ninth Circuit reversed. ECF No. 189. On remand, the Court reopened discovery. ECF No. 206. Defendants produced updated pay and leave data and sought pay data from the Department of Defense, Plaintiff's expert updated his damages calculations, Defendants took the deposition of certain absent class members as a prelude to a potential decertification motion, and Class Counsel took additional fact discovery. Declaration of Colin Downes (ECF No. 242-1) ("Downes Decl.") ¶ 2.

The parties negotiated the principal monetary terms of the agreement during an all-day, in-person mediation facilitated by Hunter Hughes, an independent, professional mediator with experience mediating employment and employee benefits class actions, on October 11, 2023. *Id*. ¶ 3. The parties—together with the additional Class Representatives—then negotiated the principal non-monetary terms of the agreement at a second, hybrid remote/in-person mediation on December 6, 2023, also facilitated by Hunter Hughes. *Id*. After reaching the principal terms of the Settlement, those terms were shared with the unions that represent pilots at Alaska and Horizon. ECF No. 230 ¶¶ 2-3. Following union review, Class Counsel and Defendants spent additional time crafting the detailed terms of a formal agreement and finalizing them in the Settlement Agreement. *Id*. ¶ 4; Downes Decl. ¶ 4.

Plaintiffs filed their Unopposed Motion to Modify Order Granting Motion for Class Certification and Unopposed Motion for Preliminary Approval of Class Action Settlement on August 23, 2024. ECF Nos. 241 & 242. The Court granted preliminary approval to the settlement on September 25, 2024. ECF No. 243.

Consistent with the Court's orders, the Settlement Administrator sent notice of the Settlement to the Class on October 22, 2024. Declaration of Lindsay Romo Regarding Notice and Settlement Administration (ECF No. 245) ("Settlement Admin. Decl.") ¶ 8. As of the date of this filing, the Settlement Administrator, Simpluris has not received any requests for exclusion from Class members or any objections to the Settlement. Settlement Admin. Decl. ¶ 11-13. The deadline for Class members to request for exclusion or object to the settlement was December 20, 2024. ECF No. 243. No class member submitted an objection or requested exclusion. Barton Decl. ¶ 2.

### 4.    The Terms of the Settlement Agreement

The terms of the Settlement are set forth in the settlement agreement entered into with Alaska and Horizon. ECF No. 242-2. The Settlement provides substantial monetary and prospective relief to the Class. ECF No. 243 ¶ 9. The monetary component of the Settlement Agreement provides for payment of $4.75 million to a settlement fund for the benefit of the class – 48% of Class Counsel's estimate of the Class's *maximum* gross damages (i.e., not including prejudgment interest, liquidated damages, and before any offset for military pay) and more than some of

Class Counsel's estimated damages (depending on the comparator used). *Id.* This result is better than that achieved in most class settlements including class action settlements approved by courts in USERRA cases, both in absolute terms and as a proportion of Class Counsel's estimate of Defendant's potential liability. *Id.*

The Settlement also provides for significant forward-looking relief for the Class: Defendants will provide members of the Class who are employed as pilots at Alaska Airlines and Horizon Air with four calendar days of paid military leave per year, subject to certain terms and conditions. ECF No. 243 ¶ 10. Class Counsel estimates this benefit will have an annual value of $2,000.00-$6,619.40 for each current employee Class member at Alaska Airlines and $1,512.00-$3,612.00 for each current employee Class member at Horizon Air. *Id.*

The Class will receive a monetary distribution and counsel's distribution will not be disproportionate. ECF No. 243 ¶ 12. While the Settlement Agreement does include a "clear sailing" provision, under which Defendants will not oppose a request for attorney's fees, the Settlement Agreement provides that any amounts not awarded will revert to the Class. *Id.*

Most Class Members – the ones for whom Defendants have data – do not have to do anything to receive payment. No Class member or group of Class members will receive unduly favorable treatment under the terms of the settlement agreement. ECF No. 243 ¶ 13. The Plan of Allocation proposes that the Settlement Fund will be divided among all Class members on a *pro rata* basis. *Id.* Claims for

1 Class Members arising from their employment with Horizon between 2004 and

2 2008 will be discounted to reflect the lack of employer military leave data as to

3 those claims, which would have created a substantial basis for a laches defense. *Id.*

4      The Court found that the Settlement Agreement was the result of serious,

5 informed, and non-collusive arms-length negotiations by counsel well-versed in

6 the prosecution of class actions. *Id.* ¶ 8.

7    **B.**    **The Settlement Warrants Final Approval**

8      As a matter of public policy, settlement is a strongly favored method for

9 resolving disputes. *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d

10 437, 443 (9th Cir. 1989). This is especially true in class actions. *Officers for*

11 *Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625 (9th Cir.

12 1982); *Smith v. Legal Helpers Debt Resolution, LLC*, No. 11 CV 5054, 2012 WL

13 12863173, at *3 (W.D. Wash. Aug. 30, 2012) ("Strong judicial policy favors

14 settlements, particularly where complex class action litigation is concerned.").

15 The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length,

16 non-collusive, negotiated resolution" in approving a class action settlement.

17 *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). "[I]ntrusion upon

18 what is otherwise a private consensual agreement negotiated between the parties to

19 a lawsuit must be limited to the extent necessary to reach a reasoned judgment that

20 the agreement is not the product of fraud or overreaching by, or collusion between,

21 the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable

and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. When a settlement is preceded by extensive, arms-length negotiations, that favors approval. *Zamora Jordan v. Nationstar Mortg., LLC*, No. 14 CV 175, 2019 WL 1966112, at *3 (E.D. Wash. May 2, 2019) (Rice. J).

"Approval of a proposed class action settlement is governed by Federal Rule of Civil Procedure 23(e)." *Morris v. FPI Mgmt., Inc.*, No. 2:19-CV-0128-TOR, 2022 WL 3013076, at *1 (E.D. Wash. Feb. 3, 2022) (Rice, J). "The 2018 amendment to Rule 23(e) establishes core factors district courts must consider when evaluating a request to approve a proposed settlement." *Id.* Rule 23(e) now provides that the Court may approve a class action settlement only after a hearing and only on a finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Prior to the 2018 Amendment, courts considered eight factors in assessing the fairness of a post-certification settlement. *Staton v. Boeing*

*Co.,* 327 F.3d 938, 972 n.22 (9th Cir. 2003)*; In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). These factors, which overlap the Rule 23(e) factors, assess : (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (citation omitted); *Churchill Vill., L.L.C., v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Courts in this Circuit and this District, including this Court, have continued to also evaluate these factors even after 2018. *Paredes Garcia v. Harborstone Credit Union*, No. 3:21-CV-05148-LK, 2023 WL 7412842, at *5 (W.D. Wash. Nov. 9, 2023) (applying these factors); *Zamora Jordan*, 2019 WL 1966112, at *2 (Rice, J). All the Rule 23(e) factors as well as the factors identified by the Ninth Circuit weigh in favor of final approval of the settlement. This Settlement should thus be finally approved by the Court.

### 1. The Settlement Satisfies Rule 23(e) Factors

#### a. The Class Representatives and Class Counsel Have Adequately Represented the Class

The fact that experienced counsel has been actively engaged in the litigation and has diligently pursued the necessary discovery evidences the non-collusive

nature of the settlement. *Morris*, 2022 WL 3013076, at *2 (granting final approval); *Rinky Dink, Inc. v. World Bus. Lenders, LLC,* No. 14 CV 268, 2016 WL 3087073, at *3 (W.D. Wash. May 31, 2016) ("The presence of substantial formal discovery is an indicator that the parties were informed regarding the wisdom of settlement and engaged in arms-length bargaining."). This Court previously found that Class Counsel have significant experience litigating class action and USERRA cases. ECF No. 89 at 15. Class Counsel has litigated vigorously on behalf of the Class for almost six years and spent more than 3,500 hours litigating this case. ECF No. 245, Exhibit A ¶ 12.

This Court previously held that Plaintiff Clarkson was qualified to adequately represent the Class (over Defendants' objection). ECF No. 89 ¶ 5. The Court also found that Ryan Schwend, Scott Silvester, and Matt Fisk were adequate class representatives. ECF No. 243 ¶ 5. The Court found that Plaintiff Clarkson lacked any conflicts with the Class and that his willingness to pursue the claims of the Class was demonstrated by his assistance in the litigation, including preparation of the complaint, participating in discovery, appearing for deposition, and by remaining apprised of developments: reading documents produced in discovery, checking the docket for new filings, and reviewing materials from his counsel before filing. ECF No. 89 ¶ 5. Class Representatives Schwend, Silvester, and Fisk participated in the mediation and were involved in negotiating prospective relief as part of the settlement. ECF No. 241-2 ¶ 7; ECF No. 241-4 ¶ 7; ECF No.

241-6 ¶ 7. They had standing to pursue prospective relief and thus enhanced the representation of the interests of Class members who, unlike Plaintiff, would personally benefit from such relief. Plaintiff moved to add Schwend, Silvester, and Fisk as additional Class representatives. ECF No. 241. Defendants did not oppose the appointment of Schwend, Silvester, and Fisk as additional Class representatives and the Court found them adequate and appointed them. ECF. No. 243 ¶ 5.

### b.     The Settlement was Negotiated at Arm's Length

When a settlement is preceded by extensive, arms-length negotiations, that favors approval. *Morris,* 2022 WL 3013076, at *2; *Zamora Jordan*, 2019 WL 1966112, at *3. This Court previously found that the settlement agreement was the result of serious, informed, and non-collusive negotiations by counsel well-versed in the prosecution of class actions. ECF No. 243 ¶ 4. Likewise, this Court found that the assistance of a professional mediator reinforced that the settlement was non-collusive. *Id.* Thus, the non-collusive character of the Settlement weighs in favor of final approval.

### c.  The Relief Provided for the Class is Adequate

Rule 23(e)(2)(C) identifies four subfactors for courts to consider: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified

under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C); *Morris,* 2022 WL 3013076, at *3. Each of these subfactors supports final approval.

The Court found that the settlement provides substantial relief to the Class. ECF No. 243 ¶ 4. The monetary component of the Settlement requires Defendants to pay $4.75 million into a settlement fund for the Class – 48% of Class Counsel's estimate of the Class's *maximum* gross damages (i.e., not including prejudgment interest, liquidated damages, or any offset for military pay). *Id.* The Court found that this result is better than that achieved in class settlements approved by other courts in USERRA cases, both in absolute terms and as a proportion of Class Counsel's estimate of Defendants' potential liability. *Id.*; *see also infra* I.A.4. Additionally, the Court found that the settlement provides for significant prospective relief for current employee Class members. *Id.* ¶ 4-5. The Settlement also requires Defendants to provide Class members who are employed as pilots at Alaska Airlines and Horizon Air with four calendar days of paid military leave per year, subject to certain terms and conditions. *Id.* Class Counsel estimated this benefit will have an annual value of $2,000.00-$6,619.40 for each Class member at Alaska Airlines and $1,512.00-$3,612.00 for each Class member at Horizon Air. *Id.* This substantial prospective relief for the Class further supports final approval.

### (i) *The Costs, Risks & Delay of Trial & Appeal*

Where plaintiff "would face several hurdles before resolution of the matter, including additional discovery, contested class certification, dispositive motion

practice, and ultimately, trial and the potential for an appeal," this factor favors final approval. *Morris,* 2022 WL 3013076, at *3. Here, this Court allowed additional discovery, Defendants likely would have sought decertification of the Class, filed another summary judgment motion and even if Plaintiff prevailed at trial, would have likely sought an appeal.

### (ii)    *Method of Distribution to the Class*

This Court has twice concluded in prior cases that where a settlement agreement does not require class members to submit claims as a condition of recovery, but merely mails settlement award checks all Settlement Class Members for whom the Class Administrator has a deliverable address, this provides a straight-forward process and is an effective method for distributing the Settlement Fund to the Class. *Morris,* 2022 WL 3013076, at *3; *Zamora Jordan,* 2019 WL 1966112, at *4. In this Settlement, any Class members for whom Defendants had data will simply receive a check without the necessity of submitting a claim form. As such, this is an effective method of distribution.

### (iii)    *Attorneys' Fees*

Where counsel seeks a reasonable amount of fees paid out of the Settlement Fund, subject to court approval, that favors approval. *Morris,* 2022 WL 3013076, at *3; *Zamora Jordan,* 2019 WL 1966112, at *4. While the amount sought by Class Counsel here exceeds the Ninth Circuit's benchmark of 25%, the amount is actually less than Class Counsel's lodestar and for the reasons set forth in Class

Counsel's separate motion, Plaintiff's request is reasonable. Additionally, while Defendants have agreed not to oppose a fee request of up to one-third of the Settlement Fund, this does not suggest collusion. Agmt. IX.2. In *Dennings v. Clearwire Corp.*, No. 10 CV 1859, 2013 WL 1858797, at *9 (W.D. Wash. May 3, 2013), *aff'd* No. 13-35491 (9th Cir. Sept. 9, 2013), the court held that there was no evidence of collusion despite the existence of a "clear sailing" provision. *Id.* at 8. Like here, the negotiations were conducted at arm's length with the assistance of a mediator. *Id.* Where the "clear sailing" feature provides any amounts not awarded will revert to the Class, there is no indication of collusion. *Id.* at 9. Here the Settlement likewise provides that any amount of the Settlement Fund not awarded in fees, expenses, or service awards or paid in taxes will be distributed to the Class.

### (iv)     *Other Agreements*

There is no separate agreement that is required to be identified under Rule 23(e)(3).

### d.     The Settlement Treats Class Members Equitably

Rule 23(e)(2)(D) now provides that one of the elements to consider in determining whether a proposed settlement is "fair, reasonable, and adequate" is whether, taken together and evaluated in its entirety, "the proposal treats class members *equitably* relative to each other." Rule 23(e)(2) & (D) (emphasis added). But as the Eleventh Circuit explained in rejecting an objector's argument, "the text of the amended rule requires equity, not equality, and treating class members

equitably does not necessarily mean treating them all equally." *In re Blue Cross Blue Shield Antitrust Litig.,* 85 F.4th 1070, 1093 (11th Cir. 2023). Put simply, this provision is "to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated." 4 Newberg and Rubenstein on Class Actions § 13:56 (6th ed.). As the Ninth Circuit has recognized, "[a] class action settlement need not necessarily treat all class members equally." *Cohen v. Resolution Tr. Corp.*, 61 F.3d 725, 728 (9th Cir. 1995) *vacated on other grounds*, 72 F.3d 686 (9th Cir. 1996). Differential treatment is appropriate when it is "rationally based on legitimate considerations." *Id.* Where the disparate treatment is rationally based on legitimate considerations and there was no indication of any collusion against them, the settlement may be approved. *See id.* at 727, 728 (approving such a settlement); *see also Santos v. Camacho,* No. Civil 04-00006, 2008 WL 8602098, *10 (D. Guam Apr. 23, 2008), *aff'd sub nom. Simpao v. Gov't of Guam,* 369 F.App'x 837 (9th Cir. 2010). Here, the Settlement Agreement contemplates differential treatment that is based on legitimate considerations.

All Class members receive the same treatment under the Settlement but will receive different distributions of the Settlement proceeds based on the Plan of Allocation. No Class Member or group of Class Members will receive unduly favorable treatment under the terms of the Settlement. The Plan of Allocation contemplates that the Settlement Fund will be divided among Class Members pro

rata based on the amount of their claim, which is based on their rate of pay and

dates of short-term military leave. Ex. 2. "[C]ourts recognize that an allocation

formula need only have a reasonable, rational basis, particularly if recommended

by experienced and competent counsel." *Vinh Nguyen v. Radient Pharm.*

*Corp.*, No. 11 CV 406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (internal

quotation marks and modifications omitted). Defendants do not have data

reflecting short-term military leaves at Horizon from October 10, 2004, through

October 2, 2008. Downes Decl. ¶ 10. Class Members with claims from this period

will receive an allocation for each calendar year in which they had claims based on

an annualized average of the recovery for Horizon pilots for whom data does exist,

discounted by 75%. Ex. 2 at 2. Class Counsel assessed that the absence of such

data made these claims particularly vulnerable to a laches defense, justifying a

substantial discount to their value. Downes Decl. ¶ 9. Courts approve plans of

allocation that treat segments of a class differently where those distinctions are fair

and accurately reflect the different risks between those segments. *In re Lithium Ion*

*Batteries Antitrust Litig.*, No. 13-MD-02420YGRDMR, 2020 WL 7264559, at

*12-13 (N.D. Cal. Dec. 10, 2020) (approving 90/10 split between subgroups of

class based on differences in strength of claim); *Jenson, v. First Tr. Corp.*, CV 05-

3124 ABC (CTX), 2008 WL 11338161, at *9 (C.D. Cal. June 9, 2008) (approving

plan of allocation where stronger claims would recover based on 100% of allowed

claim while others would recover based on 20% of allowed claim).

Of course, only current employees will benefit from the prospective relief. But "there is no rule that settlements benefit all class members equally" so long as any differences are "rationally based on legitimate considerations." *Holmes v. Cont'l Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) (citing *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 506 n.5 (5th Cir. 1981)); *Cohen,* 61 F.3d at 728 (approving settlement with different treatment of certain parties that was rationally based on legitimate considerations and there was no indication of any collusion against them, the settlement may be approved). "[V]aried relief among class members with differing claims is not unusual. Such differences in settlement value do not, without more, demonstrate conflicting or antagonistic interests within the class." *In re Pet Food Prods. Liab. Litig.,* 629 F.3d 333, 346 (3d Cir. 2010) (citations omitted). Differing recovery is "simply a reflection of the extent of the injury that certain class members incurred." *In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 272 (3d Cir. 2009). Thus, the prospective relief provided to current employees simply reflects that they would otherwise have ongoing claims and resolves those claims as well.

### 2.    The Settlement Satisfies the Ninth Circuit Factors

#### a.    The Strength of Plaintiff's Case

The Ninth Circuit has explained that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes,'" and that "it is the very uncertainty of outcome in litigation and avoidance of wasteful

and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 624-25 (citations omitted). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. SACV 15-1614-JLS (JCG), 2018 WL 3000490, *4 (C.D. Cal. Feb. 6, 2018) (granting final approval). "This factor is generally satisfied when plaintiffs must overcome barriers to make their case." *Tom v. Com Dev USA, LLC*, No. 16CV1363, 2017 WL 10378629, *3 (C.D. Cal. Dec. 4, 2017) (granting final approval).

Here, Clarkson sued Horizon and Alaska in January 2019. ECF No. 1. After denying a motion to dismiss, ECF No. 30, and following class discovery, this Court certified a class of "all current or former Alaska or Horizon pilots who have taken short-term military leave" from October 10, 2004, to the present. ECF No. 89. Additional discovery followed, including the exchange of expert reports, and Defendants filed a motion for summary judgment on all counts. ECF No. 136. Plaintiff sought summary judgment on, among other things, Defendants' defense that it was entitled to offset pilots' military pay against their damages. ECF No. 133. Shortly before the original trial date, the Court granted Defendants' motion in its entirety and denied Plaintiff's as moot. ECF No. 187.

Plaintiff appealed that decision and the Ninth Circuit reversed. On remand, the Court reopened discovery. ECF No. 206. Defendants produced updated pay and leave data and sought pay data from the Department of Defense, Plaintiff's expert updated his damages calculations, Defendants took the deposition of certain absent class members as a prelude to a potential decertification motion, and Class Counsel took additional fact discovery. Downes Decl. ¶ 2. This procedural history demonstrates that Plaintiff overcame significant barriers to make their case: Defendant's motion to dismiss, certification of the Class, and Plaintiff's successful appeal to the Ninth Circuit. This factor weighs in favor of granting final approval.

### b.    The Risk, Expense, Complexity, and Likely Duration of Further Litigation

When the expense, risk, and length of continued proceedings necessary to prosecute this litigation through trial and likely subsequent appeal poses substantial risks that weighs in favor of settlement. *Est. of Brown v. Consumer Law Assocs., LLC,* No. 11-CV-0194-TOR, 2013 WL 2285368, at *2 (E.D. Wash. May 23, 2013). Here, Defendants were likely to renew their motion for summary judgment as to willfulness (required for liquidated damages), to seek summary judgment on their laches defense as to Horizon pilots in the 2004-08 timeframe (for which Horizon had no leave data), and to seek decertification of the Class. Downes Decl. ¶ 9. Class Counsel assessed the risks as to liquidated damages and laches to be meaningful. *Id.* ¶ 9. If Defendants succeeded in offsetting damages by the amount

of a pilot's military pay, that could have eliminated any recovery for some Class Members and could have offset others by 50% or more. *Id*. At trial, a jury could have concluded that none of the comparator leaves were comparable to short-term military leave, and the Class could have recovered nothing. A jury could also have disagreed with Class Counsel's proposed measure of damages, for instance by finding that bereavement leave was comparable to short-term military leave (resulting in an estimated $4.6 million in gross damages) but not jury duty (which produced the larger $9.7 million figure). *Id*. A jury could have concluded that some but not all short-term military leaves were comparable to comparator leaves, for example by finding that short-term military leaves of four days or less were comparable to a three-day bereavement leave, but that longer leaves were not. Had Plaintiff prevailed at trial and maintained class certification, Defendants would almost certainly have appealed a second time, including on the class certification issues. Any recovery for the class would thus likely have taken years to make its way to class members. The Settlement avoids these risks and provides the Class with immediate relief for both prior leaves and payment for leaves in the future.

Given the substantial liability at issue, Defendants would likely appeal any judgment in favor of Plaintiff and the Class. Even plaintiffs in class actions who survive summary judgment and succeed at trial have had verdicts reversed on appeal. For example, following a non-jury trial, the Ninth Circuit recently reversed a district court decision in favor of plaintiffs and the class after a ten-day bench

1  trial. *Wit v. United Behav. Health*, 58 F.4th 1080, 1090 (9th Cir. 2023). The same

2  has occurred after jury trials. *E.g. Gutierrez v Wells Fargo Bank, N.A.*, 704 F.3d

3  712 (9th Cir. 2012) (reversing in part the judgment in favor of the certified class,

4  vacating a $203 million restitution award, and remanding case).

5      Even when plaintiff and a class succeed at trial and have the trial decision

6  affirmed on appeal, it can result in significant delay, sometimes with multiple

7  appeals. E.g. *Tussey v. ABB, Inc.*, 850 F.3d 951 (8th Cir. 2017) (recounting lengthy

8  procedural history for case initially filed in 2006, and remanding for district court

9  to address the issue of loss a second time); *Tibble v. Edison Int'l*, CV 07-5359

10  SVW (AGRx), 2017 WL 3523737, at *15 (C.D. Cal. Aug. 16, 2017) (outlining

11  remaining issues ten years after suit was filed on August 16, 2007). Even a

12  successful trial and appeal would result in a significant delay in distributing any

13  monetary relief to the Class. Additionally, plaintiffs in class actions continue to

14  face a risk of class decertification, dismissal of the case, and the "very real

15  potential for recovering little or nothing if this case proceeded through trial and

16  appeal." *Zamora Jordan*, 2019 WL 1966112, at *4 (citing *Bund v. Safeguard*

17  *Props. LLC*, No. C 16-920 MJP, 2018 WL 4008039 (W.D. Wash. Aug. 20, 2018)

18  (noting district court's decertification of class and dismissal of class action after

19  years of litigation as demonstrating the "inherent risks facing the class"). This

20  factor weighs in favor of granting final approval.

21

1

### c.    The Risk of Maintaining Class Action Status

2    "[W]here there appear no specific risks to maintaining class action status

3    throughout the litigation, the Court need not consider this factor for settlement

4    purposes." *Hurtado v. Rainbow Disposal Co., Inc.*, No. 8:17-cv-01605-JLS-DFM,

5    2021 WL 79350, at *4 (C.D. Cal. Jan. 4, 2021). Even where there are no specific

6    risks in prospect "there remains a risk that a class may be decertified," that is "not

7    so minimal as to preclude a Court granting preliminary approval to a settlement

8    agreement." *Urakhchin*, 2018 WL 3000490 at *4 (citing *Rodriguez v. W. Publ'g*

9    *Corp.*, 536 F.3d 948, 966 (9th Cir. 2009)) (internal quotation marks removed).

10    Here, Defendants vigorously opposed certification of the Class. ECF Nos. 149

11    ECF No. 146. Not only would Defendants be able to raise these same arguments

12    on appeal, but they likely intended to seek decertification of the Class. As there

13    was a real ongoing risk that Defendants would seek decertification, this favors final

14    approval.

15

### d.    The Amount Offered in Settlement

16    In approving a class settlement in another case, this Court concluded that the

17    relief was substantial where it provided an average of $1000 per class member and

18    approximately 30% of the potential relief. *Est. of Brown,* 2013 WL 2285368, at *3.

19    Here, the Settlement Agreement provides a $4.75 million Settlement Fund to be

20    paid to the Class. Agmt. § V(1). Based on the 532 identified class members, that

21    results in a gross average value of $8,928 per Class Member. Downes Decl. ¶ 8.

This per class member recovery is higher than in other USERRA class settlements. *E.g. Beanland v. Fed. Express Corp.*, No. 22-672-MAK, Dkt No. 100 (Aug. 1, 2023) (approving USERRA § 4316(b)(1) class settlement of $1.5 million for 4,020 class members, or $373.13 per class member);[1] *Hall v. L-3 Commc'n Corp.*, No. 2:15-cv-0231-SAB, 2019 WL 3845462, at *4 (E.D. Wash. Jan. 25, 2019) (approving USERRA class settlement of $2 million for 250 class members, or $8,000 per class member); *see In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (a settlement amounting to "only a fraction of the potential recovery" was fair "given the difficulties in proving the case").

The maximum Class recovery that Plaintiff's expert calculated was $9.7 million (before prejudgment interest and liquidated damages) and *without* any offset for military pay. Downes Decl. ¶ 7. The $4.75 million recovery represents 48.9% of that $9.7 million (and a greater percentage if Defendants' offset defense were to succeed) and is higher than damage calculations for some of the paid leave comparators. The amount and percentages significantly exceeds the results in other employment class action settlements approved in this Circuit. *E.g. Chen v. W. Digital Corp.*, No. 819CV00909JLSDFM, 2020 WL 13587954, at *11 (C.D. Cal.

---

[1] The *Beanland v. FedEx* settlement included a separate settlement fund for attorneys' fees and expenses but included no prospective relief. Even excluding the prospective relief in this settlement and assuming that Class Counsel's litigation expenses are awarded in full and the Court awards Class Counsel 30% of the Settlement Fund as attorneys' fees, the amount recovered in this settlement will exceed that in *FedEx*, as the average net recovery here would be $5,793 per class member.

MOTION FOR FINAL APPROVAL                                        23

Apr. 3, 2020) (preliminarily approving settlement that was 10.8% to 15.9% of maximum damages in employment case); *Bennett v. SimplexGrinnell LP*, No. 11-CV-01854-JST, 2015 WL 1849543, at *7 (N.D. Cal. Apr. 22, 2015) (preliminarily approving settlement that was 30% of maximum damages in wage and hour case). Even without considering other factors, this Settlement represents an excellent result.

Additionally, the Settlement includes substantial prospective relief. Going forward, pilots in the Class employed by Defendants will receive four days per calendar year of paid military leave going forward. Agmt. § IV(1). Class Counsel estimates this benefit has an annual value of $2,000.00-$6,619.40 for each pilot employed at Alaska and $1,512.00-$3,612.00 for each pilot employed at Horizon, depending on seniority and position. Downes Decl. ¶ 8. As set forth in the proposed Final Approval Order, the Parties request that this Court find this prospective relief provides military leave benefits that are commensurate with paid leave offered by Defendants for the non-military leaves that the Complant alleged were comparable to military leave (e.g. jury duty, bereavement, sick leave, and vacation). As this Court previously held that Clarkson could not pursue prospective relief, this benefit could only have been achieved if there was a successful appeal or through adding another class representative. *Clarkson v. Alaska Airlines, Inc.*, No. 2:19-CV-0005-TOR, 2020 WL 13311693, at *4 (E.D. Wash. Nov. 3, 2020). The significant prospective relief further supports final approval.

1    This Court previously recognized that when "the proposed settlement

2    guarantees that class members will be paid" this factor weighs in favor of final

3    approval. *Est. of Brown,* 2013 WL 2285368, at *5. Here, the Settlement provides

4    for prompt payment to Class Members out of a $4.75 million Settlement Fund

5    without requiring most Class Members to submit a claim form. Agmt. § V(1). Any

6    award of attorneys' fees to Class Counsel will be in an amount approved by the

7    Court. *Id*. § IX(1).

8         **e.  The Extent of Discovery and the Stage of the Proceedings**

9         This factor considers whether "the parties have sufficient information to

10   make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*,

11   151 F.3d 1234, 1239 (9th Cir. 1998). Significant discovery, "numerous mediation

12   sessions, and the advanced stage of the proceedings ensure that the parties have

13   had the opportunity to properly evaluate the merits of this action and the risks and

14   benefits of continuing with litigation." *Hurtado*, 2021 WL 79350, at *5 (finding

15   that these factors favored approval). As this Court concluded, where "there is no

16   indication that the parties have neglected their duties to vigorously prosecute and

17   defend this case," that weighs in favor of final approval. *Est. of Brown,* 2013 WL

18   2285368, at *3. In this case, a settlement was not reached until after Class Counsel

19   had conducted all discovery before summary judgment, had begun to prepare for

20   trial and then obtained reversal of summary judgment on appeal. Downes Decl. ¶

21   5. Class Counsel sought, obtained, and reviewed approximately 25,000 pages of

documents, a substantial volume of electronic data, answers to nine sets of interrogatories (encompassing 23 interrogatories), and responses to 52 requests for admission, and also met and conferred with Defendants on numerous discovery matters and, ultimately, twice moved to compel Defendants to provide further responses to interrogatories and produce additional documents. *Id.; see* ECF No. 62; ECF No. 63. Class Counsel took 7 fact witness depositions of Defendants: Rule 30(b)(6) depositions of both Horizon and Alaska, Ronald Limes and William Thomson (Alaska and Horizon chief pilots, respectively), Bernadette Davis (Horizon's Director, Crew Scheduling and later Alaska's Manager Flight Operations Training & Scheduling), Alison Faddis (Horizon's Vice President of Program Operations), Cheri Ruger (Horizon's Managing Director of People and Labor Relations). *Id.* ¶ 6. Plaintiff also took the depositions of Defendants' quantitative expert, Darin Lee, and their military expert, J.F. Joseph. *Id.* Class Counsel defended the deposition of Mr. Clarkson and four absent members of the Class. *Id.* Class Counsel also examined Mr. Meldrum, an official of the Air Line Pilots' Association, at deposition. Class Counsel engaged a quantitative expert (David Breshears) and a human resources expert (Laura Ingegneri) to analyze the data and the policies produced by Defendants and had obtained and produced reports by each of those experts by the time the parties began mediation. *Id.* This factor weighs in favor of granting final approval.

### f. The Experience and Views of Counsel

When assessing the fairness of a proposed settlement, "the court must consider the views and experience of counsel." *Clemans v. New Werner Co.*, No. 3:12-CV-05186, 2013 WL 12108739, at *4 (W.D. Wash. Nov. 22, 2013); *Est. of Brown*, 2013 WL 2285368, at *4 (holding the views of experienced counsel "are entitled to deference"). The "recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Urakhchin*, 2018 WL 3000490 at *5. "This presumption is justified because '[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'" *Munday v. Navy Fed. Credit Union*, No. 15-1629-JLS (KESx), 2016 WL 7655807, at *9 (C.D. Cal. Sept. 15, 2016). As the Court has previously recognized, Class Counsel "have significant experience litigating class action and USERRA cases." *Clarkson v. Alaska Airlines Inc.*, No. 2:19-CV-0005-TOR, 2020 WL 4495278, at *5 (E.D. Wash. Aug. 4, 2020); ECF No. 89 ¶ 6. They have particular experience in USERRA. Declaration of R. Joseph Barton ECF 73-1 ¶ 5; Declaration of Michael J. Scimone ECF No. 73-32 ¶¶ 5, 7.

Here, the parties negotiated the principal monetary terms of the agreement in an all-day, in-person mediation facilitated by Hunter Hughes, a professional mediator with experience mediating employment class actions, on October 11, 2023. Downes Decl. ¶ 3. The parties—with all Class Representatives—then negotiated the non-monetary terms of the agreement at a second, mediation on

December 6, 2023, also facilitated by Hunter Hughes. *Id*. After reaching an agreement in principle, the terms were shared with the unions representing the Alaska and Horizon pilots. ECF No. 230 ¶¶ 2-3. Following union review, Class Counsel and Defendants negotiated and finalized the terms in the Settlement Agreement. *Id*. ¶ 4; Downes Decl. ¶ 4.Class Counsel believe that the proposed Settlement is a very good result for the Class. Downes Decl. ¶ 8.

As a product of extensive negotiations aided by a professional mediator and conducted by informed and experienced counsel after more than five years of hard-fought litigation, the Settlement Agreement is the product of informed, vigorous, arms-length bargaining. This factor weighs in favor of final approval.

### g.    The Presence of a Governmental Participant

This factor is neutral as to final approval where, as here, there is no government entity participating in the case. *Brown v. CVS Pharmacy, Inc.*, No. CV15-7631 PSG (PJWx), 2017 WL 3494297, *5 (C.D. Cal. Apr. 24, 2017) (granting final approval); *Gudimetla v. Ambow Educ. Holding*, No. CV 12-5062 PSG (AJWx), 2015 WL 12752443, *5 (C.D. Cal. Mar. 16, 2015) (granting final approval). "This factor is not applicable, as no governmental entity has challenged the proposed settlement after receiving notice." *Est. of Brown,* 2013 WL 2285368, at *4. Nor was there any government litigation or investigation on which Class Counsel piggybacked. As such, this factor is neutral as to final approval.

1

**h.     The Reaction of the Class Members to the Settlement**

2       Where there are no objections to a proposed settlement, this factor weighs

3  strongly in favor of approval. *Est. of Brown*, 2013 WL 2285368, at *4 (holding

4  lack of objections is a "strong indicator[] that the class favors settlement"); *see*

5  *Clemans*, 2013 WL 12108739, at *5 (finding that only 0.001% percentage of opt-

6  outs favored approval). In this case, there have been no objections to the settlement

7  and no class members who were eligible to opt-out of the settlement did so. Thus,

8  this weighs in favor of final approval.

9  **C. The Plan of Allocation is Fair, Reasonable & Adequate**

10       "The Plan of Allocation, like the class settlement as a whole, must be fair,

11  reasonable, and adequate." *Ramsey v. MRV Commc'ns Inc.*, No. CV 08-04561

12  (GAF) (RCx), 2010 WL 11596641, *7 (C.D. Cal. Nov. 16, 2010); *see also*

13  *Plumbers Union Loc. No. 12, Pension Fund v. Ambassadors Grp. Inc.*, No. CV-09-

14  0214-JLQ, 2012 WL 12965710, at *2 (E.D. Wash. June 28, 2012) (finding that the

15  allocation plan was fair and reasonable where "the formula for the calculation of

16  claims … provide[d] a fair and reasonable basis upon which to allocate the

17  proceeds of the Net Settlement Fund, with due consideration to administrative

18  convenience and necessity."). On preliminary approval, the Court found that the

19  Plan of Allocation was fair and reasonable under the circumstance as it proposes to

20  divide the settlement fund among all Class members on a *pro rata* basis based on

21  their leaves. ECF No. 243 ¶ 13. Claims by Class members based on employment

1  with Horizon between 2004 and 2008 will be discounted to reflect the lack of

2  employer military leave data as to those claims. *Id.* There have been no changes to

3  the Plan of Allocation. Nor have there been any objections to the Plan of

4  Allocation. Barton Decl. ¶ 2. As such, it remains fair, reasonable, and adequate and

5  should be finally approved.

6  **II.    CONCLUSION**

7      For the forgoing reasons, the Court should grant final approval to the

8  proposed Settlement.

Dated: January 3, 2025                    Respectfully submitted,


                                          */s/ R. Joseph Barton*
                                          R. Joseph Barton
                                          (admitted *pro hac vice*)
                                          The Barton Firm LLP
                                          1633 Connecticut Ave. N.W.
                                          Suite 200
                                          Washington, DC 20009
                                          Tel: (202) 734-7046
                                          jbarton@thebartonfirm.com

                                          Michael J. Scimone
                                          (admitted *pro hac vice*)
                                          OUTTEN & GOLDEN LLP
                                          685 Third Avenue 25th Floor
                                          New York, NY 10017
                                          Tel: (212) 245-1000
                                          mscimone@outtengolden.com

                                          Hannah Cole-Chu
                                          (admitted *pro hac vice*)
                                          OUTTEN & GOLDEN LLP
                                          1225 New York Avenue NW
                                          Suite 1200B
                                          Washington, DC 20005
                                          Tel: (202) 847-4400
                                          hcoleschu@outtengolden.com

                                          Peter Romer-Friedman
                                          (admitted *pro hac vice*)
                                          PETER ROMER-FRIEDMAN LAW
                                          PLLC
                                          1629 K Street, NW, Suite 300
                                          Washington, DC 20006
                                          Tel: (202) 355-6364
                                          peter@prf-law.com

[PLEADING] - 1

Matthew Z. Crotty (WSBA #39284)
RIVERSIDE LAW GROUP, PLLC
905 W. Riverside Ave. Suite 404
Spokane, WA 99201
Tel: (509) 850-7011
mzc@riverside-law.com

*/s/ Thomas G. Jarrard*
Thomas G. Jarrard (WSBA #39774)
LAW OFFICE OF THOMAS
JARRARD, PLLC
1020 N. Washington St.
Spokane, WA 99201
Tel: (425) 239-7290
tjarrard@att.net

*Attorneys for Plaintiff and the Class*

1

### CERTIFICATE OF SERVICE

2      I certify that on January 3, 2025, I caused the foregoing **MOTION FOR**

3   **FINAL APPROVAL OF CLASS ACTION SETTLEMENT** to be electronically

4   filed with the Clerk of the Court using the CM/ECF system, which sent notification

5   of such filing to the all counsel of record.

6

7                      */s/ Ming Siegel*
                      Ming Siegel

8

9

10

11

12

13

14

15

16

17

18

19

20

21